Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500
Telephone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com

Aria C. Branch*
Daniel J. Cohen*
Joel Ramirez*
Tina Meng*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
abranch@elias.law
dcohen@elias.law
jramirez@elias.law
tmeng@elias.law

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

Arizona Alliance for Retired Americans; Voto Latino; Priorities USA,

Plaintiffs,

v.

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona; Mark Brnovich, in his official capacity as Attorney General for the State of Arizona; Larry Noble, in his official capacity as Apache County Recorder; David Stevens, in his official capacity as Cochise County Recorder; Patty Hansen, in her official capacity as Coconino County Recorder; Sadie Jo Bingham, in her official capacity as Gila County Recorder; Wendy John, in her official capacity as Graham County Recorder; Sharie Milheiro, in her official capacity

No. CV-22-1374-PHX-GMS

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

as Greenlee County Recorder; Richard Garcia, in his official capacity as La Paz County Recorder; Stephen Richer, in his official capacity as Maricopa County Recorder; Kristi Blair, in her official capacity as Mohave County Recorder; Michael Sample, in his official capacity as Navajo County Recorder; Gabriella Cázares-Kelly, in her official capacity as Pima County Recorder; Dana Lewis, in her official capacity as Pinal County Recorder; Suzanne Sainz, in her official capacity as Santa Cruz County Recorder; Michelle Burchill, in her official capacity as Yavapai County Recorder; and Richard Colwell, in his official capacity as Yuma County Recorder,

Defendants.

Plaintiffs Arizona Alliance for Retired Americans, Voto Latino, and Priorities USA, by and through their undersigned counsel, for their Complaint for Declaratory and Injunctive Relief, allege as follows:

**NATURE OF THE CASE**

1. On June 6, 2022, Governor Ducey signed into law Senate Bill 1260 ("SB 1260"), which radically alters Arizona law to impose severe restrictions on entirely lawful voters, as well as organizations or individuals that would help them exercise their fundamental right to vote. Plaintiffs challenge four interrelated parts of SB 1260 that will amend Title 16 ("Elections and Electors") of the Arizona Revised Statutes, effective September 24, 2022: A.R.S. § 16-1016(12) (the "Felony Provision"), A.R.S. § 16-165(A)(10) and (B) (the "Cancellation Provision"), A.R.S. § 16-544(Q)–(R) (the "Removal Provision"), and A.R.S. § 16-544(P) (the "Return Provision"), (collectively, the "Challenged Provisions").[1]

---

[1] References to the Arizona Revised Statutes reflect the codification that will take effect upon Senate Bill 1260's effective date on September 24, 2022.

2. The first Challenged Provision—the Felony Provision—threatens criminal penalties against anyone who knowingly "provides a mechanism for voting" to a person who is registered to vote in another state, regardless of whether that person now lives in Arizona, is eligible to vote in Arizona, and intends to vote only in Arizona. A.R.S. § 16-1016(12). The term "mechanism for voting" is not defined, but the statute expressly emphasizes that it is broad enough to include the mere act of "forwarding an early ballot" addressed to the voter. *Id*.

3. Being registered to vote in more than one state or county is not prohibited, and for good reason. People do not ordinarily think to affirmatively cancel their voter registration when they move, and there often is no obvious or easy way to do so. Nor is there any assurance that a jurisdiction will actually cancel a voter's registration immediately upon receiving a request.

4. The Felony Provision accordingly criminalizes vast swaths of constitutionally protected activity, while simultaneously making it more difficult for entirely lawful Arizona voters to cast a ballot. Certain groups of voters are likely to be more severely burdened, including those who tend to be more residentially transient, such as younger voters, poorer voters, and non-white voters, as well as older voters who move to Arizona to retire. The Felony Provision will make it harder for these voters to exercise their fundamental right to vote, while also threatening with criminal penalties those who would attempt to help them exercise that right.

5. Consider, for example, groups like Plaintiffs that work to assist eligible Arizonans in exercising their fundamental right to vote. If one of Plaintiffs' employees, members, or volunteers helps to register a voter in Arizona and that voter happens also to be registered to vote in another state, then Plaintiffs' employee, member, or volunteer could face criminal penalties under the plain terms of the Felony Provision. Or consider an Arizona parent who receives an early ballot in the mail for their child who just finished college out of state but is eligible to vote in Arizona. That parent could face felony charges if they forward the

student's early ballot to them if the student at some point registered to vote in their out-of-state college town—even if the student has no intention to, and never actually does, vote in two places.

6. The Felony Provision requires Plaintiffs and anyone else conducting voter registration or mobilization activities in Arizona to take an additional step of confirming that the voter they are assisting either has never previously registered to vote anywhere, or has affirmatively canceled any prior registrations before assisting that voter. Otherwise, Plaintiffs risk felony liability for providing such assistance. This risk will severely chill voter registration and mobilization efforts in Arizona, resulting in an undue burden on groups and individuals engaged in these efforts and voters who benefit from them.

7. The second and third Challenged Provisions—the Cancellation and Removal Provisions—force county recorders to cancel a voter's registration and remove a voter from the active early voting list if the voter is registered to vote in another Arizona county. The Cancellation and Removal Provisions do not require county recorders to notify the voter or ask for their consent before canceling their voter registration or removing them from the active early voting list; in fact, they do not require county recorders to make *any* inquiry at all of the voter, including to find out where the voter currently resides and intends to vote. A.R.S. §§ 16-165(A)(10), 16-544(Q). The Removal Provision, moreover, will have a significant impact on the right to vote because the overwhelming majority of Arizonans vote early by mail.

8. The Cancellation and Removal Provisions thus place an undue burden of affirmative cancellation on voters, particularly those who frequently move or change residences, because voters must cancel their other voter registrations if they want to prevent their current voter registration from being canceled or remain on the active early voting list.

9. The Cancellation and Removal Provisions also allow third parties to force county recorders to cancel voter registrations and remove voters from the active early voting list by allowing third parties to provide county recorders with "credible information that a

person has registered to vote in a different county." *Id*. §§ 16-165(B), 16-544(R). The Cancellation and Removal Provisions do not define the term "credible information" or require county recorders to investigate such information. As such, they would appear to allow any person or organization to petition county recorders to cancel voter registrations or remove people from the active early voting list *en masse* by providing "credible information" that those voters have voter registrations in two counties—notwithstanding that it is entirely lawful to be registered to vote in more than one location or that voters with multiple registrations may be intending to legally vote using only one of those registrations. The Cancellation and Removal Provisions thus provide a method for voter-suppressive groups to target historically disenfranchised voters and have them purged from the registration rolls and the early active voting list without any legal basis.

