Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500
Telephone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com

Aria C. Branch*
Daniel J. Cohen*
Joel Ramirez*
Tina Meng*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
abranch@elias.law
dcohen@elias.law
jramirez@elias.law
tmeng@elias.law

* *Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance for Retired Americans, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona, et al.,<br><br>Defendants. | **No. CV-22-1374-PHX-GMS**<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

BACKGROUND ........ 3

I. The Felony Provision ........ 3

II. The Cancellation and Removal Provisions ........ 3

III. Impact of SB 1260 ........ 5

LEGAL STANDARD ........ 6

ARGUMENT ........ 6

I. Plaintiffs are likely to succeed on the merits of their claims. ........ 6

A. The Felony Provision violates the First and Fourteenth Amendments. ........ 7

1. The Felony Provision is unconstitutionally vague. ........ 7

2. The Felony Provision is also unconstitutionally overbroad. ........ 9

B. The Cancellation Provision violates and is preempted by the NVRA. ........ 11

C. The Cancellation and Removal Provisions violate due process. ........ 13

II. Absent an injunction, Plaintiffs will suffer irreparable harm. ........ 16

III. The balance of equities and the public interest favor an injunction. ........ 17

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona Democratic Party v. Hobbs*,
18 F.4th 1179 (9th Cir. 2021) .......... 14

*Arizona Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) .......... 6

*Baggett v. Bullitt*,
377 U.S. 360 (1964) .......... 7

*Buckley v. American Constitutional Law Foundation Inc.*,
525 U.S. 182 (1999) .......... 11

*Butcher v. Knudsen*,
38 F.4th 1163 (9th Cir. 2022) .......... 7, 8

*City of Chicago v. Morales*,
527 U.S. 41 (1999) .......... 10

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 16

*Forbes v. Napolitano*,
236 F.3d 1009 (9th Cir. 2000) .......... 7, 9

*Gooding v. Wilson*,
405 U.S. 518 (1972) .......... 10

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .......... 7, 8

*Hernandez v. Woodard*,
714 F. Supp. 963 (N.D. Ill. 1989) .......... 8

*Isaacson v. Brnovich*,
-- F.Supp.3d --, No. CV-21-01417-PHX-DLR, 2022 WL 2665932 (D. Ariz. July 11, 2022) .......... 16

*Isabel v. Reagan*,
394 F. Supp. 3d 966 (D. Ariz. 2019) .......... 11

*Jones v. Governor of Florida*,
950 F.3d 795 (11th Cir. 2020) .......... 17

*Kolender v. Lawson*,
461 U.S. 352 (1983) .......... 9

*League of Women Voters of Florida v. Browning*,
863 F. Supp. 2d 1155 (N.D. Fla. 2012) .......... 8

*League of Women Voters of North Carolina v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) .......... 17

*League of Women Voters v. Hargett*,
400 F. Supp. 3d 706 (M.D. Tenn. 2019) .......... 10

*League of Women Voters v. Sullivan*,
5 F.4th 714 (7th Cir. 2021) .......... 12, 13

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .......... 16, 17

*Meyer v. Grant*,
486 U.S. 414 (1988) .......... 10, 11

*Mi Familia Vota v. Hobbs*,
492 F. Supp. 3d 980 (D. Ariz. 2020) .......... 16

*National Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) .......... 6, 11

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 6

*Obama for America v. Husted*,
697 F.3d 423 (6th Cir. 2012) .......... 17

*Raetzel v. Parks/Bellemont Absentee Election Board.*,
762 F. Supp. 1354 (D. Ariz. 1990) .......... 14, 15

*Ripplinger v. Collins*,
868 F.2d 1043 (9th Cir. 1989) .......... 11

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
709 F.3d 1281 (9th Cir. 2013) .......... 6

*Stanley v. University of Southern California*,
13 F.3d 1313 (9th Cir. 1994) .......... 6, 17

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) .......... 16

*United States v. Stevens*,
559 U.S. 460 (2010) .......... 9

*University of Hawaii Profesional Assembly v. Cayetano*,
183 F.3d 1096 (9th Cir. 1999) .......... 17

*Winter v. Natural Resource Defense Council, Inc.*,
555 U.S. 7 (2008) .......... 6

