# EXHIBIT C

Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500
Telephone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com

Aria C. Branch*
Daniel J. Cohen*
Joel Ramirez*
Tina Meng*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
abranch@elias.law
dcohen@elias.law
jramirez@elias.law
tmeng@elias.law

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Arizona Alliance for Retired Americans; Voto Latino; Priorities USA,

Plaintiffs,

v.

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona; Mark Brnovich, in his official capacity as Attorney General for the State of Arizona; Larry Noble, in his official capacity as Apache County Recorder; David Stevens, in his official capacity as Cochise County Recorder; Patty Hansen, in her official capacity as Coconino County Recorder; Sadie Jo Bingham, in her official capacity as Gila County Recorder; Wendy John, in her official capacity as Graham County Recorder; Sharie Milheiro, in her official capacity as Greenlee County Recorder; Richard Garcia, in his official capacity as La Paz County Recorder; Stephen Richer, in his

**No. CV-22-1374-PHX-GMS**

**DECLARATION OF GUY CECIL**

official capacity as Maricopa County Recorder; Kristi Blair, in her official capacity as Mohave County Recorder; Michael Sample, in his official capacity as Navajo County Recorder; Gabriella Cázares-Kelly, in her official capacity as Pima County Recorder; Dana Lewis, in her official capacity as Pinal County Recorder; Suzanne Sainz, in her official capacity as Santa Cruz County Recorder; Michelle Burchill, in her official capacity as Yavapai County Recorder; and Richard Colwell, in his official capacity as Yuma County Recorder;

Defendants.

I, Guy Cecil, hereby declare, under the penalty of perjury, and state the following:

1. I am over the age of 18, have personal knowledge of the facts below, and can competently testify to their truth.

2. My name is Guy Cecil. I am currently the Chairman of Priorities USA ("Priorities"), a nonprofit corporation organized under section 501(c)(4) of the Internal Revenue Code.

3. Priorities is a voter-centric progressive advocacy and service organization. Its mission is to build a permanent infrastructure to engage Americans by educating, persuading, registering, and mobilizing citizens around issues and elections that affect their lives.

4. To accomplish these goals, Priorities has made and will continue to make contributions and expenditures in the millions of dollars to educate, register, mobilize, and turn out voters in upcoming state and federal elections around the country. As part of a $30 million investment in digital mobilization and persuasion efforts, Priorities has committed $8.4 million in Arizona to engage in crucial voter education efforts for the 2022 election cycle. These funds are focused on: (1) get-out-the-vote efforts, (2) vote-by-mail education programs, (3) sponsoring search ads that provide instructions on how to vote and how voters can check the status of their registration, and (4) encouraging early voting in person.

5. In anticipation of the upcoming Arizona state and federal elections, Priorities

has already spent over $4.8 million this year on advertising and voter education activities in Arizona, including efforts targeted at voters who have recently moved.

6. Arizona's recent Senate Bill ("SB") 1260 will severely impact every aspect of Priorities' strategy development and programming, requiring the diversion of resources that would otherwise be directed towards other get-out-the-vote and voter protection efforts if the law had not been enacted.

**The Felony Provision**

7. I am aware of SB 1260's Felony Provision, which criminalizes a broad range of activities related to providing voting assistance to individuals who have multiple voter registrations.

8. It is unclear what conduct the Felony Provision criminalizes but it appears to render a broad swath of Priorities' current voter support activities illegal. I am concerned that the Felony Provision will chill the activities of Priorities and organizations that Priorities supports and funds because the Felony Provision creates new risks of jail time for engaging in simple voter mobilization efforts. For instance, a website funded and hosted by Priorities currently provides information and links that allow Arizona voters to request their ballot online, look up election deadlines, ballot drop off locations and early voting hours, and register to vote or update their registration. Because Priorities permits all voters to avail themselves of these resources, not just Arizona voters who are only registered to vote in Arizona and no other state, all of these activities could be considered "knowingly" providing "a mechanism of voting," if they are provided to a person who is registered to vote in more than one state, which is now prohibited by the Felony Provision. The threat of criminal prosecution means Priorities must rethink how it has structured its strategy along these and other mission-critical areas.

9. The vagueness of the Felony Provision means that organizations and individuals will also have to spend additional resources trying to understand what the law prohibits, including by expending resources on legal counsel.

10. The Felony Provision will also force Priorities and its partner organizations to shift money and resources towards assessing how to engage in Arizona in light of the new statute. For instance, a large part of Priorities' activities in the state relate to targeting ads at younger voters, college students, and frequent movers. In particular, Priorities recently invested $2 million in ad campaigns urging voters to check their voter registration status. These additional investments are driven in part by new laws like SB 1260 that criminalize the involvement of others in assisting voters in checking and updating their registration.

11. Recently, Priorities provided $25,000 grants, along with specialized training and ongoing support from Priorities staff, to assist with partner organizations' voter registration and anti-misinformation voter education campaigns in Arizona. Because of the Felony Provision, Priorities will be forced to dedicate additional money and staff time to explaining (or attempting to explain) the contours of the Felony Provision and how that may affect partner organizations' programming. Priorities is concerned that these Arizona partner organizations may "knowingly" provide a "mechanism for voting" to voters who have multiple registrations through programming that is funded using Priorities' grant money.

12. Priorities' grant program will expand in size and scope in the fall. Priorities intends to grant funds to more Arizona organizations, which will require Priorities to continue to divert time and resources towards counteracting the restrictions of SB 1260, including the Felony Provision.

13. If SB 1260 had not been enacted, Priorities would be utilizing its funds and staff resources to engage in the campaigns it originally planned for without concern about how those campaigns would be impacted by a restrictive voting law.

**<u>The Cancellation and Removal Provisions</u>**

14. I am also aware of SB 1260's Cancellation and Removal Provisions, which threaten an unknown number of voters with disenfranchisement and removal from the voter

registration rolls and early voting lists.

15. To continue effectuating its mission of educating and turning out Arizona voters in light of SB 1260, Priorities must significantly rethink its strategy across the state. For instance, the Cancellation and Removal Provisions will require Priorities to provide more grant funds to in-state partner organizations so that they can provide education and training on the harms of the Cancellation and Removal Provisions, namely that significant numbers of voters could be purged from the registration rolls and the early voting lists without any notice or opportunity to contest their removal.

16. Priorities will spend time and funds on making voters aware that they need to determine whether they have multiple voter registrations and that they should cancel any prior registrations so that they are not removed from the voter registration rolls and early voting lists pursuant to the Cancellation and Removal Provisions. But if those provisions had never been enacted, Priorities would be able to spend its time and funding to focus on true voter mobilization activities.

17. Priorities is also in the impossible position of having to rethink its trainings for partner organizations on how to engage with voters in a way that reconciles SB 1260 and federal law, as the new law creates inherent contradictions between the two.

18. Finally, because of the Challenge and Removal Provisions, Priorities will have to utilize more staff time to analyze data and reports on voting activities to obtain the same understanding of the voting landscape and where to focus its efforts in response to these new state laws.

**Impact of SB 1260 on Priorities**

19. SB 1260 directly harms Priorities by frustrating its mission and its efforts to educate, register, and turn out Arizona voters.

20. Unless these provisions are enjoined, SB 1260 will have a tangible impact on Priorities' allocation of resources and undermine its core voter registration and mobilization efforts, resulting in Arizona residents having less support in registering to vote and voting.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: September 1, 2022

Guy Cecil