**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (25463)
Jennifer J. Wright (27145)
*Assistant Attorneys General*
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Facsimile: (602) 542-8308
beau.roysden@azag.gov
drew.ensign@azag.gov
jennifer.wright@azag.gov
acl@azag.gov

*Attorneys for Defendant Mark Brnovich*
*Attorney General of the State of Arizona*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Alliance for Retired Americans, et al.,<br>Plaintiffs,<br>vs.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona; Mark Brnovich, in his official capacity as Attorney General for the State of Arizona, et al.,<br>Defendants. | Case No: 2:22-CV-01374-GMS<br><br>**ATTORNEY GENERAL MARK BRNOVICH'S RESPONSE IN OPPOSITION OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
INTRODUCTION ..... 1
LEGAL STANDARD ..... 2
BACKGROUND ..... 3
ARGUMENT ..... 6
I. PLAINTIFFS CLAIMS ARE NON-JUSTICIABLE ..... 6
A. Plaintiffs Challenge to Cancellation and Removal Provisions Of SB 1260 Fail Because Plaintiffs Cannot Establish Redressability ..... 6
1. Pre-Existing, Unchallenged Laws And Procedures Require County Recorders To Cancel Duplicate Registrations And Remove Voters From The Active Early Voting List ..... 6
2. Because Plaintiffs Do Not Challenge The Existing Laws And Procedures, They Lack Article III Standing ..... 7
B. Plaintiffs Claims As To The Felony Provision Of SB 1260 Are Not Ripe ..... 8
1. Plaintiffs Face No "Genuine Threat Of Imminent Prosecution" ..... 8
2. Plaintiffs' Vagueness Challenge Is Not Ripe ..... 9
II. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS ..... 10
A. The Felony Provision is Neither Vague Nor Overbroad ..... 10
B. Under Arizona Law, The Cancellation Provision Cannot Be Implemented in Violation Of The NVRA ..... 12
C. The Cancellation and Removal Provisions Do Not Violate Due Process ..... 13
1. Freestanding Procedural Due Process Claims Are Barred ..... 13
2. The Cancellation and Removal Provisions Do Not Impose A "Severe Burden" ..... 14
III. THE REMAINING *WINTER* FACTORS PRECLUDE RELIEF ..... 15
A. Plaintiffs Are Not Likely To Suffer Irreparable Harm ..... 15
B. The Balance Of Equities Disfavors Plaintiffs' Motion—Particularly Because Of Their Delay ..... 16
C. The Public Interest And *Purcell* Doctrine Preclude Plaintiffs' Relief ..... 17
CONCLUSION ..... 17

## TABLE OF AUTHORITIES

### CASES

*Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840 (9th Cir. 2007) ..... 10

*Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) ..... 13

*Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179 (9th Cir. 2021) ..... 14

*Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085 (9th Cir. 2019) ..... 14

*Ariz. Libertarian Party v. Reagan*, 798 F.3d 723 (9th Cir. 2015) ..... 14

*Arizona Democratic Party v. Hobbs*, 976 F.3d 1081 (9th Cir. 2020) ..... 17

*Arizonans for Fair Elections v. Hobbs*, 454 F. Supp. 3d 910 (D. Ariz. 2020) ..... 7

*B Street Grill and Bar LLC v. Cincinnatti Ins. Co.*, 525 F.Supp.3d 1008 (D. Ariz. 2021) ..... 3

*Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010) ..... 9

*Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009) ..... 14

*Coalition for Econ. Equity v. Wilson*, 122 F.3d 718 (9th Cir. 1997) ..... 16, 17

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) ..... 12

*Common Cause/Ga. v. Billups*, 554 F.3d 1340 (11th Cir. 2009) ..... 15

*Dudum v. Arntz*, 640 F.3d 1098 (9th Cir. 2011) ..... 13, 14

*Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996) ..... 10

*Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014) ..... 15

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ..... 10

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ..... 12

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.*,
992 F.3d 1299 (11th Cir. 2021) ..... 15

*LaRouche v. Fowler*,
152 F.3d 974 (D.C. Cir. 1998) ..... 14

*Maryland v. King*,
567 U.S. 1301 (2012) ..... 16

*Mays v. LaRose*,
951 F.3d 775 (6th Cir. 2020) ..... 15

*Nader v. Brewer*,
531 F.3d 1028 (9th Cir. 2008) ..... 13

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*,
457 F.3d 941 (9th Cir. 2006) ..... 7

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
762 F.2d 1374 (9th Cir. 1985) ..... 2, 16

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) ..... 13, 15

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ..... 15, 16, 17

*Raetzel v. Parks/Bellemont Absentee Election Bd.*,
762 F. Supp. 1354 (D. Ariz. 1990) ..... 14

