Spencer G. Scharff, No. 028946
SCHARFF PC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
spencer@scharffplc.com

Amy B. Chan, No. 019678
ARIZONA SECRETARY OF STATE
1700 W. Washington St., 7th Fl.
Phoenix, Arizona 85004
(602) 542-6167
achan@azsos.gov

*Attorneys for Defendant Katie Hobbs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance for Retired Americans, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, et al.,<br><br>Defendants. | No. 2:22-cv-01374-GMS<br><br>**DEFENDANT SECRETARY OF STATE KATIE HOBBS'S NOTICE REGARDING INTERPRETATION OF S.B. 1260** |

Defendant Secretary of State Katie Hobbs (the "Secretary") submits this Notice to describe to the Court and the Parties her interpretation of the challenged provisions in S.B. 1260: A.R.S. § 16-165(A)(10) and (B) (the "Cancellation Provisions"), A.R.S. § 16-544(Q) and (R) (the "Removal Provisions"), and A.R.S. § 16-1016(12) (the "Felony Provision").

*First*, the Secretary believes the Cancellation and Removal Provisions can and should be interpreted as codifying existing voter registration procedures, under which county recorders: (1) ensure voters do not have duplicate, active registrations and AEVL enrollment in multiple Arizona counties (as codified by A.R.S. § 16-165(A) and -544(Q));

(2) cancel a voter's registration and AEVL enrollment upon receiving notice from an out-of-state jurisdiction's voter registration official, and confirming with that official, that the voter has registered to vote in that jurisdiction (as codified by A.R.S. § 16-165(B) and -544(R)); and (3) *would not* initiate voter registration cancellations based solely on information from non-governmental third parties, because such third-party information—which come from neither the voter directly nor another election official with authority over voter registration—does not constitute "credible information" as specified by A.R.S. § 16-165(B) and -544(R). Indeed, any contrary interpretation raises potential conflicts with federal law and any changes to the above procedures at this stage—including, interpreting S.B. 1260 to require county recorders to investigate and cancel voter registrations based on information from non-governmental third parties—would be extremely disruptive to and impose significant burdens on both election officials and voters.

*Second*, the Secretary believes the Felony Provision can and should be interpreted as requiring *actual knowledge* that a voter is registered in another state to trigger potential liability for "[k]nowingly provid[ing] a mechanism for voting to another person who is registered in another state." A.R.S. § 16-1016(12). Any broader interpretation would make it impossible for election officials to comply with other statutory election administration responsibilities without facing an untenable risk of criminal liability.

*Finally*, although the Secretary's interpretations of the challenged provisions effectuate the legislative purpose behind S.B. 1260, facilitate the orderly administration of elections, reconcile the challenged provisions with other requirements in Title 16 of the Arizona Revised Statutes, and avoid potential conflicts with federal statutory and constitutional requirements, the Secretary acknowledges that the text of these provisions could be interpreted differently by different actors with election-related responsibilities in Arizona. Therefore, the Secretary welcomes clarification from the Court on these issues.

## I. S.B. 1260'S CANCELLATION AND REMOVAL PROVISIONS CODIFY EXISTING VOTER REGISTRATION PROCEDURES.

In working with Arizona's county recorders to plan for implementation of the new election laws passed in the last legislative session, the Secretary interpreted the Cancellation and Removal Provisions of S.B. 1260 as simply codifying existing voter registration procedures, which have been in place for numerous election cycles.[1] These procedures—and the Secretary's interpretation of S.B. 1260—prevent voters from being registered in two jurisdictions, while ensuring that an Arizona voter is not improperly removed from the voter rolls based on unreliable or inaccurate information, and potentially abusive cancellation demands from non-governmental third parties. In sum, the Secretary believes S.B. 1260 can and should be interpreted in a manner that avoids upending longstanding voter registration procedures as the November General Election rapidly approaches.

