Brett W. Johnson (#021527)
Eric H. Spencer (#022707)
Colin P. Ahler (#023879)
Tracy A. Olson (#034616)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
espencer@swlaw.com
cahler@swlaw.com
tolson@swlaw.com
Attorneys for Proposed Intervenor-Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance for Retired Americans; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona, et al.,<br><br>Defendants. | No. 2:22-CV-01374-GMS<br><br>**[PROPOSED] RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

"Arizona law generally makes it easy to vote." *See Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2330 (2021). But like all states, Arizona must regulate "the Times, Places and Manner of holding Elections." U.S. Const. art. I, § 4. Consistent with this mandate, Arizona has enacted Senate Bill ("SB") 1260, which contains A.R.S. § 16-165(A)(10) and (B) (the "Cancellation Provision"), § 16-544(Q)-(R) (the "Removal Provision"), and § 16-1016(12) (the "Felony Provision") (collectively, the "Challenged Provisions"). Taken together, the Challenged Provisions are common-sense codifications of existing practices designed to prevent duplicate voting by individuals in multiple states or counties. The Felony Provision criminalizes *knowingly* providing an Arizona ballot to another person, with knowledge that the recipient is registered to vote in another state. The Cancellation and Removal Provisions require that when county recorders confirm an individual is registered in two Arizona counties, that individual's voter registration and Active Early Voting List ("AEVL") membership from their *prior* county of residence are cancelled. The inconvenience, if any, placed upon voters by these laws are minimal.

The election is only two months away: any "tinkering" with the Challenged Provisions, at this late hour, could lead to "disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022). This is why federal courts are loathe to enjoin sensible state election laws on the eve of an election. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006). Here, Plaintiffs seek the extraordinary relief of a preliminary injunction shortly before the election, pointing to nothing more than *hypothetical* harms that *might* happen because of the Challenged Provisions. Once this speculation is cast aside, however, it becomes clear that Plaintiffs cannot establish any of the four preliminary injunction factors.

First, Plaintiffs' claims should not even survive the pleadings stage, much less succeed on the merits. [*See* Doc. 49-1.] Plaintiffs' due process challenges to the Cancellation and Removal Provisions are not justiciable because Plaintiffs' claimed harms are *all* hypothetical and speculative. [Doc. 49-1 at 4-6.] These claims also fail because Plaintiffs cannot establish that these two Provisions impose any undue burdens under the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*Anderson/Burdick* framework. [Doc. 49-1 at 11-15.]

Plaintiffs' vagueness and overbreadth challenges to the Felony Provision similarly fail. The Felony Provision is not vague; the law only prohibits the minimal act of forwarding a ballot (or associated documents) to another person, while *knowing* the other person is registered in a different state. [*Id.* at 6-8, 11.] Because the Felony Provision restricts *conduct*, not speech, it is also not overbroad. [*Id.* at 9-11.]

Plaintiffs also cannot establish that the Cancellation Provision is preempted by the National Voter Registration Act ("NVRA"). In fact, the Cancellation Provision works in harmony with NVRA. Re-registering to vote in a new county constitutes a "request of the registrant" to be removed from the voting roles in the prior county. 52 U.S.C. § 20507(a)(3)(A). And state law already requires the Secretary of State to comply with the NVRA while eliminating duplicate voters from the statewide database. A.R.S. § 16-168(J).

<u>Second</u>, because Plaintiffs fail to show a likelihood of success on the merits on their constitutional claims and several of those claims are not even justiciable, by default, they cannot establish irreparable harm.

<u>Third</u>, Plaintiffs cannot show that the balance of equities and the public interest favor a preliminary injunction against SB 1260. SB 1260 serves a vital purpose: ensuring that only qualified voters cast votes in Arizona's elections. In contrast, Plaintiffs cannot establish that SB 1260 burdens their constitutional rights, including the right to vote.

For these reasons, the Motion should be denied.

## <u>FACTUAL BACKGROUND</u>

On June 6, 2022, Arizona's Governor signed SB 1260 into law, which becomes effective on September 24, 2022. [Doc. 20 at ¶ 1.] SB 1260 amends provisions of Title 16 to implement four new requirements, three of which are at issue here.

The Felony Provision adds a new class 5 felony to the list of voting infractions found in A.R.S. § 16-1016. Like the existing acts criminalized by the statute, such as illegal voting or tampering with ballot boxes, the Felony Provision specifically prohibits "[k]nowingly provid[ing] a mechanism for voting to another person who is registered in another state,

including by forwarding an early ballot addressed to the other person." *Id.* According to SB 1260's sponsor, and consistent with its text, the Felony Provision seeks to prevent individuals from "sending a ballot to someone in another state who is registered in another state." *Jan. 31, 2022 Hearing on SB 1260 Before S. Comm. on Gov't*, 55th Leg. Second Reg. Session at 36:25-36:29, 39:00-40:40 (Ariz. 2022) ("*SB 1260 Jan. 31, 2022 Hearing*").[1]

The Cancellation Provision adds two administrative subsections to A.R.S. § 16-165. It provides that "[i]f the county recorder receives credible information that a person has registered to vote in a different county, the county recorder shall confirm the person's voter registration with that other county." A.R.S. § 16-165(B). Upon "confirmation from another county recorder that the person registered has registered to vote in that other county," the recorder must remove the duplicate registration. *Id.* at (A)(10).

The Removal Provision adds similar (and reasonable) administrative subsections to A.R.S. § 16-544. "If the county recorder receives credible information that a person has registered to vote in a different county, the county recorder shall confirm the person's voter registration with that other county." A.R.S. § 16-544(Q). Upon confirmation, the county recorder "shall remove that person from the county's active early voting list." *Id.* at (R). Together, the Cancellation and Removal Provisions codify the "process for eliminating duplicate[]" registrations that many county recorders were already using. *See Mar. 16, 2022 Hearing on SB 1260 Before H. Comm. on Government & Elections*, at 38:55-39:15 (Ariz. 2022).[2]

## ARGUMENT

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quotation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

[1] A video of the January 31, 2022, committee meeting is found here: https://www.azleg.gov/videoplayer/?eventID=2022011106&startStreamAt=2098.

[2] A video of the March 16, 2022, hearing is found here: https://www.azleg.gov/videoplayer/?eventID=2022031079&startStreamAt=2240.

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiffs fail to satisfy this high burden here.