10. The fourth Challenged Provision—the Return Provision—requires anyone who receives an early ballot belonging to a former resident to write "Not at this address" on the ballot and return the ballot they received by placing it in the mail. *Id*. § 16-544(P). Assuming that the mail is successfully returned to the county recorder, the county recorder, upon receipt, is required either to "contact the voter at the voter's new residence address in order to update that voter's address or to move the voter to inactive status," which means the voter would be removed from the active early voting list. *Id.* § 16-544(E). These requirements essentially force Arizona residents to provide leads to the county recorder for removing others from the active early voting list, without articulating any legal basis for doing so.

11. SB 1260 has no rational connection to any legitimate government purpose. It will not improve election integrity or prevent election fraud. Instead, it will severely chill voter registration and voter engagement efforts and disenfranchise eligible Arizona voters.

12. Each of the Challenged Provisions unduly burdens the right to vote in violation of the First and Fourteenth Amendments. They also infringe upon the right to due process under the Fourteenth Amendment.

13. The Felony Provision also separately violates the First and Fourteenth Amendments because it is unconstitutionally vague and overbroad. In addition, the Felony Provision criminalizes enforcement of—and is preempted by—the National Voter Registration Act ("NVRA") because the Felony Provision makes it a felony to knowingly provide a "mechanism for voting" to any individual who has multiple voter registrations, if that voter is registered to vote in another state. On its face, the Felony Provision applies to state officials who are required to provide change-of-address forms to voters under the NVRA.

14. The Cancellation and Removal Provisions also violate the Equal Protection Clause of the Fourteenth Amendment by disproportionately affecting voters who are more likely to move and have multiple voter registrations, such as young voters, college students, and other transient voters who are more likely to be poorer voters and non-white voters, and by allowing third parties to engage in targeted voter suppression of those groups. The Cancellation Provision also independently violates the NVRA by requiring county recorders to remove individuals from the official list of eligible voters without following the procedural safeguards mandated by the NVRA, including providing notice to or receiving written confirmation from affected individuals.

15. SB 1260 is scheduled to go into effect on September 24, 2022. This Court should declare it invalid and enjoin its operation. No portion of SB 1260 is salvageable; each of its provisions is unconstitutional. *See State ex rel Napolitano v. Brown*, 194 Ariz. 340, 344 (1999) ("If the unconstitutional portions of the amendments are not severable from the remainder of the law, we must strike down the legislation as a whole.").

**JURISDICTION AND VENUE**

16. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the U.S. Constitution and federal law.

17. This Court has original jurisdiction over the subject matter of this action under Article III, § 2, of the Unites States Constitution and 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States.

18. This Court has personal jurisdiction over Defendants, who are domiciled in the State of Arizona and are sued only in their official capacities as Arizona's Secretary of State, Arizona's Attorney General, and each Arizona County Recorder.

19. Venue is proper in this district and division under 28 U.S.C. § 1391(b)(1) and LRCiv 5.1(a) because Defendants reside in Arizona. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to Plaintiffs' claims occurred in this judicial district and Defendants conduct business in this district in their official capacities.

20. This Court has the authority to enter a declaratory judgment and to provide injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure and pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

21. Plaintiff Arizona Alliance for Retired Americans, Inc. (the "Arizona Alliance") is a nonprofit corporation organized under section 501(c)(4) of the Internal Revenue Code. The Arizona Alliance's membership includes approximately 50,000 retirees from public and private sector unions, community organizations, and individual activists in every county in Arizona. The Arizona Alliance is a chartered affiliate of the Alliance for Retired Americans. Its mission is to ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work. The Arizona Alliance accomplishes this mission by actively pursuing and promoting legislation and public policies regarding critical issues facing older Americans and working families. The Arizona Alliance also accomplishes its mission by ensuring that its members are able to register to vote and meaningfully participate in Arizona's elections through voter registration activities such as encouraging voter registration at member meetings and phone banking drives.

22. The Challenged Provisions frustrate the Arizona Alliance's mission because they make it more difficult for the Arizona Alliance's members to register to vote and to receive and cast their ballots, thus making it more difficult for the Arizona Alliance and its members to associate. Because of SB 1260, the Arizona Alliance will need to divert resources from other mission-critical work to spending time educating its members and other voters about SB 1260 and how they can remain registered to vote and remain on the correct active early voting list despite the Removal and Cancellation Provisions. The Arizona Alliance will also need to educate its members and other voters on the Return Provision's requirement to affirmatively mark and return early ballots intended for previous residents.

23. The Felony Provision will stifle the Arizona Alliance's ability to engage with its members and constituents. Until a voter's prior registration is cancelled—a process that could take months—the Arizona Alliance would need to refrain from registering that voter or otherwise helping them to vote in order to ensure that its volunteers and employees would not be subject to criminal liability. Even helping a voter update their address for their voter registration could risk felony prosecution under the Felony Provision if that voter remains registered in another state. The Felony Provision will make it more difficult for the Arizona Alliance to recruit employees and volunteers to carry out its mission because of the risk of criminal liability for engaging in its mission-achieving work. If the Arizona Alliance proceeds with voter engagement activities despite the risks of doing so under SB 1260, then its employees and volunteers will be required to divert resources from their typical activities to focus on identifying members and constituents who are registered to vote in more than one state or Arizona county. The Arizona Alliance will need to help those voters cancel their non-active registrations to ensure that their active registrations are not cancelled or that the voters are not removed from the early active voting list. The Felony Provision will make it more costly and time-consuming for the Arizona Alliance to achieve its mission.

24. The Arizona Alliance also brings this action on behalf of its members. Most of the Arizona Alliance's members are between 55 and 90 years of age and many have

disabilities. Many of its members vote early by mail in large numbers, and many are members of the active early voting list. The Arizona Alliance also has many members that have moved from other states or counties where they were previously registered to vote, and who have not affirmatively canceled their previous voter registrations. The Arizona Alliance's members are at risk of having their registrations cancelled and being removed from the correct active early voting list as a result of SB 1260. They are also at risk of being found guilty of a felony for engaging in voter registration and mobilization activities as members of the Arizona Alliance.