**Statutes**

A.R.S. § 13-702(D) .......... 3, 9

A.R.S. § 13-904(A)(1) .......... 3

A.R.S. § 16–544(E) .......... 15

A.R.S. § 16-165(A)(10) .......... 1, 2, 3, 12, 14

A.R.S. § 16-165(B) .......... 1, 2, 3, 12, 14

A.R.S. § 16-452(C) .......... 15

A.R.S. § 16-544(Q) .......... 1, 2, 3, 14

A.R.S. § 16-544(R) .......... 1, 2, 3, 14

A.R.S. § 16-1016(12) .......... 1, 3, 7

52 U.S.C. § 20507(a)(3) .......... 12

52 U.S.C. § 20507(a)(4) .......... 12

52 U.S.C. § 20507(d)(1) .......... 12, 13

**Other Authorities**

Arizona State Legislature, *General Effective Dates*,
https://www.azleg.gov/general-effective-dates/ .......... 2

*Jan. 31, 2022 Hr'g on S.B. 1260 Before H. Comm. on Gov't & Elections*, 2022 Leg., 55th Sess. (Ariz. 2022), *available at* https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022031079 .................................. 9, 15

Sec'y Katie Hobbs, *2019 Elections Procedures Manual* (2019), https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf .................................................................... 12, 15

**INTRODUCTION**

This case challenges several interrelated provisions of recently enacted Senate Bill ("SB") 1260, which makes it unjustifiably harder for lawful Arizona voters to exercise their right to vote and threatens Plaintiffs with criminal penalties for engaging in core First Amendment activity, including assisting eligible Arizonans to exercise that fundamental right. The Court should enjoin the Felony Provision, A.R.S. § 16-1016(12); the Cancellation Provisions, A.R.S. § 16-165(A)(10), (B); and the Removal Provisions, A.R.S. § 16-544(Q)–(R) (collectively, the "Challenged Provisions") for the reasons discussed further below.[1]

*First*, Plaintiffs challenge SB 1260's Felony Provision, A.R.S. § 16-1016(12), which threatens with criminal penalties anyone who "knowingly provides a mechanism for voting" to someone who is registered to vote in another state, even if the voter never intends to—and does not—vote in multiple jurisdictions. Many Americans are registered to vote in more than one state. When Americans move, they often do not think to affirmatively cancel their voter registration in the jurisdiction they are leaving, nor are there always easy, obvious, or reliable ways to do so. The Felony Provision is not only unjustifiable, it is unconstitutionally vague and overbroad: it fails to define "mechanism for voting," a term which could be read to encompass nearly all forms of voter assistance and education, including activity that is clearly protected under the First Amendment. As a result, it fails to provide Plaintiffs with adequate notice as to which acts are prohibited and which remain permissible. Plaintiffs seek a preliminary injunction against the Felony Provision based on their claims that it violates the First Amendment and Due Process Clause (Counts I and II of the Amended Complaint, ECF No. 20).

---

[1] Section 3 of SB 1260 contains the Felony Provision; Section 1 of SB 1260 contains the Cancellation Provisions; and Section 2 of SB 1260 contains the Removal Provisions. References to these provisions are cited throughout this brief as they are proposed to be codified in the Arizona Revised Statutes.

*Second*, Plaintiffs challenge SB 1260's Cancellation and Removal Provisions, A.R.S. § 16-165(A)(10) and (B), and A.R.S. § 16-544(Q)–(R), respectively, which require county recorders to cancel a voter's registration and remove them from the active early voting list ("AEVL") if the voter is registered to vote in another Arizona county. There is no requirement that a voter be notified or consent before their registration is cancelled or they are removed from the AEVL; in fact, the Provisions do not require county recorders to make *any* inquiry at all of the voter, including to find out where the voter currently resides and intends to vote. Again, it is not uncommon for Americans to be registered to vote in more than one jurisdiction—especially those who move frequently—yet under SB 1260, the cancellation of the voter's registration or removal turns *solely* on the existence of another voter registration. It does not require any evidence that the voter intends to vote (or attempts to vote) in more than one jurisdiction, nor does it provide any guidance as to how recorders are to determine which county a voter is eligible to vote in, when the voter is registered in more than one county. To the contrary, the plain text requires that county recorders cancel a voter's registration or remove them from the AEVL simply upon confirming that the voter has another registration—meaning that a voter who recently moved could be cancelled in *all* jurisdictions in which they are registered, without any notice and without their consent. Moreover, the provisions encourage—and include no protection against—strategic efforts to disqualify voters based on nothing more than "credible information" indicating that the voters may be registered to vote in more than one Arizona county. Plaintiffs seek a preliminary injunction against the Cancellation and Removal Provisions based on their claim that they violate procedural due process (Count VI). Plaintiffs also seek a preliminary injunction against the Cancellation Provision on the ground that it violates the National Voter Registration Act ("NVRA") (Count IV).