*Renne v. Geary*,
501 U.S. 312 (1991) ..... 7

*RNC v. DNC*,
140 S. Ct. 1205 (2020) ..... 17

*Rose v. Locke*,
423 U.S. 48 (1975) ..... 9

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006) ..... 11

*Smith v. Goguen*,
415 U.S. 566 (1974) ..... 11

*Soltysik v. Padilla*,
910 F.3d 438 (9th Cir. 2018) ..... 14

*State v. Millsaps*,
2018 WL 3722923 (Ariz. App. 2018) ..... 9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..... 8

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 7

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) .......... 2, 8

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) .......... 13

*U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers AFL-CIO*,
413 U.S. 548 (1973) .......... 9

*United States v. Salerno*,
481 U.S. 739 (1987) .......... 2, 11

*United States v. Stevens*,
559 U.S. 460 (2010) .......... 11

*United States v. Williams*,
553 U.S. 285 (2008) .......... 12

*United States. v. Powell*,
423 U.S. 87 (1975) .......... 11

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) .......... 9, 11

*Winter v. NRDC*,
555 U.S. 7 (2008) .......... 2

*Yazzie v. Hobbs*,
977 F.3d 964 (9th Cir. 2020) .......... 8

**STATUTES**

A.R.S. § 16-101(B) .......... 4, 8, 14

A.R.S. § 16-125 .......... 4

A.R.S. § 16-168(J) .......... 1, 2, 3, 4, 7, 12

A.R.S. § 16-544 .......... 5

A.R.S. §16-1016(12) .......... 9

**CONSTITUTIONAL PROVISIONS**

Ariz. Const. art. 7, § 12 .......... 5

**OTHER AUTHORITIES**

1991 Ariz. Legis. Serv. 3rd Sp. Sess. Ch. 1 (S.B. 1001) (WEST) .......... 8

2003 Ariz. Legis. Serv. Ch. 260 (S.B. 1075) (West) .......... 3, 6

Ariz. Sec. of State, *2014 Elections Procedures Manual* (June 2014), https://azsos.gov/sites/default/files/election_procedure_manual_2014.pdf (last visited Sept. 18, 2022) ........ 3, 6, 12, 13

Ariz. Sec. of State, *2019 Elections Procedures Manual* 16 (Dec. 19, 2019), https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf ("2019 EPM") (last visited Sept. 18, 2022) ........ 3, 4, 6

**INTRODUCTION**

Plaintiffs' preliminary injunction motion is a needless fire drill that could have been avoided by a simple phone call or two. In particular, a simple inquiry to the Secretary of State ("Secretary") or Maricopa County Recorder would have confirmed that Senate Bill 1260's ("SB 1260's") Cancellation and Removal Provisions does *essentially nothing* beyond codifying existing law. *See*, *e.g.*, Petty Decl. ¶¶ 5-8. And while Plaintiffs suggest that counties will implement SB 1260 without any requirement that counties "coordinate cancellations or removals" [Doc. 31 at 4], state law already dictates such coordination through the statewide voter registration database and mandates that *all* voter registration cancellations must be done in a manner "consistent with the national voter registration act of 1993 and the help America vote act of 2002" and that "ensure[s] that eligible voters are not removed in error." A.R.S. § 16-168(J) (citations omitted).

Because the challenged Cancellation and Removal Provisions are mere codifications of existing procedures, Plaintiffs' challenges to them run afoul of an impression constellation of dispositive bars, any one of which is sufficient to preclude preliminary injunctive relief here. Notably: (1) Plaintiffs' lack standing, since (a) they will not suffer injury-in-fact from legal provisions that merely codify existing procedures and (b) their injuries are not redressable because restoring pre-existing law would do them no good (since it is the same), (2) Plaintiffs' *Anderson-Burdick* unconstitutional burden argument fails because the challenged law imposes no incremental burden at all, and (3) Plaintiffs are not likely to suffer irreparable harm absent injunctive relief, since SB 1260 imposes no burdens beyond unchallenged pre-existing law.

The only novel portion of SB 1260 is the Felony Provision, *Compare* A.R.S. § 16-1016 *with* § 3 of SB 1260. But here too Plaintiffs' motion could have been avoided by a simple phone call to the Attorney General's Office ("AGO"). Although Plaintiffs paint the Felony Provision as vast in scope and reaching large swaths of innocuous conduct, AGO—which is the *only* prosecutorial agency named as a defendant here—does not read it as such. While Plaintiffs hypothesize (at 9-10) speculative, concocted circumstances to

which it putatively would apply, the Attorney General disavows prosecutions in such circumstances.

As a result, Plaintiffs face no "'genuine threat of imminent prosecution,'" and hence their pre-enforcement challenge here is accordingly unripe. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). And even if it were justiciable now, Plaintiffs' facial vagueness challenge fails because Plaintiffs have not demonstrated that there "is no set of circumstances under which a law would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987), as well as for all reasons explained by Yuma County Republican Committee. *See* Doc. 49-1 at 6-11.