---

[1] This would not be the first or only time the Arizona Legislature has passed laws codifying existing procedures and making them statutorily mandated rather than implemented as a matter of administrative discretion. Examples abound from the last legislative session alone (55th Leg., 2nd Reg. Sess. (Ariz. 2022)). *See, e.g.*, H.B. 1411 (adding A.R.S. § 16-551(D), which requires the county recorder or other officer in charge of elections to provide a ballot tracking system that indicates whether a voter's early ballot has been received and either verified for tabulation or rejected, even though all counties already provide such a ballot tracking system, either directly or through AVID); S.B. 1477 (requiring the clerk of the superior court to transmit a monthly record of felony convictions in the county to the Secretary, and requiring the Secretary to use the record for list maintenance purposes and to notify the appropriate county recorder, even though the superior court already provides such a record and the Secretary already follows the procedures prescribed); H.B. 2237 (expressly prohibiting same-day voter registration even though the Secretary and counties' existing procedures already do not allow for same-day registration based on their interpretation of existing law); and H.B. 2703 (enacting a session law requiring the Secretary to maintain full functionality of the E-Qual system except when necessary to implement an update to the system, in which case the Secretary is mandated to provide notice to candidates along with an estimate of how long the system will be unavailable, even though the Secretary had already done exactly that—*i.e.*, taken the system down temporarily to implement redistricting updates after providing notice to candidates, along with an estimate of how long the system would be down).

**A.      A.R.S. § 16-165(A)(10) and A.R.S. § 16-544(Q) codify existing cross-county duplicate matching procedures that ensure voters do not have active registrations in multiple Arizona counties.**

Although voter registration is conducted at the county level in Arizona, the Secretary of State's Office maintains and oversees a statewide voter registration system known as the Arizona Voter Information Database (AVID).[2] The 2019 Elections Procedures Manual (EPM)—the operative manual governing Arizona's elections—includes detailed instructions on processing voter registration forms to ensure uniform, statewide application. Existing procedures account for registrants moving to a different county and ensure that voters only have one active voter registration record in Arizona at any given time. AVID is designed to check for duplicate, cross-county registration records at the point of initiation of each new voter registration record so that counties can appropriately review and maintain Arizona's voter records. *See* EPM at 23 ("The registrant's new or amended record is [ ] automatically verified against existing records in the statewide voter registration database for the purpose of identifying (and potentially canceling) any duplicate record."). This duplicate matching and resolution process, which is consistent with A.R.S. § 16-165(A)(10), only occurs following a voter-initiated submission of a new voter registration application. Additionally, current procedures prevent a voter from being on the Active Early Voting List (AEVL) in multiple counties, consistent with A.R.S. § 16-544(Q), as added by S.B. 1260.

For example, if a registered voter in La Paz County moves to Yuma County and submits a voter registration form in Yuma County, the Yuma County Recorder will enter and process that voter registration application in AVID. AVID will run a check to determine if the voter is already registered in another county in Arizona. If sufficient criteria are met, the system will identify the potential duplicate registrations and provide

---

[2] "Maricopa and Pima County systems link to the state system through an interface. The 13 smaller counties directly use the state system." EPM at Ch. 1(IV)(A).

an alert to Yuma County about the possible duplicate registration.[3] If Yuma confirms that the records match and that the Yuma registration is the most recent, the voter's La Paz registration will be merged with the new Yuma record and moved to Yuma County—effectively canceling the voter's La Paz County registration and any associated AEVL enrollment in La Paz County.

As amended by S.B. 1260, A.R.S. § 16-165 now provides that a registration shall be canceled when a county recorder receives confirmation from one of the other fourteen county recorders that an individual has registered to vote in their county. *Id*. at § 16-165 (A)(10) (using the Arizona-specific term "county recorder"). Similarly, A.R.S. § 16-544(Q) provides that the voter will be removed from their prior county's AEVL list upon confirmation that they have registered in a new county. As explained above, this is the process that is already followed by all counties, is only initiated when the voter submits a voter registration form in a new Arizona county, and is implemented via AVID, which permits the counties to confirm such new out-of-county registrations directly and confidently.