## I. <u>Plaintiffs Are Highly Unlikely to Succeed on the Merits.</u>

Plaintiffs raise three separate claims in their preliminary injunction motion: (1) a vagueness and overbreadth challenge to the Felony Provision (Count I); (2) a claim that the Cancellation Provision is preempted by the NVRA (Count IV); and (3) procedural due process challenges to the Challenged Provisions (Counts II, VI).[3] [*See* Doc. 31 at 1-2.]

Plaintiffs cannot show that they are likely to succeed on any of these claims or, alternatively, that they have even raised serious questions going to the merits. None of their claims state a plausible claim for relief, as detailed in YCRC's Proposed Motion to Dismiss. [Doc. 49-1.] Rather than duplicating all of the same arguments from the Proposed Motion to Dismiss, below is a summary of the many defects with Counts I-VI, VI-VIII.

### A. Plaintiffs Due Process Challenge to the Cancellation and Removal Provisions are Not Justiciable.

Plaintiffs' apparent, "as-applied" due process challenge to the Cancellation and Removal Provisions (Count IV) is not ripe, and Plaintiffs lack standing to raise it. [Doc. 49-1 at 4-6.] To establish standing, a party must show: (1) it has suffered an "injury in fact" that is not "conjectural or hypothetical"; (2) the injury is fairly traceable to the challenged action; and (3) the injury is redressable by a favorable decision. *Friends of the Earth Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Similarly, ripeness prevents

[3] Because Plaintiff's Motion does not seek a preliminary injunction based on Counts II, V, VI, and VIII and does not address the merits of those claims in the motion, this Response does not address them either. YCRC's Proposed Motion to Dismiss, however, does explain why those Counts should also be dismissed. [*See* Doc. 31 at 11-17.]

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

federal courts from deciding cases that "involve[] uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). Here, Plaintiffs cannot identify any ripe, injury in fact caused by the Cancellation and Removal Provisions, but instead rely entirely on speculation and hypotheticals. [*See generally* Doc. 20 (using "likely" 12 times, "could" 15 times, and "may" or "might" 6 times, in discussing SB 1260's hypothetical consequences); Doc. 31 (using "may" or "might" 9 times and the word "could" 6 times).]

For instance, Plaintiffs speculate that the Cancellation Provision *might* result in a person's current voter registration being cancelled, and that the Removal Provision *might* somehow result in a person being removed from the AEVL in the county in which they currently reside. [*E.g.*, Doc. 20 at ¶¶ 62, 64, 123-124.] Based on these assumptions, Plaintiffs then argue that the Cancellation and Removal Provisions result in two injuries: (1) mass disenfranchisement of voters that have changed residences; and (2) forcing voters who move to cancel their old registrations to avoid "disenfranchisement." [*See* Doc. 20 at ¶¶ 123-124 (citing hypothetical in support of Count VI), 131 (citing hypothetical in support of Count VII), 137-138 (citing hypothetical in support of Count VIII); *see also* Doc. 31 at 14-15 (discussing alleged burdens of Cancellation and Removal Provisions).]

However, the actual text of the Cancellation and Removal Provisions do *not* affirmatively require county recorders to cancel *all* of a person's voter registrations or remove a person from *every* county's AEVL. *See* A.R.S. §§ 16-165(A)(10), 16-165(B), 16-544(Q)-(R). Rather, under a plain and reasonable reading of these laws, *only* a person's outdated registration is cancelled, and the person is *only* removed from the AEVL in counties where they no longer reside. Plaintiffs speculate that separate county recorders *might*, by accident, "each cancel a voter's registration (or remove the voter from the active early voting list) in their respective counties . . . ." [Doc. 20 at ¶ 123.] This hypothetical cannot support standing for Plaintiffs' premature, as-applied challenge to the Cancellation and Removal Provisions; government workers are presumed to carry out their duties competently. *E.g.*, *Nat'l Archives & Records Admin v. Favish*, 541 U.S. 157, 174 (2004).

Second, Plaintiffs speculate that the Cancellation and Removal Provisions' requirement that county recorders act on "credible information" that a voter is registered in two counties *might* allow "voter suppressive groups" to "systematically target" populations that move frequently. [Doc. 20 at ¶¶ 26, 67, 139 (citing hypothetical); Doc. 31 at 16.] But Plaintiffs articulate no "as-applied" facts to support this theory. Under SB 1260, a county recorder who receives "credible information" must confirm with the other county recorder the veracity of the voter's new registration before cancelling the outdated registration. A.R.S. §§ 16-165(B), 16-544(R). Thus, voters who correctly updated their voter registration will remain on the voting rolls and AEVL of the county they reside. [*See* Doc. 49-1 at 5-6.]

Because Plaintiffs' challenges to the Cancellation and Removal Provisions rely on speculative injuries that may never occur, these claims are not ripe for review.

**B. The Felony Provision Is Not Vague or Overbroad.**

Plaintiffs also assert a facial challenge to the Felony Provision, which they claim is "unconstitutionally overbroad and vague under the First and Fourteenth Amendments."[4] [Doc. 20 at ¶¶ 76, 86.] Courts disfavor facial challenges on these grounds. *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984). "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) (*Flipside*). If it does no not, then "the overbreadth challenge must fail." *Id.*

Courts then "examine the facial vagueness challenge," *id.* and should uphold the challenge only if the statute is "so vague that if fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Guerrero v. Whitaker*, 908 F.3d 541, 543 (9th Cir. 2018). Courts "must be careful to not go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."

[4] Plaintiffs essentially merge their due process challenge to the Felony Provision (Count II) with their vagueness and overbreadth challenge (Count I). [*See* Doc. 31 at 7; Doc. 20 at ¶¶ 86-91 (arguing that the Felony Provision violates due process because it is vague).]

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008). "A statute is vague not when it prohibits conduct according to an imprecise but comprehensible normative standard, but rather in the sense that *no standard of conduct is specified at all*." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 906 (9th Cir. 2019) (emphasis added; citation and quotations omitted). As explained more fully in YCRC's Proposed Motion to Dismiss, Plaintiffs' vagueness and overbreadth challenges fail.

**1. The Felony Provision Prohibits Knowingly Providing a Ballot to a Person Known to Be Registered in Another State.**

Plaintiffs' vagueness and overbreadth challenge rely on their subjective views that: (1) the term "mechanism for voting" *could* be read to criminalize "nearly limitless" activities associated with get-out-the vote efforts, like "helping a person cancel an out of state voter registration"; and (2) the scienter requirement "knowingly" does not "specify if the person must know that they are providing a mechanism for voting, that the other voter is registered in another state, or both." [Doc. 31 at 8-9.] However, these positions are not supported by the actual text of the Felony Provision or by common canons of construction.