25. Plaintiff Voto Latino is a nonprofit corporation organized under section 501(c)(4) of the Internal Revenue Code. Voto Latino is dedicated to growing political engagement in historically underrepresented communities, specifically young and Latinx voters. Voto Latino has made, and will continue to make, expenditures to educate, mobilize, and turn out voters in Arizona. Voto Latino employees and volunteers engage in voter registration drives and conduct email and social media advertising campaigns to remind voters—particularly Voto Latino's core constituency, young and Latinx voters—to vote and to keep their voter registrations up to date. Voto Latino also conducts get-out-the-vote efforts, including text banking and advertising campaigns, to encourage voters to vote, remind them to update their voter registrations, and inform them about available means of voting, such as early in-person voting or voting by mail. Voto Latino frequently engages with college students and new residents of Arizona during its voter education and mobilization efforts. Because of SB 1260, Voto Latino will need to divert resources from other mission-critical work to spending time educating its constituents about SB 1260, the requirement to affirmatively mark and return early ballots intended for previous residents, and the need to check whether a voter has multiple voter registrations or active early voting list memberships.

26. The Felony Provision will stifle Voto Latino's ability to engage with its constituents. The Felony Provision will make it more difficult for Voto Latino to recruit

employees and volunteers to carry out its mission because of the risk of criminal liability for providing assistance with voting. If Voto Latino proceeds with voter engagement activities despite the risks of doing so under SB 1260, then its employees and volunteers will be required to divert resources from their typical activities to focus on identifying members and constituents who are registered to vote in more than one state or Arizona county. Voto Latino anticipates that its constituents are more likely to be targeted by coordinated efforts by third parties to purge Latinx voters and students from Arizona's voter registration rolls and early voting lists, which SB 1260 permits with no notice to the affected voter. To combat this activity, Voto Latino will need to help its constituents cancel their non-active registrations. The Felony Provision will make it more costly and time-consuming for Voto Latino to achieve its mission.

27. Plaintiff Priorities USA ("Priorities") is a nonprofit corporation organized under section 501(c)(4) of the Internal Revenue Code. Priorities is a voter-centric progressive advocacy and service organization. Its mission is to build a permanent infrastructure to engage Americans by persuading, registering, and mobilizing citizens around issues and elections that affect their lives. In furtherance of this purpose, Priorities works to help educate, mobilize, register, and turn out voters across the country. Priorities has made and will continue to make contributions and expenditures in the millions of dollars to educate, register, mobilize, and turn out voters in upcoming state and federal elections around the country. Priorities has committed to invest $8.4 million in voter engagement efforts in Arizona for the 2022 election cycle. In anticipation of the upcoming Arizona state and federal elections, Priorities has already spent over $4.8 million on advertising and voter education, including efforts targeted at young voters and voters who have recently moved.

28. SB 1260 directly harms Priorities by frustrating its mission and its efforts to educate, register, and turn out Arizona voters. Priorities is aware of SB 1260 and is planning to expend and divert additional funds and resources in voter education efforts, as well as registration, mobilization, and turnout activities, particularly through advertisements, in

Arizona at the expense of its other efforts in order to combat the effects of SB 1260 on individuals who have multiple voter registrations or who assist individuals who have multiple voter registrations that have not been affirmatively cancelled. Priorities is concerned that many of the Arizona voter engagement organizations it funds will be deterred from engaging in robust operations because of the Felony Provision, making it more difficult for Priorities to achieve its mission.

29. Defendant Katie Hobbs is the Secretary of State for the State of Arizona and is named as a Defendant in her official capacity. In her official capacity, she is the Chief Election Officer of the State of Arizona and is responsible for overseeing the voting process in Arizona and is empowered with broad authority to carry out that responsibility. She is also responsible for proscribing rules for, among other things, early voting and voter registration, which are set forth in the Arizona Election Procedures Manual. A.R.S. § 16-452. She is also responsible for the coordination of state responsibilities under the NVRA. A.R.S. § 16-142(A).

30. Defendant Mark Brnovich is the Attorney General for the State of Arizona and is named as a Defendant in his official capacity. In his official capacity, he serves as the Chief Legal Officer of the State of Arizona and is responsible for prosecuting offenses under Title 16 ("Elections and Electors") of the Arizona Revised Statutes, which includes all of the provisions of SB 1260. A.R.S. § 16-1021. He is also responsible for enforcing criminal laws, such as the Felony Provision, by presenting evidence to the state grand jury and prosecuting all indictments. *Id.* §§ 21-424; 21-427(B).

31. Defendant Larry Noble is the Apache County Recorder and is named as a Defendant in his official capacity only. As County Recorder, he is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id*. §§ 16-165, 16-544.

32. Defendant David Stevens is the Cochise County Recorder and is named as a Defendant in his official capacity only. As County Recorder, he is responsible for

processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id*.

33. Defendant Patty Hansen is the Coconino County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id*.

34. Defendant Sadie Jo Bingham is the Gila County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

35. Defendant Wendy John is the Graham County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

36. Defendant Sharie Milheiro is the Greenlee County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

37. Defendant Richard Garcia is the La Paz County Recorder and is named as a Defendant in his official capacity only. As County Recorder, he is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

38. Defendant Stephen Richer is the Maricopa County Recorder and is named as a Defendant in his official capacity only. As County Recorder, he is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

39. Defendant Kristi Blair is the Mohave County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

40. Defendant Michael Sample is the Navajo County Recorder and is named as a Defendant in his official capacity only. As County Recorder, he is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

41. Defendant Gabriella Cázares-Kelly is the Pima County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

42. Defendant Dana Lewis is the Pinal County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

43. Defendant Suzanne Sainz is the Santa Cruz County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

44. Defendant Michelle Burchill is the Yavapai County Recorder and is named as a Defendant in her official capacity only. As County Recorder, she is responsible for processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

45. Defendant Richard Colwell is the Yuma County Recorder and is named as a Defendant in his official capacity only. As County Recorder, he is responsible for

processing and maintaining voter registration records, including cancelling voter registrations and maintaining the active early voting list. *Id.*

**STATEMENT OF FACTS AND LAW**

46. In 2021, Arizona was among the fastest-growing states in population growth, fueled by domestic migration: over 93,000 people relocated to Arizona from elsewhere within the United States. From July 2020 to July 2021, Maricopa County was the fastest-growing county in the country, with a population growth of over 58,000 people. Between 2010 and 2019, the population of individuals who are 65 years of age and older in Arizona increased by nearly 50%.