None of these provisions are currently in effect: they become law on September 24, 2022. *See* Arizona State Legislature, *General Effective Dates*, https://www.azleg.gov/general-effective-dates/ (last visited Sept. 7, 2022) (55th

Legislature – Second Regular Session effective date). Issuing an injunction now would preserve the status quo. Each of the relevant factors favors Plaintiffs' requested injunction: not only are Plaintiffs likely to succeed on the claims at issue, but without an injunction, Plaintiffs, their members, and the constituencies they serve will suffer severe irreparable harm. Finally, the public interest and the equities also favor injunctive relief.

## BACKGROUND

### I. The Felony Provision

The Felony Provision imposes criminal penalties on anyone who "knowingly provides a mechanism for voting to another person who is registered in another state," regardless of the voter's eligibility to vote in Arizona, or their intent (or lack thereof) to vote in more than one jurisdiction. A.R.S. § 16-1016(12). The term "mechanism for voting" is not defined, but the statute sweeps broadly enough to include the mere act of "forwarding an early ballot" addressed to the voter. *Id*. Individuals convicted of violating this provision receive a class 5 felony conviction, which is punishable by imprisonment of six months or more, *id*. § 13-702(D), and loss of the right to vote, *id.* § 13-904(A)(1).

### II. The Cancellation and Removal Provisions

SB 1260 also contains two related provisions that force county recorders to take certain actions upon receiving "credible information" from a third party that a person is registered to vote in more than one Arizona county. *Id*. §§ 16-165(B); 16-544(R). Under the Cancellation Provision, county recorders must cancel a voter's registration upon receipt and confirmation that the voter is registered in another county, *id.* §§ 16-165(A)(10), (B), and under the Removal Provision, county recorders must remove that individual from the county's AEVL, *id.* §§ 16-544(Q)–(R). Neither provision requires county recorders to notify the voter or obtain their consent before taking action. In fact, the law does not require that *any* inquiry be made of the voter at all, including finding out where the voter currently resides or intends to vote.

The Cancellation and Removal Provisions thus allow third parties to force county recorders to cancel voter registrations and remove voters from the AEVL *en masse* by

simply identifying any voter in the county who appears to be registered elsewhere, even if that person does not intend to vote illegally, and even though it is perfectly legal (and even common, particularly among voters who move frequently) to be registered to vote in more than one jurisdiction. These provisions also create an environment for confusion and administrative chaos—the term "credible information" is undefined, and neither provision explains how county recorders should coordinate cancellations or removals, such that two county recorders might *each* cancel a voter's registration (or remove the voter from the AEVL) in their respective counties upon receiving confirmation of a voter's registration in the other county. This could result in a person being suddenly stripped of *any* active voter registration or early voting status, without any notice whatsoever. Similarly, the provisions do not distinguish between a county where the affected voter intends to vote and where they may simply have an outdated voter registration. Voters may therefore find that their registrations have been cancelled or that they are removed from the AEVL *for counties in which they are entirely eligible to and intend to lawfully vote*.

The Cancellation and Removal Provisions do not have any reasonable relation to a legitimate state interest. A person's voter registration or AEVL status in another county is not related to whether that person is eligible to vote in Arizona. There is no reason why county recorders cannot, at the very least, provide notice and obtain consent before cancelling a registration or removing a voter from the AEVL. Moreover, the Provisions presume—without any basis—that all voters who are registered in more than one location intend to commit voter fraud. Yet study after study has demonstrated that voter fraud is vanishingly rare. There are far less burdensome means of protecting the integrity of Arizona's elections than unilaterally invalidating the registrations of voters who have registrations in more than one jurisdiction. The same rationale applies for people on the AEVL. Further, the Cancellation Provision threatens to "clean up" the voter rolls in ways prohibited by federal law: the NVRA contains specific and careful procedures for removing voters from the rolls—safeguards to ensure that list maintenance procedures do

not result in disenfranchising lawful voters. Yet that is exactly what will follow if Defendants are permitted to implement these provisions.