Finally, Plaintiffs' preliminary injunction should be independently denied because of Plaintiffs needlessly delayed filing it without offering even a hint of justification for the delay. Although SB 1260 was signed into law on June 6, Plaintiffs did not file suit until August 15 and did not seek a preliminary injunction until September 8. That delay should preclude relief here under *Purcell* doctrine and also undermines the credibility of Plaintiffs' allegations of irreparable harm, since it rightly "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). So too, of course, does Plaintiffs' willingness to bring this action and motion without first conducting the necessary due diligence to discover that the vast majority of SB 1260 merely codifies existing law in a manner that has been—until now—uncontroversial.

For all of these reasons, Plaintiffs' motion should be denied.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right," but instead "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22, 24 (2008). To obtain such relief, Plaintiffs "must establish that [(1) they are] likely to succeed on the merits, that [(2) they are] likely to suffer irreparable harm in the absence of preliminary relief, that [(3)] the balance of equities tips in [their] favor, and that [(4)] an injunction is in the public interest." *Id.* at 20.

**BACKGROUND**

Nearly two decades ago the Arizona legislature mandated that the Secretary "shall develop and administer a statewide database of voter registration information… including… provisions regarding removal of duplicate voters and provisions to ensure that eligible voters are not removed in error." 2003 Ariz. Legis. Serv. Ch. 260 (S.B. 1075) (West); *see also* A.R.S.§ 16-168(J). Today, that statewide database is known as the Arizona Voter Information Database ("AVID"). *See* Ariz. Sec. of State, *2019 Elections Procedures Manual* 16 (Dec. 19, 2019), https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf ("2019 EPM") (last visited Sept. 18, 2022).[1]

The statewide database has long been used by Arizona counties to identify and remove duplicate registrations between Arizona counties. *See* Petty Decl. at ¶6 ("When the Recorder's Office receives confirmation from another county that a person registered in Maricopa County, registered to vote in that county the Maricopa County voter record is cancelled, and the voter is removed from the AEVL if he or she is on the list."). As explained in the 2014 Elections Procedures Manual ("2014 EPM"), when the statewide database identifies a potential match, the prior county is notified of the duplicate match, and "the prior county will perform the work necessary to determine if the match is a true match" prior to canceling the voter registration. Ariz. Sec. of State, *2014 Elections Procedures Manual*, 27 (June 2014), https://azsos.gov/sites/default/files/election_procedure_manual_2014.pdf (last visited Sept. 18, 2022). If it is a "hard match" (meaning the name, date of birth, last four digits of the social security number, and driver's license number all match), the voter registration is canceled in the prior county and "no correspondence will be sent to the voter since the voter has given written notice that they have moved to the new county." *Id.* at 28. If the match is considered a "soft match" (meaning one or more listed elements do not match)

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, courts may take judicial notice of government documents. *See B Street Grill and Bar LLC v. Cincinnatti Ins. Co.*, 525 F.Supp.3d 1008, 1011 n.2 (D. Ariz. 2021).

"the recorder will evaluate each soft match" and if it cannot be determined if it is the same voter, the recorder "will send correspondence (without cancellation of the voter registration record) asking the voter if they have moved." *Id*. at 28-29.

In 2019, the statewide database was overhauled by the Secretary and became the "Arizona Voter Information Database (AVID)." 2019 EPM at 16. Although the procedures outlined above from the 2014 EPM were not delineated in the 2019 EPM, the 2019 EPM notes that "registrant's new or amended record is automatically verified against existing records in the statewide voter registration database for the purpose of identifying (and possibly canceling) any duplicate record." 2019 EPM at 23. And while the 2019 EPM doesn't delineate the procedures, it includes the same sample letter to an affected voter entitled "Cancellation Notice Due to Soft Duplicate Match Resolution" that was included in the 2014 EPM. 2019 EPM at A92.

The statewide database, in part, supports Arizona's statutory requirement that voters are only qualified to be registered at one residence. A.R.S. § 16-101(B) ("An individual has only one residence for purposes of this title."). In fact, if a voter moves within the 29 days preceding an election, the voter is "deemed to be a resident and registered elector of the county from which the elector moved until the day after the [election]" thereby preventing duplicate registrations from being created in the old and new county. A.R.S. § 16-125.

Importantly, Arizona law requires that the statewide database "provisions regarding removal of ineligible voters" must be "consistent with the national voter registration act of 1993 and the help America vote act of 2002[.]" A.R.S. § 16-168(J) (citations removed).

For nearly two decades, the policies and procedures specified by the Secretary for maintaining the statewide database have always required county recorders to cancel duplicate registrations between counties in compliance with federal laws, as well as in a manner that ensures that eligible voters are not removed in error. Furthermore, Arizona law statutorily prohibits voters from being registered in multiple counties. These laws were enacted pursuant to Arizona's constitutional requirement that the legislature "enact[]

registration and other laws to secure the purity of elections and guard against abuses of the elective franchise." Ariz. Const. art. 7, § 12.