**B.    A.R.S. § 16-165(B) and A.R.S. § 16-544(R) codify the Secretary's and the counties' current protocols with regard to information received from other jurisdictions.**

There are instances where an out-of-state jurisdiction will alert the Secretary of State or County Recorder that a former Arizona voter has registered in their jurisdiction. This correspondence from an out-of-state jurisdiction is generally only initiated when the former Arizona voter has indicated on a subsequent out-of-state voter registration form that they

---

[3] AVID has two match classifications—hard and soft matches. "Hard match" in AVID means that when comparing information contained across two voter registrations, the first three letters of the voter's first name, the voter's last name, date of birth, and either an Arizona Driver's License/Identification Number ("AZID") or last four digits of a social security number ("SSN4"), are the same across all points of information and across both registrations. "Soft match" in AVID means certain data point might match but further individualized review and confirmation by the county recorder is needed to confirm the match.

were formerly registered in Arizona. For example, Washington, D.C.'s voter registration form asks new registrants to indicate the county and state of their last registration, if outside D.C.[4]:

The EPM provides clear guidance as to the appropriate manner to process such correspondence:

> The Secretary of State occasionally receives correspondence from out-of-state jurisdictions providing information about Arizona registrants. The Secretary of State will promptly forward the correspondence to the applicable County Recorder(s) by email. The Secretary of State may not cancel any registration records or otherwise initiate any process through the statewide voter registration system based on the out-of-state correspondence. A County Recorder should treat the information as a "soft match" and conduct an individualized inquiry before canceling any registration record.

EPM at 35.

As amended by S.B. 1260, A.R.S. § 16-165 now expressly also provides that a registration shall be canceled when a county recorder receives credible information that an individual has registered to vote in a new county and the county recorder confirms that information. *Id*. at § 16-165(B). Similarly, A.R.S. § 16-544(R) provides that the voter will be removed from their prior county's AEVL list upon confirmation that the voter registered elsewhere. The Secretary interprets this provision as codifying the State's longstanding practice as to out-of-state registration notices: counties conduct an individualized inquiry to confirm that the information provided by the election official in the out-of-state jurisdiction matches the Arizona voter record prior to canceling the record.

Notably, the Secretary interprets the term "credible information" used in both provisions to mean information provided by an election official, not just any third party. In other words, the Secretary reads S.B. 1260 as consistent with Arizona's current voter

---

[4] Voter Registration Application, District of Columbia's Board of Election, *available at* https://dcboe.org/dcboe/media/PDFFiles/VoterRegForm82020.pdf.

registration policies and procedures, which would not permit the cancellation of a voter's registration just on the say-so of a non-governmental third party. Interpreting S.B. 1260 to require county recorders to conduct an investigation and attempt to confirm the allegations each time any third party alleges that a voter—or a list of tens of thousands or more voters—is suspected by the organization to be registered in another state would further no legitimate governmental interest in ensuring accurate voter lists or preventing fraud in elections because Arizona already has robust list maintenance procedures in place that rely on credible information from election officials. Instead, requiring election officials to chase down mass allegations by non-governmental third parties would overwhelm county election officials, divert already scarce resources from critical election administration functions, open the door to abusive mass challenges and wrongful cancellations, and generally upend the orderly administration of elections. Such mass voter registration challenges are already occurring in other states.[5] Arizona's laws and procedures have protected against such abuses so far and S.B. 1260 does not require otherwise.

## II. THE FELONY PROVISION MUST BE NARROWLY CONSTRUED TO AVOID IMPOSING CRIMINAL LIABILITY ON STATE AND COUNTY ELECTION OFFICIALS SIMPLY FOR DOING THEIR JOBS.

S.B. 1260's Felony Provision provides that a person is guilty of a class 5 felony if the person "[k]nowingly provides a mechanism for voting to another person who is registered in another state, including by forwarding an early ballot addressed to the other person." A.R.S. § 16-1016(12). Although Plaintiffs' challenge to the Felony Provision was not pled against the Secretary, the Secretary works closely with county officials to

---

[5] For example, a non-governmental third party organization "filed eight boxes…containing what its leader says are 37,500 challenges to voters in Gwinnett County [ ]. The challenges promise to make it harder for some registered voters to cast ballots and put a heavy burden on already stretched county elections officials charged under state law with responding to them quickly." Margaret Newkirk and Ryan Teague Beckwith, *Trump Allies Back Mass Challenge to Voter Eligibility in Georgia*, BLOOMBERG, September 1, 2022, *available at* https://www.bloomberg.com/news/articles/2022-09-01/trump-allies-back-mass-challenge-to-voter-eligibility-in-georgia.