"Mechanism for Voting": When interpreting a statute, a court will "read words in context and effectuate the plaining meaning." *S. Point Energy Ctr. v. Ariz. Dep't of Revenue*, 253 Ariz. 30, ¶ 14 (2022). The plain meaning of "mechanism" is "the fundamental processes involved in or responsible for an action, reaction, or other . . . phenomenon." *Mechanism*, Merriam Webster's Online.[5] The "mechanisms for voting"—*i.e.*, the "fundamental" process "for voting"—consists of the actual ballot. Examples include a mailed early ballot or an emailed or faxed ballot to a federal Uniformed and Overseas Citizens Absentee Voting Act voter. [*See* Attach. 1, Declaration of J.D. Mesnard at ¶ 9.]

This straightforward reading of "mechanisms for voting" is supported by the specific example of prohibited conduct described in the Felony Provision—"forwarding an early ballot addressed to the other person [registered in another state]." Moreover, Section 16-

[5] https://www.merriam-webster.com/dictionary/mechanism.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1016 as a whole is targeted at preventing unauthorized voting and ballot tampering, *not* voter registration efforts. Indeed, the Felony Provision says nothing about voter registration. This stands in stark contrast to the Cancellation and Removal Provisions, which *do* use the terms "voter registration" and "registered." [*See* Doc. 49-1 at 7-8.]; *see also Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 83 F.Supp.2d.1072, 1087 (D. Ariz. 1999) (dismissing vagueness claim when "the terms challenged by Plaintiffs as vague are either clear or are clarified when considered in context of [the challenged ordinance], other applicable ordinances, and common sense"). Also, during a hearing on SB 1260, Senator Mesnard explained that the Felony Provision seeks to prevent "sending a ballot to someone in another state, who is registered in another state." *SB 1260 Jan. 31, 2022 Hearing*, at 36:09-36:27, 39:00-40:40; [*see also* Attach. 1 at ¶¶ 4, 8, 11-12]. Plaintiffs, on the other hand, cannot identify any support for their overbroad reading of "mechanisms for voting."

<u>"Knowingly"</u>: Plaintiffs' claimed confusion about the application of the Felony Provision's scienter requirement ("knowingly") defies "common English." [Doc. 49-1 at 8-9.] "[M]odifiers at the beginning of a phrase or list apply to that entire phrase." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012); *see, e.g.*, *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 764 (D.C. Cir. 1978) (en banc), *overruled on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (en banc) (holding that in the phrase "internal personnel rules and practices of an agency" the word "internal" referred to personnel rules and agency practices). Because "knowingly" is at the beginning of a phrase, this scienter requirement clearly applies to both parts of the Felony Provision that follow: (1) "provid[ing] a mechanism for voting to another person"; and (2) "who is registered in another state." This conclusion is again buttressed by legislative history. *See SB 1260 Jan. 31, 2022 Hearing*, at 39:00-40:40 (explaining that the Felony Provision prohibits sending a ballot to another person knowing they are registered in another state); [*see also* Attach. 1 at ¶¶ 4, 8, 11-12].

**2. The Felony Provision is Not Overbroad.**

Plaintiffs assert that the Felony Provision implicates "core political speech" because

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

the act of registering individuals to vote "necessarily involves . . . the expression of a desire for political change." [Doc. 31 at 10 (quoting *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988)).] However, the Felony Provision does *not* prohibit any group from engaging in mass registration or mobilization efforts; it only prohibits the *physical act* of knowingly providing a mechanism for voting to another person known to be registered in another state. Thus, under the correct reading, this Provision does not facially burden a "substantial" amount of constitutionally protected conduct. *See United States v. Williams*, 553 U.S. 285, 292 (2008). The *act* of providing a ballot to another person is non-expressive conduct, not speech. *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 392-93 (9th Cir. 2016) (holding that the act of collecting ballots is not protected speech); *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (similar). Accordingly, the Felony Provision does not implicate the First Amendment, and Plaintiffs' overbreadth claim is highly unlikely to succeed. *See Virginia v. Hicks*, 539 U.S. 113, 124 (2003) (overbreadth challenges "[r]arely . . . succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech"); *Recreational Devs. of Phx., Inc.*, 83 F.Supp.2d at 1085 ("[T]he possibility that expressive conduct may be indirectly burdened by a statute is an insufficient basis for a facial overbreadth claim.").

Because the Felony Provision only applies to the individual that "provides" a mechanism for voting to another person, not the actual voter receiving the ballot, it also does not burden Fourteenth Amendment rights. Plaintiffs' speculative fear of "limitless" potential liability for engaging in voter registration drives is groundless; criminal penalties only apply if a person "knows" they are providing a ballot to a person registered in multiple states. A.R.S. § 16-1016(12). Indeed, even assuming Plaintiffs' wide-ranging interpretation of the phrase "mechanisms for voting" is correct (and it is not), none of Plaintiffs' hypotheticals would risk criminal liability because the scienter requirement ("knowingly") would not be met. [*See* Doc. 31 at 9-10.] The Felony Provision does not apply where a person sends a ballot to another person who simply "*may* be registered in another state." [*Id.* at 9 (emphasis added).] There is also no liability for "phone banking," "tabling in public

locations," or running a website that provides voter registration information, because the person engaging in these efforts would not "know" that the other individual is registered in multiple states. [*See id.*; Doc. 31-2 at 3 ¶ 8.]

Plaintiffs cite *Ripplinger v. Collins*, 868 F.2d 1043, 1056 (9th Cir. 1989), for the proposition that an undefined scienter requirement creates overbreadth problems, but that case is easily distinguished. [Doc. 31 at 11.] First, *Ripplinger* evaluated the scienter requirement in an obscenity statute that, unlike the Felony Provision, directly implicated the First Amendment. 868 F.2d at 1046, 1055 (explaining that the "Supreme Court has issued guidelines on the requisite scienter in an obscenity statute"). Second, the Ninth Circuit held that definition of "knowingly" in the obscenity statute was overbroad. *Id.* at 1056. At the same time, *Ripplinger* confirmed that "[t]he *undefined* requirement that the defendant have knowledge of the 'character' of the item withstands" overbreadth scrutiny. *Id* (emphasis added). Because the Felony Provision uses an *undefined* "knowingly" scienter requirement, it is not overbroad or vague. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000) (rejecting vagueness challenge to undefined "knowingly" scienter requirement).