47. Early voting is very popular among Arizona voters. Because Arizona has no-excuse early voting, any registered voter, including new residents of Arizona, can vote early in any election. A.R.S. § 16-541. In addition, any Arizona voter may request to join the active early voting list. All voters who are added to the active early voting list will receive an early ballot by mail "automatically for any election" for which they are eligible to vote. *Id*. § 16-544(A), (H).

48. Over the past decade, early voting in Arizona has grown at a consistent and rapid rate. In the 2008 general election, for example, just over a million Arizona voters voted early. By the 2016 general election, that number had doubled to over two million voters. In 2018, a lower-turnout midterm election, around 1.9 million voters voted early. In 2020, around 2.4 million voters voted early. In the most recent election, over 1.2 million voters voted early in the 2022 gubernatorial primary.

49. SB 1260 targets voters who are registered to vote in more than one place even though having multiple registrations is legal and common, particularly among voters who have moved their residence. SB 1260 threatens these voters with severe harm—including disenfranchisement—because it requires county recorders to cancel a voter's registration and remove them from Arizona's active early voting list solely because they are registered to vote in another place and have not affirmatively cancelled their registration. There is no

requirement that the county recorder give the voter *any* notice of the cancellation, or an opportunity to avoid or contest it, much less that the recorder do so in accordance with federal law. As a result, many voters will suffer disenfranchisement because they will think that they are registered to vote and expect that they will be sent an early ballot by mail, only to learn that their county recorder made changes to their registration status *after* the deadline to register had already passed.

50. SB 1260 will have severe detrimental effects on Plaintiffs' ability to effectively engage with their members and constituents and assist them in exercising their right to vote. Each Challenged Provision of SB 1260 is discussed, in turn, below.

**A. Felony Provision (A.R.S. § 16-1016(12))**

51. SB 1260 amends A.R.S. § 16-1016 to add subsection (12) (the "Felony Provision"), which states that a person is guilty of a class 5 felony who:

> Knowingly provides a mechanism for voting to another person who is registered in another state, including by forwarding an early ballot addressed to the other person.

52. A class 5 felony conviction in Arizona carries a penalty ranging from six months to two years and six months' imprisonment. A.R.S. § 13-702(D). A conviction for a felony suspends the right to vote in Arizona. *Id*. § 13-904.

53. The Felony Provision does not define the operative phrase—providing a "mechanism for voting"—except to specify that the phrase should be interpreted broadly enough to include activity as diminutive as "forwarding an early ballot addressed to another person." *Id*. § 16-1016. The possibilities of prohibited activities are thus nearly limitless, ranging from registering a person to vote, to helping a person update their address for purposes of voting, to merely providing them with information on how to sign up for the active early voting list or cast their ballot. In fact, even *helping a person cancel their other voter registrations* could be considered providing them with a "mechanism for voting" under SB 1260, meaning that not only would Plaintiffs be prohibited from helping voters

register to vote because of SB 1260, but they would also be prohibited from helping them to remain registered to vote in compliance with SB 1260 by cancelling other registrations.

54. The Felony Provision also does not describe the "knowingly" *mens rea* requirement in any detail. From the plain text, a person could be guilty of a class 5 felony if they "[k]nowingly" "provide[] a mechanism for voting" regardless of whether they know that the specific person they are helping is registered in another state, and regardless of whether the person actually intends to vote in two states.

55. Though voting in more than one state is illegal, it is perfectly legal to be registered to vote in more than one state or in more than one county in Arizona. In fact, it is quite common.

56. The Felony Provision will severely chill Plaintiffs' voter registration and mobilization efforts in Arizona by making it a crime to "knowingly" provide "a mechanism for voting" to a voter who is registered to vote in another state. The ambiguity in the plain language of the Felony Provision only adds to the burden on Plaintiffs and makes it more likely that they will be deterred from engaging in voter registration and mobilization efforts. It is unclear, for example, which of Plaintiffs' voter registration or mobilization activities would constitute "a mechanism for voting."

57. A large part of Plaintiffs' voter registration and mobilization activities includes registering and engaging with voters who have moved to Arizona from other states, making it inevitable that some number among them have prior voter registrations in other states or counties. If Plaintiffs' employees or volunteers register or otherwise assist an individual who has not taken the affirmative step of successfully canceling their previous voter registration(s), they could face criminal penalties under the plain language of the Felony Provision.

58. The Felony Provision—especially its vagueness and overbreadth—imposes a severe burden on Plaintiffs' voter registration and mobilization efforts in Arizona because it apparently imposes felony charges on volunteers and staff for simply helping to register

or mobilize voters who may not have affirmatively cancelled other voting registrations—in other words, for being civically engaged or doing their jobs. And it requires organizations such as Plaintiffs to either confirm that each person they reach out to is not registered to vote in any other states, or to ensure that each person has successfully canceled any registration in another state before providing any further assistance. As a result, Plaintiffs' voter registration and mobilization activities will be severely hindered, and new Arizona residents will have less support in registering to vote and voting.

**B. Cancellation Provision (A.R.S. § 16-165(A)(10), (B)) and Removal Provision (A.R.S. § 16-544(Q)–(R))**

59. Through the Cancellation and Removal Provisions, SB 1260 imposes severe burdens on voters who move within the state.

60. SB 1260 amends A.R.S. § 16-165 to add subsections (A)(10) and (B) (the "Cancellation Provision"), which state that a county recorder "shall" cancel a registration in the following two circumstances:

> 1. When the county recorder receives confirmation from another county recorder that the person registered has registered to vote in that other county.
>
> 2. If the county recorder receives credible information that a person has registered to vote in a different county, the county recorder shall confirm the person's voter registration with that other county and, on confirmation, shall cancel the person's registration pursuant to subsection A, paragraph 10 of this section.