**III. Impact of SB 1260**

SB 1260 will have a profound impact on Plaintiffs' voter registration and mobilization activities, which include phone and text banking; tabling in public locations; running digital media and word-of-mouth campaigns to remind voters to vote, update their registrations, and direct them to voting resources; and conducting get-out-the-vote and general voter education campaigns. *See* Ex. A, Cole Decl. ¶¶ 5, 7–13, 23; Ex. B, Patel Decl. ¶¶ 5, 7, 10–14; Ex. C, Cecil Decl. ¶¶ 4–5, 8, 10–11. Plaintiffs do not currently expend any resources on assisting voters with canceling their other voter registrations. Cole Decl. ¶ 14; Patel Decl. ¶ 21; Cecil Decl. ¶ 16. If SB 1260 goes into effect, Plaintiffs will be severely restricted in their ability to assist eligible Arizonans in accessing the franchise. Among other things, Plaintiffs will have to (1) develop processes and procedures to determine whether a voter or would-be voter may have outdated registrations in another state or county, and (2) be satisfied that any other voter registrations in other jurisdictions have been affirmatively canceled, *before* offering voter assistance. Cole Decl. ¶¶ 13, 21, 26; Patel Decl. ¶¶ 12–14, 21; Cecil Decl. ¶¶ 15–17. Otherwise, Plaintiffs' volunteers and employees will be at risk of felony prosecution if they help voters who happen to have an earlier (even if inactive) registration in another state. Further, Plaintiffs will now need to help voters identify and personally cancel any other voter registrations in other counties, *see, e.g.*, Cecil Decl. ¶ 16, because failing to do so would risk the voter's registration being cancelled or the voter being removed from the AEVL without notice. This, too, would require a massive diversion of resources that would otherwise go toward Plaintiffs' traditional voter registration and mobilization activities. Cole Decl. ¶¶ 12, 14–15, 20–21, 26–27, 29; Patel Decl. ¶¶ 3–5, 12–14, 20–21, 24–25; Cecil Decl. ¶¶ 9–13, 15–18, 20. And Plaintiffs will be injured by SB 1260 in other ways, too: they will need to divert resources to develop voter education and training programs to work around SB 1260's restrictive provisions, and potentially respond to

coordinated third-party voter suppression efforts which are enabled by SB 1260. Cole Decl. ¶¶ 12–13, 21, 26–27; Patel Decl. ¶¶ 14, 19–20, 24; Cecil Decl. ¶¶ 9, 15, 17.

## LEGAL STANDARD

A preliminary injunction should issue where the moving party shows: (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm in the absence of relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even if the moving party can only show that there are "serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue so long as the balance of hardships tips *sharply* in the [moving party's] favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quotation omitted). When the government is a party, the balance of equities and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts also consider whether the requested injunctive relief preserves or seeks to go beyond the status quo, as only the latter is disfavored and subject to a heightened burden of proof. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014).

## ARGUMENT

### I. Plaintiffs are likely to succeed on the merits of their claims.

Plaintiffs are likely to succeed on their claims that the Felony, Cancellation, and Removal Provisions violate the U.S. Constitution and the NVRA. Plaintiffs have standing to bring these claims—as described above, Plaintiffs provide voters with assistance registering to vote and voting and will suffer concrete injuries as a result of the enforcement of these Provisions, including having to divert mission-critical resources to attempt to counteract the negative impacts of the new law. *See generally* Cole Decl.; Patel Decl.; Cecil Decl.; *see also Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1039–41 (9th Cir. 2015).

### A. The Felony Provision violates the First and Fourteenth Amendments.

The Felony Provision violates the First and Fourteenth Amendments on two independent grounds: it provides no adequate notice of the scope of what it prohibits, and it sweeps far too broadly, covering a great deal of protected speech.

#### 1. The Felony Provision is unconstitutionally vague.

Plaintiffs are likely to succeed on their claim that the Felony Provision is unconstitutionally vague. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Forbes v. Napolitano*, 236 F.3d 1009, 1011–12 (9th Cir. 2000) ("The due process clause of the Fourteenth Amendment guarantees individuals the right to fair notice of whether their conduct is prohibited by law."). A law is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement," because there are "heightened risks of . . . disparate treatment of less popular speakers or viewpoints." *Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022). This analysis is conducted with a particularly skeptical eye when a law "abut[s] upon sensitive areas of basic First Amendment freedoms." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964). When a law implicating free speech is impermissibly vague, "it risks repressing the very discourse that the First Amendment protects and encourages." *Butcher*, 38 F.4th at 1169 (citing *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012)); *see also Grayned*, 408 U.S. at 109 (explaining that, when the scope of a law infringing on First Amendment-protected activity is unclear, it will "inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked" (quotation omitted)).