During this past legislative session, the Arizona Legislature passed, and the Governor signed into law, SB 1260, which becomes effective on the general effective date of September 24, 2022. Section 1 of SB 1260 amends A.R.S. § 16-165 by adding provisions that require county recorders to cancel registrations only after they have confirmed that a duplicate registration exists in another county. ("Cancellation Provision"). Section 2 of SB 1260 amends A.R.S. 16-544 by adding provisions that require county recorders to remove voters from the active early voting list only after confirming that the voter has registered to vote in another county, or after receiving an early ballot that has been returned with the statement "not at this address" and contacted the voter as prescribed by A.R.S. § 16-544(E) to confirm the voter no longer resides at that address. ("Removal Provision").[2] Both Sections 2 and 3 require county recorders to cancel a registration or remove a registrant from the AEVL if the county recorders receive "credible information that a person has registered to vote in a different county" *and* the county recorder *confirms* the voter is in fact registered with the other county. Finally, Section 3 of SB 1260 amends A.R.S. § 16-1016 by adding a new class 5 felony for "knowingly provid[ing] a mechanism for voting to another person who is registered in another state, including by forwarding an early ballot addressed to the other person." ("Felony Provision").

Ten weeks after the law was signed by the governor (and nearly two decades since similar policies were implemented by county recorders), Plaintiffs' filed their initial

---

[2] Although Plaintiffs assert (Doc. 20, 20 ¶70) that SB 1260 "create[s] an affirmative legal duty for Arizona residents to monitor their mail and mark and return any early ballots meant for former residents." But any such purported "duty" has no penalty for violation and no one with authority to "enforce" that duty in any event. To the extent that SB 1260 creates any such duty, it is of the aspirational sort without consequence of violation. Instead, A.R.S. § 16-544 dictates the duties of county recorders related to maintenance of the active early voting list ("AEVL"). SB 1260 thus requires the *county recorder* "on receipt" of a returned early ballot marked "not at this address" to confirm the voter has moved, and if confirmed, remove the voter from the active early voting list.

complaint alleging that the provisions in SB 1260, collectively the "Challenged Provisions", are unconstitutional and/or violate sections of the National Voting Registration Act ("NVRA"). Plaintiffs filed their amended complaint (Doc. 20) several weeks later, on September 2, 2022, and waited yet another week to file this Motion for a Preliminary Injunction.

Not only does SB 1260 become effective on September 24, but voting for the 2022 General Election also commences that day.[3]

## ARGUMENT

### I. PLAINTIFFS CLAIMS ARE NON-JUSTICIABLE

Plaintiffs lack standing to challenge the Cancellation and Removal Provisions of SB 1260 because Plaintiffs can establish neither injury-in-fact nor redressability in light of Arizona's existing procedures related to cancelling duplicate registrations and removing voters from the active early voting list. Plaintiffs' pre-enforcement challenge is similarly non-justiciable because it is unripe.

#### A. Plaintiffs Challenge to Cancellation and Removal Provisions Of SB 1260 Fail Because Plaintiffs Cannot Establish Redressability

##### 1. Pre-Existing, Unchallenged Laws And Procedures Require County Recorders To Cancel Duplicate Registrations And Remove Voters From The Active Early Voting List

For all relevant purposes here, SB 1260 simply codifies county and state procedures and practices that have been in place since the Arizona legislature mandated the Secretary "develop and administer" a statewide voter registration database to ensure the "removal of ineligible voters" and "removal of duplicate registrations[.]" 2003 Ariz. Legis. Serv. Ch. 260 (S.B. 1075) (West); *see also* A.R.S.§ 16-168(J). In fact, in accordance with the legal requirements of A.R.S. § 16-168(J), the Secretary has promulgated administrative procedures in Elections Procedures Manuals, including in the 2014 EPM and 2019 EPM. *See* 2014 EPM at 26-29; 2019 EPM at 16, 23. Notwithstanding Arizona's preexisting laws

[3] Military and Overseas Ballots (UOCAVA) must be mailed or transmitted "no later than the forty-fifth day before the election[,]" which falls on September 24 this year. A.R.S. § 16-543(A). Early ballots will be mailed, and early voting centers may begin to operate, on October 12, 2022. *See* A.R.S. § 16-542(A),(C).

and procedures, Plaintiffs only seek to enjoin the implementation of SB 1260.

### 2. Because Plaintiffs Do Not Challenge The Existing Laws And Procedures, They Lack Article III Standing

Because unchallenged Arizona laws and procedures require county recorders to cancel duplicate registrations and remove voters from the active early voting list, Plaintiffs have not established that (1) they "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical" or that (2) it is "likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted).