administer free and fair elections in Arizona pursuant to applicable laws. For example, county officials are required to mail ballots to registered voters on the AEVL or who have made a one-time request for an early ballot. *See, e.g.*, A.R.S. §§ 16-542, -544. The Secretary's Address Confidentiality Program (ACP) provides a substitute mailing address to certain victims of crime for public disclosure purposes and is required to redirect mail, including mail ballots, from the substitute address to the ACP Participant's actual residence address. *See* A.R.S. §§ 41-161(2), -162. And counties are required to issue regular or provisional ballots, as appropriate, to in-person voters at early and Election Day voting locations. *See* A.R.S. §§ 16-579, -584. Indeed, failure or refusal to comply with these duties would itself expose election officials to criminal liability. *See* A.R.S. § 16-1009. Broadly construed, the Felony Provision could expose state and county election officials to a separate and conflicting risk of criminal liability for *complying* with these and possibly other statutory requirements—just because it later turns out that the voter at issue was registered in another state, or just because a non-governmental third party alleges that the voter may be registered in another state. Such liability would completely upend the orderly administration of elections in Arizona, make election officials' jobs impossible without threat of criminal prosecution, and exacerbate the already acute staffing shortages in elections offices across the State.

To avoid this problem, the Secretary believes that the Felony Provision can and should be interpreted narrowly and as requiring, at minimum, *actual knowledge* that a voter is registered in another state to trigger potential liability. Such an interpretation would be more narrowly tailored to further the legislative purpose of deterring facilitation of illegal voting, while avoiding putting election officials in an untenable position by infusing potential criminal liability into routine election administration responsibilities. Consistent with the Secretary's interpretation of A.R.S. §§ 16-165(B) and -544(R) as added by S.B. 1260, county election officials would generally only have actual knowledge that a voter is registered in another state after receiving a notice from the out-of-state election official and

confirming that the voter has in fact subsequently registered in the other state. In that circumstance, the law would require the voter's registration be cancelled and no ballot would be mailed or issued to such a voter based on the existing procedures and requirements for voter registration and ballot issuance. Similarly, and also consistent with the Secretary's interpretation of "credible information" in A.R.S. §§ 16-165(B) and -544(R), receipt of unreliable allegations of out-of-state registration from non-governmental third parties would *not* mean that the county recorder has actual knowledge of out-of-state registration—because that information came from neither the voter nor another election official, and is both not credible and not confirmed, and did not result in cancellation of the voter's registration. Any broader interpretation of the Felony Provision would make it impossible for election officials to comply with their statutory election administration responsibilities without facing untenable risks of criminal liability.

### III. TO REMOVE ANY UNCERTAINTY, THE SECRETARY WOULD WELCOME THE COURT'S ENDORSEMENT OF HER INTERPRETATION OF S.B. 1260.

As detailed in the Sections above, the Secretary believes there are reasonable and compelling ways to: (1) interpret the Cancellation and Removal Provisions as codifying existing voter registration list maintenance procedures and to avoid subjecting those processes to unreliable, administratively burdensome, and potentially abusive cancellation demands from non-governmental third parties; and (2) interpret the Felony Provision to avoid imposing criminal liability on election officials simply for complying with other statutory provisions that require them to issue or forward ballots to eligible registered Arizona voters. The Secretary's interpretation further avoids potential conflicts with federal statutory and constitutional requirements. However, the Secretary acknowledges that the language could be interpreted differently by different actors with election-related responsibilities in Arizona. For example, the Secretary has communicated her interpretation to the county recorders and will continue to work closely with county recorders on voter registration duties, but she has no currently available means of binding

the counties and ensuring this interpretation of the Cancellation and Removal Provisions is adopted and implemented consistently statewide. Nor is she the official with enforcement authority over the Felony Provision.

Therefore, the Secretary would welcome clarification from the Court through an order: (1) endorsing the Secretary's interpretation of the Cancellation, Removal, and Felony Provisions; and/or (2) precluding application or enforcement of the Cancellation, Removal, and Felony Provisions beyond the Secretary's interpretation. Such an order would maintain the status quo and avoid disruption or ad-hoc changes in procedures as the 2022 General Election rapidly approaches, ensure consistent application of S.B. 1260 across the State, avoid disparate treatment of voters in different counties, and avoid imposing unavoidable risk of criminal liability on election officials simply for doing their jobs.

Respectfully submitted this 19th day of September 2022.

          **SCHARFF PC**

          By: */s/ Spencer G. Scharff*
              Spencer G. Scharff

          **ARIZONA SECRETARY OF STATE**
          Amy B. Chan