Lastly, even if the Felony Provision somehow impacted a voter registered in multiple states, the voter can resolve any issues by cancelling any outdated, out-of-state registrations. That administrative burden does not substantially burden the right to vote. *New Ga. Project v. Raffensperger*, 484 F.Supp.3d 1265, 1294 (N.D. Ga. 2020) (holding "burden to fill out a new application for each election in an election cycle . . . to be minimal.").

**3. The Felony Provision Is Not Vague.**

When "a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment," courts "do not consider whether the statute is unconstitutional on its face." *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001); *see also Flipside*, 455 U.S. at 945 n.7 (holding that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand"). Because the Felony Provision does not implicate First Amendment rights, Plaintiffs cannot assert a facial, vagueness challenge to that Provision. Even if they could,

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

their facial challenge fails. When a statute does not present any "constitutional overbreadth problem," a facial vagueness challenge requires a showing that "no standard of conduct is specified at all" in a statute; "that is . . . the statute is impermissibly vague in all of its applications." *Schwartzmiller*, 752 F.2d at 1346-47 (internal quotations and citations omitted). Because the Felony Provision is not overbroad and sets forth a clear standard of conduct, Plaintiffs' vagueness challenge is highly likely to fail. *See supra* Section I.B.

**C. The NVRA Works in Harmony with the Cancellation Provision.**

The Court need not address Plaintiffs attempts to claim that NVRA preempts the Cancellation Provision because the federal and state laws are in harmony. Plaintiffs argue that because the Cancellation Provision "requires Arizona county recorders to remove individuals . . . without the person providing written confirmation of their change of address" or meeting NVRA's notice-and-waiting requirements, this provision somehow conflicts with the NVRA. [Doc. 31 at 11-13 (citing 52 U.S.C. § 20507(d)(1)]. But this straw man ignores the NVRA subsection that actually applies here.

By re-registering to vote in a new Arizona county, the new registration serves as the registrant's request to be removed from the voting roles in the prior Arizona county. 52 U.S.C. § 20507(a)(3)(A) (registrations may not be cancelled "except . . . at the request of the registrant"). Congress fully understood, in drafting subsection (a)(3)(A), that re-registering to vote was equivalent to telling the recorder to cancel the old registration. *See* S. Rep. No. 103-6, at 31; H.R. Rep. No. 103-9, at 14-15 ("A 'request' by a registrant [under subsection (a)(3)(A)] would include actions that result in the registrant being registered at a new address, such as registering in another jurisdiction[.]"). Thus, once a county recorder receives confirmation that duplicate registrations exist, a county recorder may permissibly remove that registrant from the old county's rolls—all in accordance with NVRA. *See also* A.R.S. § 16-168(J) (mandating compliance with NVRA when removing duplicate voters).

Plaintiffs rely heavily on *League of Women Voters of Indiana, Inc. v. Sullivan*, 5 F.4th 714, 722-30 (7th Cir. 2021); a case which is not analogous. [Doc. 31 at 12-13.] In *Sullivan*, plaintiffs challenged an Indiana law that "allowed Indiana election officials to

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

remove a voter from the state's voter rolls automatically" when it receives a notice of registration *from other states* via the defunct Interstate Crosscheck program. *Id.* at 718. The Seventh Circuit held that Indiana's law conflicted with the NVRA because it was reasonable to maintain registrations *in two different states*; thus, re-registering to vote *outside of Indiana* could not be deemed a sufficient voter request under § 20507(a)(3)(A).

But Arizona's Cancellation Provision only applies to duplicate *in-state* registrations. There is no protection under NVRA to maintain multiple registrations in different counties. This is what Congress meant when it equated "registering in another jurisdiction" with a "'request' by a registrant" to be removed from the voting roles. *See* S. Rep. No. 103-6, at 31; H.R. Rep. No. 103-9, at 14-15. Because the Cancellation Provision is not analogous to the Indiana law, the Seventh Circuit's decision is not persuasive.[6] The Cancellation Provision works in concert with NVRA to achieve the legitimate government interests related to effective and secure voter registration administration. By not having the Cancellation Provision, the election official is setting up the voter and the system for potential failure by allowing a voter to be registered in *two* counties, which then may lead to voting in both jurisdictions. The Cancellation Provision is simply common sense.[7]

**D. Plaintiffs' *Anderson/Burdick* Claim Will Fail.**

Plaintiffs assert that the Cancellation and Removal Provisions violate procedural due process under the *Anderson/Burdick* framework. [Doc. 31 at 14]; *see also Ariz. Democratic Party v. Hobbs*, 18 F. 4th 1179, 1195 (9th Cir. 2021) (holding that the *Anderson/Burdick*

---

[6] Any argument that field or conflict preemption apply also fails. First, "the NVRA has [not] so preempted the field as to invalidate all efforts to restrict" voter registration efforts. *See Project Vote v. Blackwell*, 455 F.Supp.2d 694, 704 n. 8 (11th Cir. 2006). Second, compliance with the NVRA and the Cancellation Provision is not "impossible," and the provision does not present an "obstacle" to the NVRA (one of which is required under a theory of conflict preemption) because the provision complies with 52 U.S.C. § 20507(a)(3)(A). *Nation v. City of Glendale*, 804 F.3d 1292, 1297 (9th Cir. 2015).

[7] To the extent that Section 20507(d) becomes relevant (it is not), by re-registering to vote in a new county, a voter has provided the necessary written confirmation to fulfill subsection (d)(1). Thus, the Cancellation provision remains consistent with the NVRA by requiring the voter's old county recorder to confirm with the voter's new county recorder that this written confirmation is on file. A.R.S. § 16-165(A)(10), (B); *see also* A.R.S. § 16-168(J).

standard applies to procedural due process challenges to "voting restriction[s]").[8] That standard weighs the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Ariz. Democratic Party*, 18 F. 4th at 1187 (internal quotations omitted). A law that imposes a "severe" burden on voting rights receives strict scrutiny review. *Id.* "Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (internal quotations and citation omitted). Under this standard, courts have "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." *Burdick v. Takushi*, 504 U.S. 428, 438 (1992).

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

### 1. At Most, the Cancellation and Removal Provisions Impose Minimal, Mere Inconveniences.

Plaintiffs assert that the Cancellation and Removal Provision somehow impose a severe burden on voting because, under Plaintiffs' hypothetical scenarios, these Provisions *might*: (1) result in disenfranchisement without adequate notice; and (2) require voters to "prophylactically cancel" their old, outdated registrations. [Doc. 31 at 14.] Not so.

First, the Cancellation and Removal Provisions only require a county recorder to cancel old, invalid registrations or AEVL memberships. The Provisions do *not* impact a voter's *current* registration or AEVL status. [*See* Doc. 49-1 at 12-14.]