61. SB 1260 also amends A.R.S. § 16-544 to add subsections (Q) and (R) (the "Removal Provision"), which state:

> Q. When the county recorder receives confirmation from another county that a person registered has registered to vote in that other county, the county recorder shall remove that person from the active early voting list.
>
> R. If the county recorder receives credible information that a person has registered to vote in a different county, the county recorder shall confirm the person's voter registration with that

> other county and, on confirmation, shall remove that person from the county's active early voting list pursuant to subsection Q of this section.

62. The Cancellation and Removal Provisions require a county recorder to cancel an otherwise valid and active voter registration or remove an otherwise eligible voter from the active early voting list merely because "the person registered has registered to vote in that other county." A.R.S. § 16-165(A)(10); *id.* § 16-544(Q). SB 1260 contains no further explanation of *which* county recorder "shall cancel" the person's registration or *which* county recorder "shall remove" the person from the active early voting list. *Id.* § 16-165(A)(10), (B); *id*. § 16-544(Q), (R). Even if a person now resides in, is eligible to vote in, and intends to vote in a particular county, the Cancellation and Removal Provisions appear to require the county recorder *of that county* to cancel the person's voter registration or remove that person from the active early voting list if the person is registered in another county.

63. The Cancellation and Removal Provisions compel county recorders to cancel registrations and remove voters from the active early voting list without any requirement to provide notice to the affected voters and regardless of whether the affected voters consent to such action. *Id*. § 16-165(A)(10), (B); *id.* § 16-544(Q), (R). Similarly, there is no requirement for the county recorder to contact the voter to determine which voter registration should remain active. Without any notice, individual Arizona voters will have no knowledge as to whether any of their voter registrations are active, or which ones remain active, or whether they remain on any active early voting list.

64. The Cancellation and Removal Provisions do not contain any mechanism for the county recorders to coordinate their cancellations or removals, resulting in a scenario for voter disenfranchisement in which two county recorders might *each* cancel a voter's registration (or remove the voter from the active early voting list) in their respective counties upon receiving confirmation from each other that the voter has registered in both counties. This double cancellation could result in a person being suddenly stripped of any

active voter registration and being removed from all active early voting lists, without any notice whatsoever. And even if a voter's registrations are not all cancelled, nothing in the Cancellation Provision prevents the cancellation of the voter's registration where the voter currently resides, is eligible and intends to vote—a scenario that could also lead to disenfranchisement without notice. The Removal Provision similarly fails to protect against this situation; a voter could be removed, without notice, from the active early voting list in the county in which they intend to vote.

65. The Cancellation and Removal Provisions also allow third parties to provide county recorders with "credible information that a person has registered to vote in a different county." *Id.* § 16-165(B); *id.* § 16-544(R). Upon receiving such information, a county recorder is required—again, regardless of whether the affected voter consents or is even notified—to "confirm the person's voter registration with that other county" and, upon confirmation, to cancel the person's registration or remove the person from the active early voting list. *Id.* § 16-165(B); *id.* § 16-544(Q).

66. SB 1260 contains no explanation of what constitutes "credible information," who may provide it, or whether a county recorder has any duty to investigate.

67. The Cancellation and Removal Provisions will enable targeted voter suppression by allowing third parties to provide "credible information" about certain populations who may have moved. For example, a third party could contact the county recorder for the county where each university in Arizona is located and notify them of any students who have "registered to vote in a different county." *Id.* § 16-165(B); *see also id.* § 16-544(Q). Under the Cancellation and Removal Provisions, the county recorder would then be required to confirm with another county recorder whether these students have registered in a different county and, upon confirmation, cancel the students' voter registrations and remove the students from the active early voting list. There is no requirement to notify or receive permission from the students prior to canceling their voter registrations or removing them from the active early voting list.

**C. Return Provision (A.R.S. § 16-544(P))**

68. SB 1260 also amends A.R.S. § 16-544 to add subsection (P) (the "Return Provision"), which states:

> A person who receives an early ballot at an address at which another person formerly resided, without voting the ballot or signing the envelope, shall write "Not at this address" on the envelope and place the mail piece in a United States Postal Service collection box or other mail receptacle. On receipt the county recorder or other officer in charge of elections shall proceed in the manner prescribed in subsection E of this section.

69. The Return Provision requires a person who receives an early ballot addressed to a former resident to write "Not at this address" on the ballot and place the ballot in the mail. *Id*. § 16-544(P). Assuming that the mail is successfully returned to the county recorder as undeliverable, the county recorder, upon receipt, is required either to "contact the voter at the voter's new residence address in order to update that voter's address or to move the voter to inactive status," meaning the voter would be removed from the active early voting list. *Id*. § 16-544(E).

70. Though the Return Provision does not provide for specific penalties for the failure to comply, the mandatory language of the Return Provision would create an affirmative legal duty for Arizona residents to monitor their mail and mark and return any early ballots meant for former residents.

71. In other words, an Arizona resident who receives an early ballot addressed to a former resident and who simply ignores the early ballot (without marking it or placing it back in the mail) would be in violation of Arizona law under the Return Provision. The Return Provision effectively conscripts Arizona residents into helping the state purge their neighbors from the voter rolls.

**D. The Challenged Provisions Are Not Severable**

72. The Return Provision, standing alone without an enforcement mechanism, would not be "reasonable in light of [SB 1260] as originally drafted" and therefore cannot be

severed from the rest of SB 1260. *AZ Petition Partners LLC v. Thompson*, 511 P.3d 570, 583 (Ariz. App. 2022).

73. Indeed, given that multiple interrelated parts of SB 1260 would violate federal law and the U.S. Constitution in a myriad of ways, none of the Challenged Provisions of SB 1260 are salvageable and each must be struck down to preserve the voting rights of Arizona voters. *See Brown*, 194 Ariz. at 344 (holding that portions of a statute are severable only if "the valid parts are effective and enforceable standing alone and independent of those portions declared unconstitutional and if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act" (cleaned up)).

74. SB 1260 does not contain a severability provision, which demonstrates the legislature's intent to avoid "judicial surgery" on the bill. *Ruiz v. Hull*, 191 Ariz. 441, 459 (1998) (weighing the lack of as severability clause in favor of declining to sever invalid portions of a constitutional amendment voted into law by Arizona citizens).