By making it a felony to "knowingly" provide a "mechanism for voting" to persons registered to vote in another state, A.R.S. § 16-1016(12), the Felony Provision threatens Plaintiffs' First Amendment rights. While the scope of the undefined phrase "mechanism for voting" is vague, it expressly encompasses acts as minimal as

"forwarding an early ballot addressed to the other person." *Id.* Thus, the Felony Provision as written is broad enough to cover voter registration and mobilization activities that are at the heart of Plaintiffs' organizational missions. *See* Cole Decl. ¶¶ 18–19; Patel Decl. ¶ 10; Cecil Decl. ¶ 8. Courts have recognized that the act of "encouraging others to register to vote" is "pure speech," and because that speech is political in nature, it is a "core First Amendment activity." *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1158 (N.D. Fla. 2012). Similarly, "[w]here groups, formal or informal, seek to advance their goals through the electoral process, regulations preventing their members from" engaging in their organizations' missions around voting and advocacy "impair their ability effectively to organize and make their voices heard." *Hernandez v. Woodard*, 714 F. Supp. 963, 973 (N.D. Ill. 1989) (citing *R.I. Minority Caucus, Inc. v. Baronian*, 590 F.2d 372, 376–77 (1st Cir. 1979)). Thus, where the Felony Provision implicates Plaintiffs' voter-support activities that are protected by the First Amendment, the court must "proceed with vigilance" in evaluating Plaintiffs' vagueness challenge. *Butcher*, 38 F.4th at 1169.

The Felony Provision's prohibition on providing a "mechanism for voting" is unconstitutionally vague because it fails to give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. The law criminalizes conduct—providing a "mechanism for voting"—but does not define the term. The potential scope of activities prohibited under this new provision is nearly limitless, and given the severe criminal penalties, Plaintiffs are forced to interpret this provision broadly to minimize their potential liability. *See* Cole Decl. ¶¶ 20–23; Patel Decl. ¶¶ 10–14; Cecil Decl. ¶ 8. In fact, even the act of helping a person *cancel* an out-of-state voter registration could be considered providing them with a "mechanism for voting" under SB 1260 because doing so facilitates their ability to vote in Arizona. To make matters worse, the law's only limiting language—the specification that a person must act "knowingly"—lacks clarity: it does not specify if the person must know that they are providing a mechanism for voting, that the other voter is registered in

another state, or both.

Though some of SB 1260's proponents asserted in legislative committee meetings that the law is limited to preventing acts of illegal voting, the actual text of the statute is not so limited. *Jan. 31, 2022 Hr'g on S.B. 1260 Before H. Comm. on Gov't & Elections*, 2022 Leg., 55th Sess. (Ariz. 2022) (bill sponsor Sen. J.D. Mesnard asserting the law is intended to stop "a deliberate act to try to help somebody vote who is not legally allowed to vote"), *available at* https://www.azleg.gov/videoplayer/?eventID=2022011106&start StreamAt=2098 (40:10–40:16). Nothing in the law restricts it to criminalizing only those activities that facilitate or lead to illegal or fraudulent voting in Arizona. Rather, the text of the bill broadly targets perfectly legal conduct: sending a ballot to someone who may be registered in another state, for instance a college student, regardless of whether the recipient intends to cast that ballot legally or does, in fact, cast the ballot legally. That the bill encompasses *non-fraudulent* activity further underscores its vagueness.

For these reasons, every operative portion of the Felony Provision is unconstitutionally vague. This lack of clarity is especially harsh because violating the Felony Provision can lead to a felony conviction, imprisonment, and disenfranchisement. A.R.S. §§ 13-702(D); 13-904. Statutes that impose criminal penalties require an exacting vagueness review, *see Kolender v. Lawson*, 461 U.S. 352, 357 (1983), as the arbitrary deprivation of liberty is offensive to the Constitution's due process guarantee, *Forbes*, 236 F.3d at 1012 (citing *Smith v. Goguen*, 415 U.S. 566, 575 (1972)). Thus, the Felony Provision should be enjoined.

**2. The Felony Provision is also unconstitutionally overbroad.**

Plaintiffs are also likely to succeed on their claim that the Felony Provision is unconstitutionally overbroad because it "create[s] a criminal prohibition of alarming breadth," pulling within its ambit a significant amount of protected speech. *United States v. Stevens*, 559 U.S. 460, 474 (2010). The overbreadth doctrine is premised on the notion that free-speech "freedoms need breathing space to survive" because "persons whose expression is constitutionally protected may well refrain from exercising their rights for

fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 521–22 (1972). As a result, the "government may regulate in the area only with narrow specificity," and speech regulations must "be carefully drawn or be authoritatively construed to punish unprotected speech and not be susceptible of application to protected expression." *Id.* at 522. "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quotation omitted).