As to the former, because SB 1260 only codifies existing practices, it by definition cannot cause Plaintiffs any injury. Similarly, Plaintiffs' mere speculation that procedures will operate differently is the sort of "conjectural or hypothetical" injury that does not suffice.

Similarly, Plaintiffs cannot establish Article III redressability as enjoining enforcement of SB 1260 would still leave the same pre-existing procedures in place. *See, e.g., Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 955 (9th Cir. 2006) (redressability was lacking because a holding setting aside an NEPA regulation would not remedy plaintiffs' injury where plaintiffs did not challenge another identical regulation); *see also Renne v. Geary*, 501 U.S. 312, 319 (1991) (doubting that the alleged injury could be redressed because "[a] separate California statute, the constitutionality of which was not litigated in this case" provided similar restrictions); *Arizonans for Fair Elections v. Hobbs*, 454 F. Supp. 3d 910, 917-19 (D. Ariz. 2020) (holding that plaintiffs' failure to challenge parallel constitutional requirement created fatal redressability issue).

Moreover, even if SB 1260 were struck down in its entirety, A.R.S. §16-168(J) still mandates that the Secretary maintain a voter registration database that "include provisions regarding removal of ineligible voters" and "removal of duplicate registrations." Furthermore, Arizona law specifies that voters are only qualified to register at "one residence[,]" precluding Plaintiffs' argument that voters are entitled to register in more

than one county in Arizona at one time. A.R.S. § 16-101(B); *see also* 1991 Ariz. Legis. Serv. 3rd Sp. Sess. Ch. 1 (S.B. 1001) (WEST) (adding to the "Qualifications of registrant; definition" subsection B that states "An individual has only one residence for the purposes of this title.").

Granting Plaintiff's requested relief as to the Cancellation and Removal Provisions of SB1260 thus would not enjoin the pre-existing statutory procedures for canceling duplicate registrations. And "'[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'" *Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (alteration omitted)).

**B. Plaintiffs Claims As To The Felony Provision Of SB 1260 Are Not Ripe**

Plaintiffs' challenge of the Felony Provision are also not justiciable because they are not ripe for decision either as a matter of Article III or prudential ripeness. In particular (1) Plaintiffs' challenge to the Felony Provision lack any genuine threat of imminent enforcement, and (2) Plaintiffs' vagueness challenge faces the almost impossible obstacle of being a pre-enforcement challenge. Accordingly, the First and Fourteenth Amendment claims are prudentially unripe as they depend entirely on speculative hypotheticals.

**1. Plaintiffs Face No "Genuine Threat Of Imminent Prosecution"**

For constitutional ripeness, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas*, 220 F.3d at 1139. "Rather, there must be a 'genuine threat of imminent prosecution.'" *Id.* (citation omitted). "In evaluating the genuineness of a claimed threat of prosecution, [courts] look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Id.* (citation omitted).

Here, while the Plaintiffs offer much in the speculation about where ordinary voter outreach may be prosecuted, they have not alleged any specific warning or threat to initiate

proceedings by the Attorney General, or any prosecutorial agency within Arizona. In fact, the Attorney General flatly rejects any interpretation of SB 1260 that would criminalize such ordinary voter outreach. Instead, the Attorney General defines "mechanism for voting" as being a ballot and ballot affidavit envelope and nothing else. Similarly, the Attorney General reads "knowingly" in SB 1260 to modify the entire provision—*i.e.*, the person must have knowledge that they are both "provid[ing] a mechanism for voting to another person" and that person is "registered in another state." A.R.S. §16-1016(12).

The risk of prosecution is further diminished because AGO—like all prosecutorial entities—bring prosecutions only where there is a reasonable likelihood of conviction. *See, e.g., State v. Millsaps*, 2018 WL 3722923, ¶19 (Ariz. App. 2018) (Defendant argued that the "State engaged in prosecutorial misconduct by adding charges… without a reasonable likelihood of conviction.").

Plaintiffs thus do not face a "genuine threat of imminent prosecution" necessary to establish Article III ripeness.

**2. Plaintiffs' Vagueness Challenge Is Not Ripe.**

Ordinarily, when considering whether statutory terms are too vague, a federal court must consider how they have been interpreted and applied. Thus, the Court has turned away vagueness challenges where the terms had been, or likely would be, narrowed through adjudication. *See, e.g., U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers AFL-CIO*, 413 U.S. 548, 574-75 (1973); *Rose v. Locke*, 423 U.S. 48, 52 (1975); *see also Bauer v. Shepard*, 620 F.3d 704, 716 (7th Cir. 2010) ("When a statute is accompanied by [a] system that can flesh out details, the due process clause permits those details to be left to that system."). By bringing a pre-enforcement vagueness claim, Plaintiffs have deprived the federal courts of the ability to "consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982). Thus, an entirely "speculative" pre-enforcement challenge "where 'no evidence has been, or could be, introduced to indicate whether the [Act] has been enforced in a discriminatory manner or with the aim of inhibiting [constitutionally

protected conduct]'" should be viewed with caution. *Gonzales v. Carhart*, 550 U.S. 124, 150 (2007) (rejecting the argument "that the Act should be invalidated on its face because it encourages arbitrary or discriminatory enforcement.").