Second, Plaintiffs have failed to support these supposed "injuries" with any actual evidence. For instance, Plaintiffs sweepingly claim that the burden will be "particularly severe for voters who have moved frequently and may have multiple registrations across

[8] Plaintiffs also assert that they are seeking an injunction based on Count II, which raises a procedural due process challenge to the Felony Provision. [Doc. 31 at 1.] As noted *supra* n.4, however, Plaintiffs' merge their Count II analysis with their vagueness and overbreadth argument and do not analyze Count II under the *Anderson/Burdick* framework. To the extent that the *Anderson/Burdick* framework applies to Count II, Plaintiffs fail to state a claim for the reasons stated in YCRC's Proposed MTD. [*See* Doc. 49-1 at 11-15.]

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

many different jurisdictions." [Doc. 31 at 20-21.] But Plaintiffs offer no objective data—such as a declaration, expert testimony, or study—to support that this sub-group is disproportionately impacted. Plaintiffs' bare allegations are insufficient for the extraordinary remedy of a preliminary injunction on the eve of an election. *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 731 (9th Cir. 2015) (dismissing claim subject to *Anderson/Burdick* standard when plaintiffs "failed to adduce *any* evidence—statistical, anecdotal or otherwise" supporting the claimed burdens from challenged election law).

Plaintiffs' only purported support is three declarations from Plaintiff representatives. But, like the FAC and the Motion, these declarations all rely on *speculative* organizational harms (such as "diversion of funds" to learn how to comply with the law), rather than any concrete, actual injury that would actually prove a procedural due process violation. [*E.g.*, Doc. 31-1 at ¶¶ 10, 25-27 (alleging consideration of a training program based on speculation that provisions will cause disenfranchisement); Doc. 31-2 at ¶¶ 19 (repeating hypothetical that third party groups might engage in voter suppression); Doc. 31-3 at ¶ 15-18 (speculating that provisions will cause disenfranchisement).]

Third, Plaintiffs' concerns that disenfranchisement might occur without "notice" are unfounded. By re-registering in another county, voters give affirmative notice of their intent to cancel all prior voting records. *See* A.R.S. § 16-165(A)(1) (requiring a county recorder to cancel a registration record without notice "[a]t the request of the person registered"); *see also* 52 U.S.C. § 20507(a)(3)(A) (state may remove registrant from official voting list upon request made by the registrant).[9] Requiring additional "notice" would be absurd.

Fourth, there is no protected liberty or property interest in maintaining multiple, duplicate voter registrations across counties. *See Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (holding that there is not a right to "vote in any manner" one desires); *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969) (holding that there is no right to vote by absentee ballot). To the extent that voters must "prophylactically" cancel old

[9] This concern is also mitigated by the fact that any voter can check their registration status on the Secretary of State's website or by contacting 1-877-THE-VOTE. [Doc. 49-1 at 13.]

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

registrations when they move, this is simply an administrative requirement that, even if inconvenient, only minimally burdens voting rights. *See New Ga. Project*, 484 F.Supp.3d at 1294 (holding that filling out applications to vote every election cycle is a minimal administrative burden); *Beiersdorfer v. LaRose*, No. 20-3557, 2021 WL 3702211, at *11 (6th Cir. Aug. 20, 2021) (holding that compliance with basic election law requirements is not a "severe" burden on voting rights); *see also Crawford v. Marion County Election Bd.*, 553 U.S. 181, 205 (2008) ("Burdens are severe if they go beyond the merely inconvenient."); *Brnovich*, 141 S.Ct. at 2325("Mere inconvenience is insufficient" to show an actionable burden).

**2. The Cancellation and Removal Provisions Are Justified by Important Regulatory Interests.**

Because the Cancellation and Removal Provisions only create, at most, a minimal burden on First and Fourteenth Amendment Rights, they are easily justified by "important regulatory interests." *Ariz. Democratic Party*, 18 F.4th at 1195. Specifically, the Cancellation and Removal Provisions are justified by Arizona's strong interests in effective and secure voter registration administration, preventing fraud by ensuring that voters who move not be actively registered in counties where they no longer reside, and maintaining voter confidence in the election system. *See Feldman*, 843 F.3d at 390 (recognizing that a State has a legitimate interest in preventing fraud); *Crawford*, 553 U.S. at 198 (recognizing that a State has a legitimate interest in maintaining public confidence in elections).

**II. <u>Plaintiffs Cannot Establish Irreparable Harm</u>.**

To obtain a preliminary injunction, a party must show that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. While harm to constitutional harms is irreparable, this general rule only applies where a plaintiff shows a likelihood of success on the merits. *See, e.g.*, *Rendish v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir. 1997). Because the Plaintiffs are unlikely to succeed on their constitutional claims, their allegations of irreparable constitutional harm fall short. *Supra* section I.

Plaintiffs also allege that SB 1260 *might* impact voters' ability "to participate in an

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

election." [Doc. 31 at 16-17.] But that harm is entirely speculative. *See supra* Section I.A. Plaintiffs cannot identify a single voter that will actually be disenfranchised by their hypothetical, hyperbole surrounding their "as-applied" challenges to SB 1260. Allegations of speculative injury or "unsupported and conclusory statements" like these are insufficient to establish irreparable harm. *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).[10] Thus, Plaintiffs cannot meet their burden to show that SB 1260 will actually cause any irreparable harm. In fact, by allowing the law to go into effect, it may become clear to the Plaintiffs that their hyperbole and speculative claims will not occur.

## III. <u>The Balance of the Equities and Public Interest Tip in Defendants' Favor</u>.

When a government entity is a party to a lawsuit, it is appropriate to "consider the balance of equities and the public interest together." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). Here, SB 1260 serves crucial local interests of voter integrity and confidence in elections. A "State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. S.F. Cnty. Democratic Central Comm.*, 489 U.S. 214, 231 (1989) (per curium). And at every level, "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell*, 549 U.S. at 4 ("Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who feel their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised."). YCRC is particularly invested in