## CLAIMS FOR RELIEF

### COUNT I

**Free Speech and Association Challenge to the Felony Provision Brought Against Mark Brnovich, in his official capacity as Attorney General for the State of Arizona, on the Grounds That it is Unconstitutionally Vague and Overbroad Under U.S. Const. amends. I, XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202**

75. Plaintiffs incorporate by reference the allegations in Paragraphs 1–74 as though fully set forth herein.

76. The Felony Provision is unconstitutionally overbroad and vague under the First and Fourteenth Amendments. It does not define its operative phrase—providing a "mechanism for voting"—except to specify that the phrase should be interpreted broadly enough to include activity as diminutive as "forwarding an early ballot addressed to another person." The possibilities of prohibited activities are thus nearly limitless, ranging from registering a person to vote, to helping a person update their address for purposes of voting

or registering to vote, to merely providing them with information on how to sign up for the active early voting list or cast their ballot.

77. The Felony Provision also does not describe the "knowingly" *mens rea* requirement in any detail. From the plain text, a person could be guilty of a class 5 felony if they "[k]nowingly" "provide[] a mechanism for voting," regardless of whether they know that the person they are helping is registered in another state, and regardless of whether the person actually intends to vote in two states.

78. A law is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Butcher v. Knudsen*, 38 F.4th 1163,1169 (9th Cir. 2022) (quotation marks omitted). Vague statutes are especially egregious when they "abut upon sensitive areas of basic First Amendment freedoms." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964).

79. The Felony Provision lacks clarity about what activities are prohibited or what activities could be deemed to provide a "mechanism for voting." Nor does it explain clearly what is meant by "knowingly provides a mechanism for voting." Thus, it fails to provide "fair notice of what is prohibited" and is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Butcher*, 38 F.4th at 1169 (quotation omitted).

80. Because Plaintiffs do not know which activities are permitted or prohibited under the Felony Provision, and because they do not know what level of knowledge is required to constitute a violation, their voter registration efforts and other voter engagement efforts will be hindered. *See, e.g.*, *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 720 (M.D. Tenn. 2019) (noting that even the threat of civil penalties "is likely to have a chilling effect on the entirety of [a voter registration] drive, including its communicative aspects"). These activities are core political speech. *Cf. Meyer v. Grant*, 486 U.S. 414, 421–22 (1988) (describing circulating a petition as "the type of interactive communication concerning

political change that is appropriately described as 'core political speech'" and is protected by the First Amendment).

81. A law is unconstitutionally overbroad when it makes conduct punishable that under some circumstances is constitutionally protected activity. "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612–615 (1973)).

82. Plaintiffs' efforts to help voters register and cast their ballots, as well as the accompanying conversations and interactions between Plaintiffs' representatives or volunteers and voters surrounding voting, are core political speech. *Cf. Meyer*, 486 U.S. at 421–22.

83. The Felony Provision is thus unconstitutionally vague and overbroad as it criminalizes any activity that provides a "mechanism for voting," without limitation, chilling Plaintiffs' efforts to register and mobilize voters and ensure that their voter registration information is up to date.

84. The Felony Provision is therefore unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution.

**<u>COUNT II</u>**

**Procedural Due Process Challenge to the Felony Provision Brought Against Mark Brnovich, in his official capacity as Attorney General for the State of Arizona Under U.S. Const. amend. XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202**

85. Plaintiffs incorporate by reference the allegations in Paragraphs 1–84 as though fully set forth herein.

86. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Supreme Court has long recognized that laws must give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act

accordingly" and "must provide explicit standards for those who apply them." *Id.*; *see also City of Chicago*, 527 U.S. at 52 (a law "may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.").

87. "The due process clause of the Fourteenth Amendment guarantees individuals the right to fair notice of whether their conduct is prohibited by law," and "[i]f a statute subjects transgressors to criminal penalties," as this one does, "vagueness review is even more exacting." *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000).

88. Although statutes do not have to be written with "mathematical" precision, they must be "intelligible, defining a 'core' of proscribed conduct that allows people to understand whether their actions will result in adverse consequences." *Id.* "Regardless of what type of conduct the criminal statute targets, the arbitrary deprivation of liberty is itself offensive to the Constitution's due process guarantee." *Id.* at 1012.

89. Here, Plaintiffs and other Arizonans have liberty interests in not facing criminal penalties, including imprisonment, and in being able to exercise the right to vote. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (noting that "the most elemental of liberty interests" is "the interest in being free from physical detention by one's own government"); *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1357 (D. Ariz. 1990) ("Because voting is a fundamental right, the right to vote is a 'liberty' interest which may not be confiscated without due process.").

90. By changing the law to make it a felony for anyone to knowingly provide voting assistance to eligible Arizona voters who have voter registrations in other states that have not been affirmatively cancelled, without specifying what "core" behavior is prohibited, nor providing any standards that would prevent arbitrary enforcement of the law, Defendants have deprived eligible Arizona voters of their due process rights.

91. Absent relief, Plaintiffs, along with the Arizona Alliance's members, will be denied important rights guaranteed under the Fourteenth Amendment.

## COUNT III

**Undue Burden on the Right to Vote Challenge to the Felony Provision Brought Against Mark Brnovich, in his official capacity as Arizona Attorney General for the State of Arizona**

**Under U.S. Const. amends. I, XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202**

92. Plaintiffs incorporate by reference the allegations in Paragraphs 1–91 as though fully set forth herein.

93. The Felony Provision will chill voter registration and mobilization efforts in Arizona because it makes it more costly and risky for organizations and individuals to undertake such activities. Some organizations may choose to cease such efforts altogether because of the risk of criminal penalties associated with providing assistance to a voter who registered to vote in another state and has not cancelled that registration.

94. The Felony Provision severely burdens the right to vote because the numerous voters who benefit from third party registration and mobilization efforts will have no opportunity or less opportunity to take advantage of such efforts. In addition, the Felony Provision burdens voters who wish to obtain assistance from third-party organizations engaged in registration and mobilization efforts because it requires voters to affirmatively and successfully cancel all other voter registrations before receiving assistance from any third party in either registering to vote, updating their voter registration information, or casting their ballot.

95. In the Ninth Circuit, a court considering a challenge to a state election law must carefully weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1187 (9th Cir. 2021) (cleaned up).