As discussed, the Felony Provision inhibits the exercise of First Amendment rights. *See supra* II.A.1. In particular, it chills Plaintiffs' ability to engage in a range of mobilization and mission-critical work, including phone banking, tabling in public locations, running digital media and word-of-mouth campaigns to engage with voters, conducting get-out-the-vote and general voter education campaigns, and organizing communities of voters to participate in elections. *See* Cole Decl. ¶¶ 5, 7–13, 23; Patel Decl. ¶¶ 5, 7, 10–14; Cecil Decl. ¶¶ 4–5, 8, 10–11. All of these activities could be considered to provide a "mechanism for voting" under the overbroad language of SB 1260. As a result, these activities are at risk of becoming illegal if any of the voters receiving assistance are registered to vote in another state—a fact not easily ascertainable by Plaintiffs through regular interactions with their constituents and other voters.

The First Amendment protects the rights of free speech and expression, including "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). Encouraging voters to cast a ballot and assisting voters to do so "necess[arily] involves . . . the expression of a desire for political change." *Id.* at 421. Discussions about voting "implicate[] political thought and expression." *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 724 (M.D. Tenn. 2019) (citing *Buckley v. Am. Const. Law Found. Inc.*, 525 U.S. 182, 195 (1999)).

Plaintiffs' voting-related initiatives and efforts are typically accompanied by conversations and interactions between Plaintiffs' representatives or volunteers and voters, all of which constitute protected core political speech. *See Meyer*, 486 U.S. at 421–22; *see also* Cole Decl. ¶¶ 8–11; Patel Decl. ¶¶ 5, 7. Without clear guidelines about what is legally permissible, the Felony Provision effectively criminalizes a broad host of ordinary activities in which organizations engage as part of their right to associate and participate in the political process. *Cf. Buckley*, 525 U.S. at 203–04 (concluding that "absent evidence to the contrary," it would be improper to assume that there is fraud in the ballot initiative circulation process) (citing *Meyer*, 486 U.S. at 426 ).

Similarly, as discussed above, although the provision requires an individual to act "knowingly," it is unclear whether that individual simply must know whether they have provided a mechanism for voting, or whether they must know that the person they are helping is registered to vote in another state. *See supra* II.A.1. The Ninth Circuit has found scienter requirements like this one to be unconstitutionally overbroad in other contexts. *See Ripplinger v. Collins*, 868 F.2d 1043, 1056 (9th Cir. 1989) (finding an Arizona statute describing a class 5 felony to be unconstitutionally overbroad where "the [knowledge] scienter provision . . . unduly chill[ed] the exercise of protected expression," where it was unclear what knowledge was required for someone to be found guilty of the law). For these reasons, the Felony Provision is unconstitutionally overbroad and should be enjoined.

### B. The Cancellation Provision violates and is preempted by the NVRA.

Plaintiffs are likely to succeed on their claim that the Cancellation Provision violates the NVRA. "The NVRA expressly creates a private right of action for its violation: an aggrieved person may bring a civil action for declaratory or injunctive relief after complying with the applicable notice requirements." *Isabel v. Reagan*, 394 F. Supp. 3d 966, 976 (D. Ariz. 2019) (citing 52 U.S.C. § 20510(b)); *see also La Raza*, 800 F.3d at 1035 (noting that a "person" aggrieved includes "organizations as well as individuals"). The NVRA provides procedural safeguards before a voter's registration can be cancelled

and permits cancellation only in certain circumstances.

Section 8 of the NVRA makes it unlawful for voters to be removed from official lists of eligible voters unless it is either at the voter's request, because of a criminal conviction or mental incapacity, or under "a general program" to remove ineligible voters from the official lists by reason of death or "a change in the residence of the registrant[.]" 52 U.S.C. § 20507(a)(3)–(4). The NVRA provides that a state can remove a person on the basis of a change in address only if the person either confirms their change of residence in writing or has failed to respond to a notice and has not voted in two consecutive election cycles. *Id.* § 20507(d)(1). The Cancellation Provision, however, requires Arizona county recorders to cancel an individual's voter registration after receiving "credible information" and confirmation that the voter is registered elsewhere, without anything further. A.R.S. §§ 16-165(A)(10), (B). The Cancellation Provision thus violates Section 8 of the NVRA because it requires Arizona county recorders to remove individuals from the official list of eligible voters without the person providing written confirmation of their change of address or having the opportunity to respond to a notice and subsequently failing to vote in two consecutive election cycles.[2]

Recently, the Seventh Circuit concluded that analogous laws that circumvent the NVRA's strict notice-and-waiting requirements violated federal law. In *League of Women Voters v. Sullivan*, the court assessed a law that "allowed Indiana election officials to remove a voter from the state's voter rolls automatically (meaning without directly contacting the person in question) based on information acquired through a third-party database[.]" 5 F.4th 714, 718 (7th Cir. 2021). Like the Cancellation Provision here, the Indiana law required county officials to confirm that the voter had a registration out of state, and upon confirmation, cancel the voter's registration "without further notice or