Under the Ninth Circuit's standard for ripeness, a plaintiff must provide "a 'concrete factual situation . . . to delineate the boundaries of what conduct the government may or may not regulate without running afoul' of the Constitution." *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) (citation omitted); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996) ("Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication.").

Plaintiffs have not provided the Court with the concrete factual situation where the Felony Provisions is likely to apply. Rather, Plaintiffs have crafted farfetched hypothetical situations where the State not only targets ordinary voter outreach activities, but prosecutes individuals who have zero personal knowledge of a voter's registration status in another state. But Plaintiffs' arguments are precisely the kind of speculative pre-enforcement challenges courts routinely reject.

## II. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS

Even if the Plaintiffs claims are justiciable, Plaintiffs are not likely to succeed on the merits. First, the Felony Provision is neither vague nor overbroad. Second, Plaintiffs' NVRA claim fails because Arizona's procedures under SB 1260 comply with the NVRA. Third, Plaintiffs' due process claim to the Cancellation and Removal Provisions fail because (1) Plaintiffs cannot assert such a freestanding procedural due process claim outside of the *Anderson-Burdick* framework (2) and Plaintiffs have no cognizable liberty interest in any event.

### A. The Felony Provision is Neither Vague Nor Overbroad

Because Plaintiffs have an exceedingly high burden to succeed on a facial vagueness challenge, Plaintiffs' claim the Felony Provision is facially vague and overbroad is not likely to succeed. A plaintiff seeking to render a law unenforceable in all

of its applications must show that there is no set of circumstances under which a law would be valid. *Salerno*, 481 U.S. at 745. A court "should uphold [a facial vagueness] challenge only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Estates*, 455 U.S. at 495.

Plaintiffs do not allege that there are no set of circumstances under which the law would be valid; instead, Plaintiffs attack the Felony Provisions by claiming it limits protected speech. But the Felony Provision regulates conduct – specifically providing an individual with a "mechanism for voting" – which is not speech. *See*, *e.g.*, *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006) ("'[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" (citation omitted)). Although Plaintiffs proffer bare allegations that the Felony Provision implicates "pure speech" that is "political in nature" such as "encouraging others to register to vote" – Plaintiffs admit the law criminalizes *conduct*. Doc 31 at 8 ("The law criminalizes conduct—providing a 'mechanism for voting'").

Despite the admission that the Felony Provision criminalizes conduct, Plaintiffs also allege that the Felony Provision is "unconstitutionally overbroad because it 'create[s] a criminal prohibition of alarming breadth,' pulling within its ambit a signification amount of protected speech." [Doc 31, 9] (quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)). Again, except for in the vivid imagination of the Plaintiffs, nothing in the Felony Provision facially prohibits any speech, let alone protected speech.

Due to the pitfalls with facial vagueness challenges, the Supreme Court has explained that such challenges will only succeed when the statutory restriction at issue "proscribe[s] no comprehensible course of conduct at all." *United States. v. Powell*, 423 U.S. 87, 92 (1975); *see also Smith v. Goguen*, 415 U.S. 566, 578 (1974) (a facial challenge to a statutory restriction will only succeed where the statute exhibits an "absence of any ascertainable standard for inclusion and exclusion"); *Coates v. City of Cincinnati*, 402 U.S.

611, 614 (1971) (examining whether an ordinance was facially vague "in the sense that no standard of conduct is specified at all"). If "it is clear what the [law] as a whole prohibits," a facial vagueness challenge fails. *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Similarly, when considering a facial vagueness challenge, the Court has commented that "perfect clarity and precise guidance have never been required," even for criminal laws that implicate constitutional rights. *United States v. Williams*, 553 U.S. 285, 304 (2008).

Because the Felony Provision proscribes certain *conduct* and does not facially implicate protected speech, Plaintiffs' are not likely to succeed on their claim that the Felony Provision is unconstitutionally vague or overbroad.

### B. Under Arizona Law, The Cancellation Provision Cannot Be Implemented in Violation Of The NVRA

Plaintiffs are not likely to succeed on the claim that the Cancellation Provision can or will violate the NVRA because the procedural safeguards the Plaintiffs' claim may not exist with the implementation of SB 1260 already exist under the current, nearly identical, framework to cancel duplicate registrations between counties. In fact, Arizona law mandates that *any* provisions regarding the removal voters from the voter registration database must be "consistent with national voter registration act of 1993 and the help America vote act of 2002[.]" A.R.S. § 16-168(J) (citations omitted). Accordingly, when county recorders "receive credible information that a person has registered to vote in a different county[,]" part of the process of the recorder "confirm[ing] the person's voter registration with that other county" necessarily requires adherence to the NVRA before the recorder can "cancel the person's registration." SB 1260 § 1.