---

[10] What is more, the affidavits Plaintiffs do offer recount, at most, some sort of potential monetary harm. [Doc. 31-1 at ¶¶ 12-14, 21-22, 26 (Declaration of S. Cole alleging that SB 1260 "will have a profound impact on Arizona Alliance" due to its limited budget and need to spend "time and money" on SB 1260); Doc. 31-2 at ¶¶ 9, 12-14, 21, 24-25 (Declaration of A. Patel alleging that SB 1260 will "severely harm" Voto Latino by requiring it to "divert" and "expend significant resources" to retrain its membership on how to comply with the law); Doc. 31-3 at ¶¶ 6, 9-12, 15-18 (Declaration of G. Cecil alleging that SB 1260 will harm Priorities USA by requiring it to "spend additional resources trying to understand" the law and "will have a tangible impact on Priorities' allocation of resources").] Not only are these alleged harms speculative, but it is also "well established . . . that such monetary injury is not normally considered irreparable." *Los Angeles Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *see also Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (conclusory affidavits signed by company executives are insufficient to establish irreparable harm)

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

implementation of SB 1260. Voter confidence in Yuma County is at an all-time low, and fraud is on the rise. [*See* Attach. 2, Decl. of Russell Jones, at ¶¶ 12-19, 21.] In the past two years, there has been evidence of voter fraud in local elections, including duplicate voter schemes that SB 1260 are intended to prevent. [*Id.* at ¶¶ 13-16.] This fraud has had a measurable impact on the outcome of local elections, YCRC members' willingness to participate in elections, and YCRC's ability to get its candidates elected. [*Id.* at ¶¶ 19-20.]

These important local interests far outweigh the three public interests that Plaintiffs assert. First, because SB 1260 does not violate constitutional rights, there is no constitutional infirmity to protect against. And Plaintiffs offer no legitimate reason why issuing the injunction will further the public interest in safeguarding voting rights. Second, because SB 1260 only eliminates duplicate voter registrations, it does not impact the overall number of qualified voters who can vote. Maintaining duplicate registrations in the State's database only enables some voters to vote twice. There is no public interest in protecting duplicate voters. Third, enjoining the law does *not* maintain the status quo. SB 1260 was enacted and signed into law with an effective date prior to the 2022 general election.

It is well established that "federal district courts ordinarily should not enjoin state election laws in the period close to an election." *Merrill*, 142 S.Ct. at 879 (Mem.) (Kavanaugh, J., concurring). Indeed, "court orders affecting elections . . . can . . . result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4-5. Even if this were not the case, the Cancellation Provision is consistent with the existing practice of voter registration list maintenance under Arizona law. [*See* Attach. 1 at ¶ 17.] The Removal Provision simply cleans up a loophole in the existing system: previously, a county recorder could not remove a voter from the county's AEVL, even where the county recorder could confirm the voter was registered in multiple counties. Accordingly, an injunction at this stage will cause more harm than good (if any) that may come from enjoining SB 1260.

**CONCLUSION**

For these reasons, Plaintiffs' Motion should be denied.

Respectfully submitted this 19th day of September, 2022.

SNELL & WILMER L.L.P.

By: s/ *Brett W. Johnson*

Brett W. Johnson
Eric H. Spencer
Colin P. Ahler
Tracy A. Olson
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
(602) 382-6000
bwjohnson@swlaw.com
espencer@swlaw.com
cahler@swlaw.com
tolson@swlaw.com

Snell & Wilmer L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**CERTIFICATE OF SERVICE**

I certify that, on September 19, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which automatically sends a Notice of Electronic Filing to all counsel of record.

s/ Tracy Hobbs

# ATTACHMENT 1

Brett W. Johnson (#021527)
Eric H. Spencer (#022707)
Colin P. Ahler (#023879)
Tracy A. Olson (#034616)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
espencer@swlaw.com
cahler@swlaw.com
tolson@swlaw.com
Attorneys for Proposed Intervenor-Defendant

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance for Retired Americans; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona, et al.,<br><br>Defendants. | No. 2:22-CV-01374-GMS<br><br>**DECLARATION OF J.D. MESNARD** |

**DECLARATION OF J.D. MESNARD**

I, J.D. Mesnard, declare, under the penalty of perjury as follows:

1. I am over the age of 18 and have personal knowledge of the information set forth in this declaration.

2. I am a member of the Arizona Legislature and am the state senator for District 17 (Chandler, Gilbert, and Sun Lakes). I previously served in the State House of Representatives for eight years, including as the Speaker of the House. By virtue of these positions and experience, I am well-versed with Arizona's legislative process.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

3. I am the prime sponsor of Senate Bill 1260: registrations; early voting; move notice ("SB 1260").

4. My goals in sponsoring SB 1260 were to: (1) formalize the process counties use to confirm and remove duplicate voter registrations; (2) promote the maintenance of accurate voter rolls; and (3) prevent individuals from providing ballots and similar items to other persons to facilitate voting, while knowing that the other person is registered in another state. Together, these common-sense procedures help prevent fraud and ensure the accuracy of voter rolls.

5. Not only do inaccurate voter rolls increase the potential for fraud, but they also result in numerous issues associated to costs, polling inefficiencies, and general voter confusion. First, inaccurate voter rolls increase county costs for voter outreach, including mailings, printing and processing forms. See *Inaccurate, Costly, and Inefficient Evidence That America's Voter Registration System Needs an Upgrade*, PEW Center on States (February 14, 2012).[1] Second, inaccurate voter rolls increase inefficiencies at the polls on election day, such as slowing down the check in process and increasing voter lines. *See The Cost of Inaccuracy: Voter Registration Examined*, NCSL (March 2012).[2] Third, as election boundaries change following redistricting, inaccurate voter rolls prevent counties' proper notification to voters of available polling locations and changes in precincts. *See Check Your Polling Place: Redistricting Confused Some Voters*, PEW (May 20, 2022).[3]

6. I consulted with or heard from the counties and other election stakeholders, and considered their perspective in drafting SB 1260 and, to my knowledge, the counties did not oppose the bill.

---

[1] Available at https://www.pewtrusts.org/-/media/legacy/uploadedfiles/pcs_assets/2012/pewupgradingvoterregistrationpdf.pdf.

[2] Available at https://www.ncsl.org/documents/legismgt/elect/Canvass_Mar_2012_No_28.pdf.

[3] Available at https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2022/05/20/check-your-polling-place-redistricting-confused-some-voters.

7. I also am familiar with a deep dissatisfaction by constituents as to the perceived integrity of the election administration system. Allowing an individual to be registered (and potentially vote, albeit illegally) in multiple counties or states only adds credence to the perceptions. Furthermore, if voters are registered in multiple locations, this also may impact the ability to effectively and timely administer an election due to confusion about the correct registration. If voter registration abnormalities are addressed upon a county recorder becoming aware of an issue, it is my opinion that elections will run more smoothly and actually avoid unnecessary issues that may rightfully or even incorrectly impact the electorate's perception and safety of the voting processes. I firmly believe that the legislature has an obligation to pass well-reasoned laws that ensure that voter registration administration is clear and multiple registrations are not authorized.