96. This balancing test uses a flexible sliding scale, where the rigorousness of scrutiny depends upon the extent to which the challenged law burdens voting rights. A law that imposes a "severe" burden is met with strict scrutiny. *Id.*

97. The Felony Provision will severely chill voter registration and mobilization activities in Arizona and consequently reduce Arizonans' ability to receive assistance in registering to vote, updating their voter registration information, or casting their ballot. Meanwhile, the Felony Provision is not necessary or justified by any legitimate state interest. A person's voter registration in another state is not related to whether that person is eligible to vote in Arizona.

98. The Felony Provision violates the First and Fourteenth Amendments by severely burdening the right to vote without justification by any legitimate state interest.

## COUNT IV

**National Voter Registration Act ("NVRA") § 8 Challenge to the Cancellation Provision Brought Against All Defendants Under U.S.C. § 20507(a), (d)**

99. Plaintiffs incorporate by reference the allegations in Paragraphs 1–98 as though fully set forth herein.

100. Section 8 of the NVRA, 52 U.S.C. § 20507(a)(3)–(4), makes it unlawful for the State to remove the name of a registrant from the official list of eligible voters unless it is either:

> (A) at the request of the registrant; (B) as provided by State law, by reason of criminal conviction or mental incapacity; or (C) as provided under . . . a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . a change in the residence of the registrant[.]

101. With respect to removing the name of a person from the eligible voter list when the person has moved, 52 U.S.C. § 20507(d)(1) of the NVRA provides specifically that:

> A State shall not remove the name of a registrant from the

> official list of eligible voters ... unless the registrant (A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or (B)(i) has failed to respond to a notice . . . ; and (ii) has not voted or appeared to vote . . . in [two consecutive federal election cycles].

102. The Cancellation Provision requires county recorders to cancel an individual's voter registration if they receive "credible information that a person has registered to vote in a different county" and confirm that registration with the other county. A.R.S. § 16-165(B). There is no requirement to notify, or receive any authorization from, the affected individual, much less to do so in accordance with the requirements of the NVRA.

103. The Cancellation Provision violates Section 8 of the NVRA and harms Plaintiffs, including their employees, members, or volunteers, because the Cancellation Provision requires county recorders to remove individuals from the official list of eligible voters without following the procedural safeguards mandated by the NVRA. Under SB 1260, county recorders must remove a person from the registration list when the person has moved and registered in another county, without (a) receiving written confirmation from the individual, (b) providing notice to the individual and an opportunity for the individual to respond, or (c) waiting for two consecutive federal election cycles in which the individual has not voted or appeared to vote.

104. The Cancellation Provision also imposes a burden on Plaintiffs, including their employees, members, or volunteers, by requiring voters to affirmatively cancel all of their other voter registrations if they want to avoid having their preferred voter registration canceled without their notice or consent. This requirement also violates Section 8 of the NVRA, which delineates specific grounds upon which a state may cancel a voter's registration.

105. The Cancellation Provision undermines the stated purposes of the NVRA to "increase the number of eligible citizens who register to vote," "enhance[] the participation

of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

106. Plaintiffs are entitled to declaratory and injunctive relief because Defendants have violated Section 8 of the NVRA by requiring county recorders to improperly remove individuals from the official list of eligible voters.

## COUNT V

**NVRA § 5 and Preemption Challenge to the Felony Provision Brought Against Mark Brnovich, in his official capacity as Attorney General for the State of Arizona Under 52 U.S.C. § 20504(a), (d)**

107. Plaintiffs incorporate by reference the allegations in Paragraphs 1–106 as though fully set forth herein.

108. Section 5 of the NVRA provides that a state's motor vehicle driver's license application "shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." 52 U.S.C. § 20504(a).

109. As Section 5 makes clear, "[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration." *Id.* § 20504(d).

110. This command is mandatory and applies "unless the registrant states on the [change-of-address] form that the change of address is not for voter registration purposes." *Id.*

111. The Felony Provision makes it a class 5 felony in Arizona to "knowingly provide[] a mechanism for voting to another person who is registered in another state, including by forwarding an early ballot addressed to the other person." A.R.S. § 16-1016(12).

112. The Felony Provision would apply to any person involved in helping update a voter's address for purposes of voting or registering to vote if that voter has previously

registered to vote in another state and has not affirmatively canceled that other voter registration.

113. The Felony Provision thus criminalizes enforcement of the NVRA, which requires state officials to update a person's voter registration address if a person submits a change of address form for their driver's license unless the person fails to sign the voter registration application. 52 U.S.C. § 20504(a), (d). The Felony Provision harms Plaintiffs, including their employees, members, or volunteers, by severely chilling and criminalizing the process of updating a voter registration address with a change of address form for a driver's license, which can lead to outdated voter rolls, disenfranchisement, and difficulty updating one's voter registration address.

114. "Under the Supremacy Clause of the Federal Constitution, when a state law conflicts with a properly enacted federal law, the state law is preempted." *Varela v. FCA US LLC*, 505 P.3d 244, 250 (Ariz. 2022); *see also* U.S. Const. Art. VI cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.").

115. "States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Also, "state laws are preempted when they conflict with federal law," such as when "compliance with both federal and state regulations is a physical impossibility," as well as "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quotation marks omitted).

116. "The assumption that Congress is reluctant to pre-empt does not hold when Congress acts under [the Elections Clause], which empowers Congress to make or alter state election regulations." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013) (quotation marks omitted).

117. The Felony Provision undermines the stated purposes of the NVRA to "increase the number of eligible citizens who register to vote," "enhance[] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

118. The Felony Provision directly conflicts with the NVRA, makes compliance with the NVRA impossible, and stands as an obstacle to the full purposes and objectives of the NVRA. Thus, the Felony Provision is preempted by the NVRA.

119. Plaintiffs are entitled to declaratory and injunctive relief because the Felony Provision violates and is preempted by the NVRA.

**<u>COUNT VI</u>**

**Procedural Due Process Challenge to the Cancellation and Removal Provisions Brought Against All Defendants Under U.S. Const. amend. XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202**

120. Plaintiffs incorporate by reference the allegations in Paragraphs 1–119 as though fully set forth herein.

121. The Cancellation and Removal Provisions compel county recorders to cancel registrations and remove voters from the active early voting list without any requirement to provide notice to the affected voters and regardless of whether the affected voters consent to such action. A.R.S. § 16-165(A)(10), (B); *id.* § 16-544(Q), (R). Similarly, there is no requirement for the county recorder to contact the voter to determine which voter registration should remain active.