[2] The Cancellation Provision is also inconsistent with NVRA obligations laid out in Arizona's operative Elections Procedures Manual ("EPM"). *See* Sec'y Katie Hobbs, *2019 Elections Procedures Manual* 37–40 (2019), https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf.

opportunity for the voter to contest her removal." *Id.* SB 1260 is even worse than the Indiana law, which at least required county officials to confirm that the out-of-state registration postdated the Indiana registration. *Id.*

The Seventh Circuit enforced the NVRA's express notice-and-waiting requirements, holding that under the plain language of 52 U.S.C. § 20507(d)(1), "a state may not remove a voter from its voter rolls without either (1) receiving a direct communication from the voter that she wishes to be removed or (2) going through the NVRA-prescribed process of (a) notifying the voter, (b) giving her an opportunity to respond, and (c) then waiting two inactive election cycles before removing her. *Any state law that fails to follow that prescription cannot stand*." *Id.* at 723 (emphasis added). The court held that the Indiana law "impermissibly allow[ed] Indiana to cancel a voter's registration without either direct communication from the voter or compliance with the NVRA's notice-and-waiting procedures." *Id.* at 724. Thus, the Indiana law "conflict[ed] with, and [wa]s thus preempted by, the federal NVRA." *Id.* at 730.[3]

The same rationale applies here: the Cancellation Provision requires Arizona recorders to cancel a voter's registration "without either direct communication from the voter or compliance with the NVRA's notice-and-waiting procedures." *Id.* at 724. In fact, the Cancellation Provision is even *less* protective of voters' rights than the Indiana law because it does not require county recorders to determine which of a voter's registrations is the most recent before cancellation. But even if it did, it would still violate the NVRA.

### C. The Cancellation and Removal Provisions violate due process.

Plaintiffs are likely to succeed on their claim that the Cancellation and Removal Provisions violate procedural due process. "Because voting is a fundamental right, the right to vote is a 'liberty' interest which may not be confiscated without due process."

[3] The Seventh Circuit also noted that there was no presumption against preemption when the NVRA was involved because "Congress's authority for the NVRA is rooted in the Constitution itself, whose Elections Clause expressly empowers Congress to make or alter state election regulations." *Id.* at 723.

*Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1357 (D. Ariz. 1990). Voting absentee is also "deserving of due process." *Id.* at 1358.

In the Ninth Circuit, a court considering a due process challenge to a state election law must carefully weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1187 (9th Cir. 2021) (cleaned up). This balancing test uses a flexible sliding scale, where the rigorousness of scrutiny depends upon the extent to which the challenged law burdens voting rights. A law that imposes a "severe" burden must meet strict scrutiny. *Id.*

The Cancellation and Removal Provisions compel county recorders to cancel registrations and remove voters from the AEVL if the voter has a registration in another county. A.R.S. § 16-165(A)(10), (B); *id.* § 16-544(Q), (R). As discussed, there is no requirement that county recorders notify the affected voters, receive their consent, or even attempt to determine which voter registration or AEVL status should remain active.

The Cancellation and Removal Provisions place several burdens on voters. Many will not be aware that their registration or AEVL enrollment could be unilaterally cancelled without notice simply because they have a voter registration elsewhere (a fact of which they may also be unaware). Such voters are unlikely to take any steps to protect themselves against cancellation or removal and may not learn that there is an issue until right before or on election day, when it is too late to re-register. This is especially so if organizations such as Plaintiffs are chilled in their outreach to voters. These voters are at risk of the most severe burden—disenfranchisement. But even voters who happen to learn that their registration or AEVL enrollment is at risk will hardly be spared from harm or even severe burdens. Many jurisdictions do not have an easy, obvious, or reliable way to ensure that a voter's registration has been cancelled. The burden to prophylactically cancel registrations will be particularly severe for voters who have

moved frequently, and may have multiple registrations, across many different jurisdictions.