Under the procedures delineated in the 2014 EPM, before a voter registration can be cancelled there must be a "hard match" (meaning the name, date of birth, last four digits of the social security number, and driver's license number all match) before the voter registration will canceled. 2014 EPM at 28. If there is a "soft match" (meaning one or more identifying does not match or is missing) the recorder must evaluate the soft match; if it cannot be determined if it is the same voter, the recorder "will send correspondence

(without cancellation of the voter registration record) asking the voter if they have moved." *Id*. at 28-29.

So even if the county recorder receives information that, by subjective standards, does not appear "credible" – the county recorder must *still* confirm that there is a hard match between both counties and determine which registration is current based on the signed voter registration form before the outdated registration in the prior county is cancelled. Voter registrations between counties that are "soft matches" will be provided the kind of "notice-and-waiting requirements" that federal courts require to comply with the NVRA before a voter's registration may be cancelled.

### C. The Cancellation and Removal Provisions Do Not Violate Due Process

#### 1. Freestanding Procedural Due Process Claims Are Barred

Challenges to electoral statutes and regulations that allege an unconstitutional burden are governed by the *Anderson-Burdick* framework. That framework recognizes that "'States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election—and campaign-related disorder.'" *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir. 2006) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

Under the *Anderson-Burdick* framework, "an election regulation that imposes a severe burden is subject to strict scrutiny." *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008). In contrast, '"[l]esser burdens trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions."' *Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012) (quoting *Prete*, 438 F.3d at 961) (cleaned up). Notably, "voting regulations are rarely subjected to strict scrutiny." *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011). Moreover, "[e]laborate, empirical verification of weightiness is not required." *Timmons*, 520 U.S. at 352.

The Ninth Circuit has repeatedly refused to permit freestanding constitutional challenges to electoral regulations outside of the *Anderson-Burdick* framework. Instead, that court has continually held that *all* constitutional challenges to election regulations are

governed by "a single analytic framework"—*i.e.*, the *Anderson-Burdick* framework. *Dudum*, 640 F.3d at 1106 n.15. That includes "First Amendment, Due Process, [and] Equal Protection claims." *Id.*; *accord LaRouche v. Fowler*, 152 F.3d 974, 987-88 (D.C. Cir. 1998). All such claims are "folded into the *Anderson/Burdick* inquiry." *Soltysik v. Padilla*, 910 F.3d 438, 449 n.7 (9th Cir. 2018); *accord Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 729 n.7 (9th Cir. 2015); *Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085, 1090 (9th Cir. 2019).

Although Plaintiffs cite to *Ariz. Democratic Party v. Hobbs*, where the Ninth Circuit specifically applied this rule to procedural due process claims, Plaintiffs sidestep the framework by assuming, without evidence, the manner in which SB 1260 will be implemented will necessarily be a "severe burden" subjecting the Cancellation and Removal Provisions to strict scrutiny. 18 F.4th 1179, 1195 (9th Cir. 2021). To make this leap, Plaintiffs rely largely on *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1357 (D. Ariz. 1990), and appear to presume there is a protectable liberty interest in being registered to vote in two counties at once, claiming "it is perfectly legal… to be registered to vote in more than one jurisdiction." [Doc. 31, 4]. However, "[a] liberty interest may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009). Neither the Due Process Clause nor Arizona law provides a cognizable liberty interest in being registered to vote in two counties at the same time. In fact, Arizona law specifies that registrants are statutorily *dis*qualified from registering to vote at more than *one residence*. *See* A.R.S. § 16-101(B).

### 2. The Cancellation and Removal Provisions Do Not Impose A "Severe Burden"

The *lack* of any material burden here is further evident by the fact that counties have been cancelling and removing duplicate registrations for the better part of the last two decades (*see supra* I(A), II(B)), yet Plaintiffs have not only failed to identify even *one* individual who has had their registrations wrongfully cancelled or been wrongfully removed from the AEVL, they failed to even notice the existing laws and procedures that

routinely cancel registrations and removal outdated AEVLs.

As voters do not have cognizable right in having active voter registrations in multiple jurisdictions within the state, the Cancellation and Removal Provisions are "reasonable, nondiscriminatory restrictions" and do not impose a "severe burden" on voters. As such, this Court's inquiry into the provisions' constitutionality "is limited to whether the chosen method is reasonably related to [an] important regulatory interest." *Prete*, 438 F.3d at 971. *Anderson/Burdick* treats the State's interests as a "legislative fact." *Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014). States need not submit "any record evidence in support of" their interests. *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009); *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1334 (11th Cir. 2021). States can rely on "post hoc rationalizations," can "come up with [their] justifications at any time," and have no "limit[s]" on the type of "record [they] can build in order to justify a burden placed on the right to vote." *Mays v. LaRose*, 951 F.3d 775, 789 (6th Cir. 2020).