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

**The Felony Provision**

8. It is my understanding that the Plaintiffs in this case challenge Section 3 of SB 1260, which added A.R.S. § 16-1016(12) (the "Felony Provision") to the existing list of class 5 felonies in A.R.S. § 16-1016. The Felony Provision makes it a class 5 felony to "knowingly provide[] a mechanism for voting to another person who is registered in another state." In essence, the Provision prohibits purposefully sending a ballot to someone, while knowing that the recipient is registered in another state.

9. I understand that the Plaintiffs believe that the phrase "mechanism for voting" could apply to voter registration and mobilization efforts. This is incorrect. The phrase "mechanism for voting" refers to the physical document that a vote can be recorded on. Examples include a physical ballot, a mailed early ballot (including the official envelope), and ballots transmitted to Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) voters. This is supported by the legislative record.

10. Notably, it is already generally improper to provide these mechanisms for voting to non-intended recipients. *See* 2019 Elections Procedures Manual, pg. 56 (mail ballots must be sent by non-forwardable mail).

11. I also understand the Plaintiffs have argued that it is unclear whether the "knowingly" requirement applies to "provide a mechanism for voting to another person" or "who is registered in another state" or both clauses. Based on my direct understanding of the intent behind the Felony Provision, the word "knowingly" clearly applies to both clauses.

12. This was, indeed, the exact intent in drafting the Felony Provision—to *only* prohibit an individual from sending a ballot to someone that they know is registered in another state. In other words, the Provision was designed to only apply to people *knowingly* facilitating fraud.

13. The Felony Provision was not intended to apply to voter registration drives, informing individuals how to cancel prior registrations, hosting a website informing voters how to vote, or any of the other similar activities described in the Plaintiffs' materials. I also do not recall any person or group objecting to the bill on these grounds during the legislative process.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**Cancellation and Removal Provisions**

14. It is my understanding that Plaintiffs also challenge Section 1 of SB 1260, which added A.R.S. § 16-165(10), (B) (the "Cancellation Provision"). I also understand that Plaintiffs challenge proposed A.R.S. § 16-544(Q)-(R) (the "Removal Provision) in Section 2 of SB 1260.[4]

15. The Cancellation Provision requires a county recorder to cancel a person's registration upon receiving "confirmation from another county recorder that the person registered has registered to vote in that other county." A.R.S. § 16-165(10). The Cancellation Provision also requires a county recorder to cancel a person's registration upon receiving "credible information that a person has registered to vote in a different county" but only after the recorder "confirm[s] the person's voter registration with that other county." A.R.S. § 16-165(B).

[4] Section 2 also added A.R.S. § 16-544(P).

16. The Removal Provision requires a county recorder to remove a person from that county's Active Early Voting List ("AEVL") upon receiving "confirmation from another county that a person registered has registered to vote in that other county." A.R.S § 16-544(Q). The Removal Provision also requires a county recorder to remove a person from that county's AEVL upon receiving "credible information that a person has registered to vote in a different county" but only after "confirm[ing] the person's voter registration with that other county." A.R.S § 16-544(R).

17. Based on my understanding, at least some county recorders already cancel voter registrations and remove a person from a county's AEVL upon confirmation that a voter has subsequently registered in another county. I understand that similar provisions and authorities exist in the Arizona Secretary of State's guidance, including the Elections Procedures Manual. My goal was to formalize one consistent process into statutory authorities.

18. It is my understanding that Plaintiffs claim that the Cancellation and Removal Provisions will impact a person's current voter registration and current AEVL membership. This was not the intent of the Provisions—as reflected by the fact that nothing in the text of those provisions mandates cancellation of a current voter registration or AEVL membership. Rather, the goal was to ensure that individuals are not registered to vote in two places at the same time. This goal is furthered by the requirement that county recorders coordinate with each other in enforcing the Cancellation and Removal Provisions.

I certify under penalty that the foregoing is true and correct.

Dated: September 18, 2022

J.D. Mesnard

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

# ATTACHMENT 2

Brett W. Johnson (#021527)
Eric H. Spencer (#022707)
Colin P. Ahler (#023879)
Tracy A. Olson (#034616)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
espencer@swlaw.com
cahler@swlaw.com
tolson@swlaw.com
Attorneys for Proposed Intervenor-Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Arizona Alliance for Retired Americans; et al.,

Plaintiffs,

v.

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona, et al.,

Defendants.

No. 2:22-CV-01374-GMS

**DECLARATION OF RUSSELL JONES**

**DECLARATION OF RUSSELL JONES**

I, Russell Jones, declare, under the penalty of perjury as follows:

1. I am over the age of 18 and have personal knowledge of the information set forth in this declaration.

2. My name is Russell Jones. I am Chairman of the Yuma County Republican Committee ("YCRC"). I have been actively involved in YCRC since 2017. Previously, I represented the 24th District in the Arizona House of Representatives from 2005 until 2013. Prior to that I was politically active in Yuma County local government. Together, this

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

experience provides me insight into both statewide and local political procedures, how state laws impact our local Yuma community, and the importance of voter registration laws that prohibit multiple registrations and potential voting.

**<u>YCRC's Local Interests</u>**

3. YCRC is an official organization providing support for the Republican Party in Yuma County, Arizona. To further the Republican Party's interests in Yuma County, YCRC raises and spends money to develop a local party platform, coach and train local candidates, conduct county-wide get out the vote and voter registration drives, participate in election day operations and integrity efforts (e.g., recruiting poll workers and poll observers), and other activities.

4. Currently, YCRC is working with and running all local and statewide Republican candidates in the general 2022 election. For example:

a. On a statewide level, we are directly supporting the Republican candidate for Governor, Kari Lake via a variety of efforts.

b. We support all Republicans running for the Yuma City Council. Historically, this race is very competitive.

c. Although YCRC supports all local Republican candidates, we have focused energies and resources on promoting candidates in legislative district 23, like Gary Snyder (senate), and legislative district 25, like Michelle Pena (house). Importantly, legislative districts 23 and 25 encompass south Yuma County which is a high fraud area. As a result, we target our resources to provide the highest level of election day turn out and integrity efforts (*e.g.*, voter registration and poll observer recruitment) in legislative districts 23 and 25 to support these candidates.

5. All of YCRC's candidates depend on our support for voter registration drives and voter integrity efforts. For example, YCRC routinely watches for tampering of

Republican signs and reports any instances to the Yuma County Sheriff's Department. It is my understanding that several of our reports have been acted upon.