122. "Because voting is a fundamental right, the right to vote is a 'liberty' interest which may not be confiscated without due process." *Raetzel*, 762 F. Supp. at 1357.

123. The Cancellation and Removal Provisions violate due process because the burden on voters being disenfranchised through removal from the registration and active early voting lists without notice to the voter or opportunity to contest such action is not outweighed by the State's interest in maintaining up-to-date voter registration rolls or preventing fraud. The Cancellation and Removal Provisions do not contain any mechanism

for the county recorders to coordinate their cancellations or removals, such that two county recorders might *each* cancel a voter's registration (or remove the voter from the active early voting list) in their respective counties upon receiving confirmation from each other that the voter has registered in both counties. This double cancellation could result in a person being suddenly stripped of any active voter registration and being removed from all active early voting lists, without any notice whatsoever.

124. And even if a voter's registrations are not all cancelled, nothing in the Cancellation Provision prevents the cancellation of the registration where the voter currently resides, is eligible and intends to vote—a scenario that could also lead to disenfranchisement without notice. The Removal Provision similarly fails to protect against this situation; a voter could be removed, without notice, from the active early voting list in the county in which they intend to vote.

125. The Cancellation and Removal Provisions do not have any reasonable relation to a legitimate state interest. A person's voter registration in another county is not related to whether that person is eligible to vote in Arizona. There is no reason why county recorders cannot provide notice or obtain consent before cancelling a registration or removing a voter from the early active voting list.

126. Nor are the Cancellation or Removal Provisions necessary to prevent election fraud: a person can commit election fraud without having multiple voter registrations, and having multiple voter registrations does not mean a person is committing election fraud. The same rationale applies for people on the active early voting list.

127. Absent relief, Plaintiffs, along with the Arizona Alliance's members, will be denied due process.

**COUNT VII**

**Undue Burden on the Right to Vote Challenge to the Cancellation and Removal Provisions Brought Against All Defendants**
**Under U.S. Const. amends. I, XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202**

128. Plaintiffs incorporate by reference the allegations in Paragraphs 1–127 as though fully set forth herein.

129. In the Ninth Circuit, a court considering a challenge to a state election law must carefully weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Hobbs*, 18 F.4th at 1187 (cleaned up).

130. This balancing test uses a flexible sliding scale, where the rigorousness of scrutiny depends upon the extent to which the challenged law burdens voting rights. A law that imposes a "severe" burden is met with strict scrutiny. *Id.*

131. The Cancellation and Removal Provisions severely burden the right to vote because they require voters to affirmatively and successfully cancel voter registrations in all Arizona counties—except for the one in which they intend to vote—in order to avoid the ultimate injury in the voting context: potential disenfranchisement because their registration has been cancelled or they have been removed from the active early voting list without notice.

132. Neither of these provisions has any reasonable relation to a legitimate state interest. A person's voter registration in another county is not related to whether that person is eligible to vote in Arizona.

133. Nor are the Cancellation or Removal Provisions necessary to prevent election fraud: people can commit election fraud without having multiple voter registrations, and having multiple voter registrations does not mean a person is committing election fraud. The same rationale applies for people on the active early voting list.

134. The Cancellation and Removal Provisions violate the First and Fourteenth Amendments by severely burdening the right to vote without any legitimate state interest.

**COUNT VIII**

**Equal Protection Challenge to the Cancellation and Removal Provisions Brought Against All Defendants**

**Under U.S. Const. amend. XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202**

135. Plaintiffs incorporate by reference the allegations in Paragraphs 1–134 as though fully set forth herein.

136. "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees each and every person that they will not be denied their fundamental rights—including the right to vote—in an arbitrary or discriminatory manner." *Charfauros v. Bd. of Elections*, 249 F.3d 941, 951 (9th Cir. 2001). "[I]f a challenged statute grants the right to vote to some citizens and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest." *Id.* (cleaned up).

137. Both the Cancellation and Removal Provisions place a duty on voters to affirmatively cancel their other voter registrations, which would disproportionately burden voters who are more likely to have multiple voter registrations, such as young voters, college students, older voters—many of whom move to Arizona when they reach retirement age—and other transient voters who are more likely to be poorer voters and non-white voters.

138. These same voters are more likely to register to vote in multiple states or counties and are thus more likely to have their voter registrations canceled pursuant to the Cancellation Provision and to be removed from the active early voting list pursuant to the Removal Provision, without any notice or opportunity to take corrective action to maintain their ability to vote.

139. The Cancellation and Removal Provisions will enable targeted voter suppression by allowing third parties to provide county recorders with "credible

information" about people that have voter registrations in multiple counties, which would then compel county recorders to confirm that information and, once confirmed, cancel the affected voter registrations and remove affected voters from the active early voting list. As discussed, SB 1260 makes it easier for voter suppressive groups to systematically target groups that are more likely to move, register to vote in multiple counties, or rely on the active early voting list, such as young voters, college students, older voters, and other transient voters who are more likely to be nonwhite and poorer voters.

140. The Cancellation and Removal Provisions amount to an "arbitrary or discriminatory" denial of the fundamental right to vote. *Charfauros*, 249 F.3d at 951.

141. The Cancellation and Removal Provisions are not "necessary to promote a compelling state interest," as is required if the provisions grant the right to vote to some citizens but deny it to others. *Id.* (cleaned up). Having multiple voter registrations is legal in Arizona and does not relate in any way to a person's eligibility to vote.

142. Nor are the Cancellation or Removal Provisions necessary to prevent election fraud: a person can commit election fraud without having multiple voter registrations, and having multiple voter registrations does not mean a person is committing election fraud. The same rationale applies for people on the active early voting list.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

a. Declaring, under the authority granted to this Court by 28 U.S.C. §§ 1983, 2201, and 2202, that Defendants have violated the NVRA and the First and Fourteenth Amendments through the Challenged Provisions of SB 1260;

b. Preliminarily and permanently enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from enforcing SB 1260;

c. Awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action under 42 U.S.C. § 1988 and other applicable laws; and

d. Granting such other and further relief as the Court deems just and proper.

Dated: September 2, 2022

Respectfully submitted,

*/s/ Daniel A. Arellano*
Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500

Aria C. Branch*
Daniel J. Cohen*
Joel Ramirez*
Tina Meng*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*