There is no reason why county recorders cannot provide notice and obtain consent before cancelling a registration or removing a voter from the AEVL—in fact, Arizona law currently provides for a process whereby county recorders "shall take the necessary steps to contact the voter at the voter's new residence address" before removing the voter from the AEVL. A.R.S. § 16-544(E). SB 1260 amends § 16-544 but does not incorporate any notice requirement into the Cancellation and Removal Provisions. This omission evinces a legislative intent *not* to provide notice and an opportunity to cure, in violation of due process. *See Raetzel*, 762 F. Supp. at 1358 ("[D]ue process is not provided when the election procedures do not give some form of post-deprivation notice to the affected individual so that any defect in eligibility can be cured and the individual is not continually and repeatedly denied so fundamental a right.").[4]

The Cancellation and Removal Provisions also do not have any reasonable relation to a legitimate state interest. First, SB 1260 will not prevent election fraud: having multiple voter registrations is common, does not mean a person is ineligible to vote using a given voter registration, and does not mean a person is committing, plans to commit, or has committed election fraud. Second, although the Legislature sought to eliminate duplicate registrations, *see, e.g.*, *Jan. 31, 2022 Hr'g on S.B. 1260 Before H. Comm. on Gov't & Elections*, 2022 Leg., 55th Sess. (Ariz. 2022) (bill sponsor Sen. J.D. Mesnard asserting the law was "to go after duplicate registration" and ensure "folks aren't registered in more than one place at a time"), *available at* https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022031079 (38:57–39:06), the Cancellation and Removal Provisions are a blunt instrument to

[4] The Cancellation and Removal Provisions are also inconsistent with the Arizona Election Procedures Manual, which carries the force of law, A.R.S. § 16-452(C), and requires that county recorders conduct "individualized inquir[ies] before canceling any registration record" on the basis of information received from another jurisdiction that may implicate a voter's registration. *2019 Elections Procedures Manual* at 35.

achieve this result. Because the provisions do not require county recorders to inquire where a voter presently lives or plans to vote, and because they generally lack guidance as to which of multiple registrations to cancel, the law is likely to lead to the cancellation of *all* of a voter's registrations or the wrong registration. Ultimately, these provisions may lead to the total disenfranchisement of eligible Arizona voters without any notice. And these provisions invite coordinated voter suppression from third parties, who are now incentivized to provide "credible information" to county recorders *en masse*, identifying voters with multiple registrations, to initiate a mandatory confirm-and-cancel or confirm-and-remove process.

## II. Absent an injunction, Plaintiffs will suffer irreparable harm.

Unless SB 1260 is enjoined, Plaintiffs will suffer severe and irreparable harm. "[U]nlike monetary injuries, constitutional violations cannot be adequately remedied through damages." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Because of its vagueness and overbreadth, the Felony Provision threatens to deprive Plaintiffs of important First Amendment rights, which "constitutes irreparable injury" even if the deprivation is for "minimal periods of time." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The law's vagueness also deprives Plaintiffs of their procedural due process rights guaranteed by the Fourteenth Amendment. *See Isaacson v. Brnovich*, – F.Supp.3d –, No. CV-21-01417-PHX-DLR, 2022 WL 2665932, at *9 (D. Ariz. July 11, 2022). As for the Cancellation and Removal Provisions, courts in this District have found that real harm is suffered through the "loss of possibly tens of thousands of voter registrations" and infringement on plaintiffs' "First and Fourteenth Amendment rights to organize voters." *Mi Familia Vota v. Hobbs*, 492 F. Supp. 3d 980, 988 (D. Ariz. 2020). SB 1260 will cause such harm here.

Finally, where SB 1260 operates to limit the rights of voters to participate in an election, such impact and denial of access to the franchise constitutes irreparable injury.

*See, e.g.*, *Jones v. Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020) ("The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm."); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (finding irreparable injury on the basis that "once the election occurs, there can be no do-over and no redress").

Both individually and cumulatively, the injuries Plaintiffs will experience due to the Challenged Provisions weigh in favor of granting Plaintiffs' request for relief.

**III. The balance of equities and the public interest favor an injunction.**

The balance of equities and the public interest also strongly favor injunctive relief. To make this determination, a court must "identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it," and then weigh "the hardships of each party against one another." *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).

First, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Second, there is a strong public interest in "permitting as many qualified voters to vote as possible." *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012). SB 1260 directly contravenes that interest by unnecessarily purging voters from the voter rolls, removing voters' ability to participate in early voting by mail, and broadly criminalizing behavior that facilitates participation in elections. Finally, because SB 1260 has not yet gone into effect, the requested relief is "[a] prohibitory injunction [that] preserves the status quo," *Stanley*, 13 F.3d at 1320, meaning there is no burden on Defendants to implement an injunction, if granted.

**CONCLUSION**

For the reasons set forth herein, Plaintiffs' Motion for Preliminary Injunction should be granted.

Dated: September 8, 2022

*/s/ Daniel A. Arellano*
Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500

Aria C. Branch*
Daniel J. Cohen*
Joel Ramirez*
Tina Meng*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2022, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*/s/ Daniel A. Arellano*