Here, the State's interests are more than justified by its "indisputabl[e] …compelling interest in preserving the integrity of its election process.'" *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (citation omitted)). That interest is served not only by preventing duplicate registrations but also by preventing voters from having multiple, voteable early ballots mailed automatically.

## III. THE REMAINING *WINTER* FACTORS PRECLUDE RELIEF

Even if Plaintiffs claims were justiciable and were likely to succeed on the merits, *but see supra* Sections I-II, their request for a preliminary injunction should still be denied because Plaintiffs cannot satisfy any of the three other *Winter* factors.

### A. Plaintiffs Are Not Likely To Suffer Irreparable Harm

As explained above, SB 1260 largely codifies existing procedures required to implement the voter registration database as mandated by Arizona law nearly two decades ago. *Supra* at 4-6. Plaintiffs have failed enjoin the existing laws and procedures, and thus have failed to allege any cognizable irreparable harm that is likely to occur *absent* a

preliminary injunction, their motion should be denied.

To the extent that Plaintiffs have raised concerns that they may suffer irreparable harm by the mere enactment of the Felony Provisions of SB 1260, Plaintiffs have not articulated a plan that runs afoul of the Attorney General's interpretation of the Felony Provision, and therefore Plaintiffs are not likely to suffer irreparable harm or be subject to enforcement of the Felony Provision.

### B. The Balance Of Equities Disfavors Plaintiffs' Motion—Particularly Because Of Their Delay

Even if Plaintiffs could somehow clear the likely-irreparable-harm hurdle, the balance of equities also tips against issuance of a preliminary injunction. "[A] state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *accord Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (same). These harms outweigh Plaintiffs' specious, hypothetical harms. *Supra* at II(A)-(C).

The weight to be accorded Plaintiffs' alleged harms is also rightly discounted due to Plaintiffs' delay in bringing this suit. As the Ninth Circuit has repeatedly recognized, delay in bringing suit properly "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc.*, 762 F.2d at 1377. Not only have Cancellation and Removal Provisions more or less existed through Arizona laws and procedures for the last two decades without challenge by Plaintiffs, SB 1260 was signed into law more than three months ago – yet Plaintiffs waited until just weeks before early voting will begin to file their Motion for Preliminary Injunction.

Against Plaintiffs' insubstantial harms—Defendants' harms are weighty and clearly cognizable. The State "'indisputably has a compelling interest in preserving the integrity of its election process[.]'" *Purcell*, 549 U.S. at 4. Moreover, "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Wilson*, 122 F.3d at 719.

All of the State's harms thus greatly outweigh Plaintiffs' belatedly asserted and

factually unsupported harms, thereby precluding injunctive relief.

**C. The Public Interest And *Purcell* Doctrine Preclude Plaintiffs' Relief**

"[T]he Supreme Court 'has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.'" *Arizona Democratic Party v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020) (quoting *RNC v. DNC*, 140 S. Ct. 1205, 1207 (2020) (per curiam)). "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. *As an election draws closer, that risk will increase*." *Purcell*, 549 U.S. at 4-5 (emphasis added).

Plaintiffs' Motion for Preliminary Injunction was filed just 15 days before both SB 1260 was set to go into effect and before the commencement of early voting for the November election. The hearing is scheduled just two days before UOCAVA ballots must be mailed or transmitted and just twenty-days before Early Voting begins. Although Plaintiffs paint the injunction as maintaining the status quo, granting the injunction would call into question decades old laws and procedures that cancel duplicate voter registrations and remove duplicate registrations from the AEVL. As such, the injunction would necessarily be further subject to stay/reversal by the Ninth Circuit or Supreme Court, thereby risking further conflicting orders and voter confusion.

*Purcell* doctrine and the public interest thus counsel strongly against issuing any relief. And that is particularly true as Plaintiffs' delay in bringing this suit just weeks before early voting commences is *entirely unexplained*.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied. Further, the Attorney General hereby incorporates by reference proposed intervenor-defendant Yuma County Republican Committee's Proposed Motion to Dismiss and request the Plaintiffs' Complaint be dismissed.

Respectfully submitted this 19th day of September, 2022.

MARK BRNOVICH
ATTORNEY GENERAL

By: s/ Jennifer J. Wright
Brunn ("Beau") W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
Jennifer J. Wright (No. 27145)
*Assistant Attorneys General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5200
acl@azag.gov

*Attorneys for Arizona Attorney General Mark Brnovich*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of September, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.

s/ Jennifer J. Wright
Jennifer J. Wright

*Attorney for Arizona Attorney General Mark Brnovich*