6. The size and rural nature of Yuma County impact how YCRC executes these goals.

7. Yuma County is significantly smaller than Maricopa County. According to the U.S. Census Bureau data, Yuma County's population (206,990) is less than 5% of that of Maricopa County's population (4,496,588).[1]

8. Because Yuma County is a smaller county, local races are often won or lost by a small margin of votes.

9. For example, in the 2020 general election, in the state legislative district 4 race where two representatives are selected, the difference between second and third place was only 638 votes. In the Hospital District Board race where two representatives are selected, the difference between second and third pace was only eight votes.[2]

10. This means that when YCRC engages in voter registration and turn out efforts, the efforts make a significant impact on elections central to its political party mission.

11. Moreover, because Yuma County is a rural farming community, its voters are geographically dispersed throughout the County. This impacts YCRC's strategy for engaging their current and potential new members and voter registration drive efforts.

12. The County's rural nature also facilitates opportunity for voter fraud. For example, small rural towns in Yuma County do not get mail delivery at their physical residence. Although voters will register with this address, they must also list a P.O. Box mailing address. I am aware that multiple people in these small towns get ballots delivered

---

[1] https://www.census.gov/quickfacts/fact/table/maricopacountyarizona,yumacountyarizona/PST045221

[2] https://www.yumacountyaz.gov/home/showpublisheddocument/48581/637774122997900000

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

to the same P.O. Box. This process increases the opportunity for voter fraud and misuse of early ballots.

**Voter Fraud in Yuma County**

13. As of March 2022, Yuma County is investigating sixteen voting and voting registration fraud cases. *See* Press Release, *Yuma County Voting Fraud* (May 11, 2022).[3]

14. Yuma County has documented evidence of voter fraud, including cases of voter impersonation of individuals who have moved away; duplicate voting by individuals with multiple registrations in Yuma County, out of county or state; and fraudulent absentee ballot use. *Id.*; *see also Yuma County Officials Applauded for Investigating New & Old Cases of Voting Fraud*, Ariz. Daily Indep. (May 11, 2022).[4]

15. Just this past June, an individual pled guilty to Ballot Abuse in Yuma County. See Press Release, *Guillermina Fuentes Enters Guilty Plea in Yuma County Ballot Harvesting Case* (June 2, 2022);[5] *see also* Ariz. AG's Off.–Fraud & Special Prosecutions Section, *Prosecutions Related to Voting or Elections Since 2010*.[6]

16. I have personally observed election fraud and abuse, like those acts described in these reports.

17. Due to the relative size of Yuma County, duplicate and fraudulent votes have an amplified impact in our local elections.

18. I have personally spoken with many members of the YCRC about the increasing number of voter fraud cases in Yuma County.

19. Those members have expressed that they have lost confidence in a voting system that allows some people to vote more than once, and as a result, in my opinion these

---

[3] https://www.yumacountysheriff.org/pr-2022/PR-2022-30-Yuma-County-Voting-Fraud.pdf

[4] https://arizonadailyindependent.com/2022/05/11/yuma-county-officials-applauded-for-investigating-new-and-old-cases-of-voting-fraud/

[5] https://www.azag.gov/press-release/guillermina-fuentes-enters-guilty-plea-yuma-county-ballot-harvesting-case.

[6] https://www.azag.gov/sites/default/files/docs/criminal/viu/EIU_Prosecutions_July-2022.pdf

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

members are less likely to participate in elections. I hear regularly "what is the point" due to voters concerns about the integrity of the election system, including as to voter registration.

20. Because our members are less likely to participate in voting, it impacts YCRC's ability to elect candidates of its choice.

21. Based on these conversations and my more than twenty years of experience in Yuma County politics, voter confidence in Yuma County's election integrity is at an all-time low. As such, the YCRC has a keen interest in combating any election fraud in Yuma County, which is directly impacted by SB 1260.

22. If SB 1260 is enjoined, YCRC will be required to expend resources to monitor instances of duplicate voting during Yuma County elections. If SB 1260 is not enjoined, YCRC will be able to focus those resources on other pressing matters, like registering and mobilizing Republican voters. In addition, YCRC will be able to point to SB 1260 to voters concerned about election integrity and that their concerns are being addressed by the Arizona Legislature.

**The Felony Provision**

23. I am aware of SB 1260's Felony Provision, which, under A.R.S. § 16-1016(12), will make it a Class 5 Felony to knowingly provide a mechanism for voting to someone registered in Arizona and also out of state.

24. In my opinion, the Felony Provision will reduce voter and voter registration fraud in Yuma County because it will serve as a disincentive to acts of voter impersonation like those described above.

25. Due to the thin margins of victory in some local Yuma County races, the Felony Provision's deterrent effect will have a real and measurable impact.

26. Accordingly, the Felony Provision will help restore YCRC members' confidence in the Yuma County elections and encourage participation in elections.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**The Cancellation and Removal Provisions**

27. I am also aware of the Cancellation and Removal Provisions in SB 1260, as set forth in A.R.S. §§ 16-165(A)(10), (B), 16-544(Q)-(R). YCRC took an interest in these provisions because, as an organization involved in voter education and registration drives, this law will necessarily impact YCRC's operations.

28. It is my understanding that SB 1260 seeks to make minor adjustments to close loopholes and formalize the procedure that several counties already take to keep their voter rolls accurate and that Yuma County (and the other counties) supported these provisions.

29. I understand that the Cancellation Provision requires a county recorder to cancel the voter registration of an individual that has registered in another county, if the county recorder first confirms the voter's new registration status with the other county.

30. I also understand that the Removal Provision similarly requires a county recorder to remove an individual's name from the Active Early Voting Registration list if they have registered in another county and that registration is confirmed with the other county.

31. The Cancellation and Removal Provisions will ensure only voters registered in Yuma County vote in Yuma County elections. If the Cancellation and Removal Provisions are invalidated, I believe bad actors will continue to take advantage of absentee ballots and former Yuma County residents' ballots to vote in Yuma County elections. YRCR believes such voters will vote against YCRC candidates and that these votes will have a measurable impact on our elections.

* * *

32. Due to the intensely local nature of its operations, YCRC has an interest in ensuring that only voters qualified to vote in Yuma County vote.

33. SB 1260 protects and further the interests of YCRC's mission to ensure local elections are fraud free.

34. If SB 1260 is enjoined, YCRC voters will lose more confidence in the integrity of Yuma County elections and likely not participate in them.

I certify under penalty that the foregoing is true and correct.

Dated: September 19, 2022

Russell Jones

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000