Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500
Telephone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com

Aria C. Branch*
Daniel J. Cohen*
Joel Ramirez*
Tina Meng*
Spencer Klein*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
abranch@elias.law
dcohen@elias.law
jramirez@elias.law
tmeng@elias.law
sklein@elias.law

* *Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Arizona Alliance for Retired Americans, et al.,

Plaintiffs,

v.

Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona, et al.,

Defendants.

**No. CV-22-1374-GMS**

**OPPOSITION TO EMERGENCY MOTION FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**

## INTRODUCTION

The Attorney General and Intervenor Yuma County Republican Committee, (the "Movants") ask this Court to stay its injunction of provisions of SB 1260, which threaten Plaintiffs' and countless Arizona voters' most fundamental rights. *See generally* Prelim. Inj. Order, ECF No. 87, Mot. Stay ("Mot."), ECF No. 88. SB 1260 is a newly enacted law never before implemented in any Arizona election, and the Movants' arguments that staying this Court's injunction will push the coming election into chaos are simply not credible. In fact, earlier this evening, the Secretary of State (the "Secretary") filed a Notice Regarding Emergency Motion to Stay ("Sec'y Not."), ECF No. 92, in which the Secretary—Arizona's chief elections official—took a decidedly different view of the Court's preliminary injunction and Movants' request for a stay. Based on her understanding of Arizona's election code and procedures and communications with County Recorders, the Secretary makes clear that "the PI Order *provides certainty* that no new procedures are required for the upcoming election" and "that a stay of the PI Order would inject unnecessary confusion and administrative burdens on elections officials at this stage, as the 2022 General Election rapidly approaches." Sec'y Not. at 2. Movants further fail to make any of the showings necessary to justify a stay, including that they would be irreparably harmed absent one. The Court should deny the Motion to Stay (the "Motion").

## ARGUMENT

The Motion should be denied because Movants have failed to carry their burden of establishing any of the elements that courts consider in determining whether to grant a stay. A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation and citation omitted). Thus, while the decision whether to grant a request for a stay is within the Court's discretion, the requesting party "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. Movants must demonstrate that: (1) they have made a strong showing of likelihood of success on the

merits; (2) they will be irreparably injured absent a stay; (3) a stay will not substantially injure other parties; and (4) the public interest favors a stay. *See Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020); *see also Nken*, 556 U.S. at 426. The second factor has even greater significance as a threshold inquiry than when a court is considering a motion for a preliminary injunction: "[I]f the petition has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Doe #1*, 957 F.3d at 1058 (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam), and *Nken*, 556 U.S. at 433–34).[1]

**I. Movants fail to show that they will suffer irreparable harm absent a stay.**

As noted above, the requirement that the movant show irreparable harm is heightened in the context of a stay motion. Movants come nowhere close to carrying their burden of showing that they will suffer irreparable harm in the absence of a stay. Movants raise three potential harms—confusion among county recorders, voter confusion, and harm to the State in not being able to carry out laws passed by its democratic processes—that will purportedly stem from a failure to stay the Court's injunction. None of these arguments have any merit.

First, Movants contend that unless this Court's injunction is stayed, it will "inject confusion into county recorder offices across the State." Mot. at 1. But the Secretary, who, unlike Movants, actually "consulted with the County Recorders' offices regarding the Court's September 26, 2022 Order," disagrees that there will be such confusion.

---

[1] Movants misrepresent the court's standard in adjudicating motions for a stay pending appeal. *See* Mot. at 3. The Ninth Circuit has specifically found that the "balancing approach" set out in *Abbassi v. INS*, 143 F.3d 513 (9th Cir. 1998), is no longer the appropriate standard, finding it "too lenient" following the Supreme Court's decision in *Nken v. Holder*. *See Leiva-Perez*, 640 F.3d at 964. Movants' citation to *Evans v. Buchanan*, 435 F. Supp. 832 (D. Del. 1977), a 45-year-old decision from a district court in Delaware, is also misplaced. Not only is *Evans* clearly not binding on this Court, it involved a motion to stay pending a petition for certiorari to the Supreme Court. As the court acknowledged, a "motion to stay in this procedural context cannot be approached in the same manner that a court treats a motion for preliminary injunction." *Id.* n.40.

Sec'y Not. at 2. Instead, it is a *stay* of the injunction that would create needless confusion and threaten to disrupt the coming election, imposing new procedures on county recorders to be implemented in an exceedingly short time frame and creating potentially conflicting criminal liability, all in the last five weeks before election day. *Id.*

Moreover, Movants' argument is premised on the notion—already rejected by this Court—that SB 1260 codifies existing practice. It is on this basis that Movants argue that county recorders will not understand whether they can continue their existing voter registration practices in light of the Order. Notably, Movants still cannot articulate the so-called "existing practices" without contradiction. *See* Order at 12, 20; *compare, e.g.*, Mot. at 6 (Arizona law only "*change[s]* a voter's state registration, not add[s] a second, duplicate registration" (emphasis in original)), *with* AG Opp'n at 3, ECF No. 70 (discussing current practice identifying duplicate registrations). But even if they could, this Court has already held that SB 1260 does *not* merely codify existing practices. Movants do not raise any new factual issues that call that conclusion into question; they merely regurgitate arguments made during the preliminary injunction proceedings.

At the same time, Movants' own briefing demonstrates that they clearly understand the Order to enjoin certain provisions of the newly-enacted SB 1260, and not to require election officials to stop engaging in election procedures that pre-dated that legislation. *See* Mot. at 12 ("However, only parts of SB 1260 were enjoined by this Court's Order, not existing practices. Staying the injunction will simply return the parties to the status quo as it existed *before* SB 1260 was enacted." (Emphasis in original)); *see also* Sec'y Not. at 2 (the "PI Order provides certainty that no new procedures are required for the upcoming election . . . ."). Nevertheless, Movants persist in mischaracterizing the Court's Order—often contradicting themselves from one page to another. For example, on page 10 of the Motion, they claim that the injunction mandates county recorders to "stop ensuring accurate voter registration[s] in Arizona," Mot. at 10, yet two pages later, they acknowledge that the Order leaves in place "existing practices," *id.* at 12, and supposedly "identical county procedure[s]," *id.* at 10. Thus, as before, Arizona's county

recorders may maintain all the practices they engaged in to ensure accurate voter registration prior to the enactment of SB 1260. *See e.g.,* A.R.S. §§ 16-101, 16-120, 16-165(A)(1)–(9), (C)–(M), 16-168.

Next, Movants make unsubstantiated claims about how the Order threatens to harm voters. They contend that allowing the Order to stand will lead to "inaccurate voter rolls" that will "cause confusion about where a voter is qualified to vote and could disenfranchise that voter if she votes in the wrong jurisdiction." Mot. at 11. They say that "a voter might not be on the correct county's voter list due to confusion" and that failure to stay the Order will cause fraudulent voting and result in vote dilution. *Id*. But Movants never actually explain *how* the Order could lead to *any* of these outcomes. The Cancellation Provision mandates the *cancellation* of voter registrations, so the Court's injunction *decreases* the likelihood that a voter will be disenfranchised as a result of being wrongfully removed from the rolls. Nor is there any credible basis to conclude that the injunction will lead to voter fraud based on double voting. Arizona already has several laws targeting voter fraud, including the crime of voting twice. *See generally* A.R.S. § 16-1016. Movants point to nothing that indicates those laws are insufficient—or that the enjoined provisions of SB 1260 are necessary to protect against this entirely speculative harm.

Third and finally, Movants broadly assert that the State "suffers irreparable harm any time it is precluded from carrying out the laws passed by its democratic processes." Mot. at 11. But the cases Movants cite in support of this argument are inapposite. *See Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (finding state would be injured by an injunction of an enacted law where the court had already determined that the injunction "rest[ed] on an erroneous legal premise"); *Latta v. Otter*, 771 F.3d 496, 500 n.1 (9th Cir. 2014) (noting that *Maryland v. King* is an order issued by an individual justice from chambers, and "[n]o opinion for the [Supreme] Court adopts this view" that a state suffers irreparable harm just because an enacted law is enjoined). But even if this proposition were true, it would not be sufficient to warrant a stay—otherwise, every

injunction of a law passed by a state legislature would be stayed pending appeal. Instead, courts weigh any purported harm to the State against injury to the plaintiffs. *See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009), *vacated and remanded sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012) (injury to the state when a law is enjoined "is not dispositive" as the injury needs to be balanced with "competing claims of injury"). And while the State certainly has an interest in the integrity of its elections, Movants have not shown, and indeed cannot show, that a stay is necessary to avoid voter fraud or anything else that will adversely affect election integrity. *Cf. Buckley v. Am. Const. L. Found. Inc.*, 525 U.S. 182, 203–04 (1999) (concluding that "absent evidence to the contrary," it would be improper to assume the existence of fraud relating to political activities).[2]

## II. Movants fail to demonstrate a strong likelihood of success on the merits.

Movants' failure to demonstrate irreparable harm is reason alone to deny the Motion, but they also fail to satisfy any of the remaining factors necessary to justify their request. The Court's 22-page order and opinion was careful and considered, and it rested on detailed findings of fact and conclusions of law. Movants fail to provide reason to second-guess those findings. Accordingly, Movants cannot demonstrate a strong likelihood of success on the merits necessary to justify a stay.

### A. The Felony Provision is unconstitutionally vague.

Movants admit that "nearly every party in the case has a different interpretation of the statutory language." Mot. at 4. In doing so, Movants only provide further support for

---

[2] Voter fraud is exceedingly rare and, repeatedly, investigations into claims of voter fraud turn up, at most, highly isolated incidents among millions upon millions of voters. An article published earlier this week detailed similar recent findings in Arizona, further rebutting Movants' contentions that the enjoined provisions are somehow necessary to prevent fraud that no one has actually been able to demonstrate exists. *See* Beth Reinhard & Yvonne Wingett Sanchez, *As More States Create Election Integrity Units, Arizona is a Cautionary Tale*, Washington Post (Sept. 26, 2022), available at https://www.washingtonpost.com/investigations/2022/09/26/arizona-election-integrity-unit/.

what the Court has already held: the Felony Provision is unconstitutionally vague. Nothing Movants say in their Motion alters this undeniable fact.

Movants first fault Plaintiffs for suing the Attorney General and Secretary of State, incorrectly asserting that because county attorneys were not also named as defendants, this Court was not empowered to grant Plaintiffs full relief. This argument is flawed because "the mere existence of multiple causes of an injury does not defeat redressability." Order at 12 n.6 (quoting *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1159 (9th Cir. 2015)). Moreover, it is unlikely that a local prosecutor would choose to enforce provisions that this Court has enjoined. *See L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992) ("Were this court to issue the requested declaration, we must assume that it is substantially likely that the California legislature, although its members are not all parties to this action, would abide by our authoritative determination."); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1106 n.30, 1108–09 (E.D. Cal. 2002) (finding, in case where plaintiffs sought relief against Attorney General but not county prosecutors, that redress was no issue because "it is likely that the District Attorneys will follow the court's ruling, especially given their tendency to look to the Attorney General for policy" concerning the subject matter of the suit and because Plaintiffs were not required to establish redressability with "absolute certainty"), *aff'd sub nom. Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003).

Next, Movants continue their attempt to rehabilitate the Felony Provision by seeking to rewrite it. In that vein, Movants assert that they "do not intend to appeal the injunction of the Felony Provision to the extent it reaches Plaintiffs' voter registration activities." Mot. at 4. But that is not how the judicial review process works. As this Court held in the Order, a court cannot "re-write a statute to save it." Order at 4 (quoting *State v. Arevalo*, 249 Ariz. 370, 373 (2020)). The Felony Provision applies to any "mechanism for voting"; it does not contain specified carveouts for voter registration or other activities, and no court can change that fact without redrafting the statute. In any event, Plaintiffs have brought a facial challenge to the Felony Provision because it is

unconstitutionally vague and does not provide Arizonans fair notice of what conduct it prohibits. Plaintiffs have not sought to invalidate the law only as applied to specific circumstances (like voter registration); they have sought to enjoin the law in toto.

Movants' argument that the injunction is "defective" because it "enjoins applications of the Felony Provision that Plaintiffs have never asserted would cause them any harm" is without merit for similar reasons. Mot. at 9. "When vagueness permeates the text" of a penal law, "it is subject to facial attack." *City of Chicago v. Morales*, 527, U.S. 41, 55 (1999). Enjoining a law on its face necessarily means that the injunction may reach applications of the law that do not directly impact the plaintiffs.

Finally, Movants are incorrect that the Attorney General has "offered a construction for which neither this Court nor Plaintiffs identified any genuine vagueness concerns." Mot. at 9. That claim is squarely contradicted by the Court's Order. In opposition to Plaintiffs' motion for a preliminary injunction, the Attorney General argued that the term "mechanism for voting" as used in the Felony Provision included a "ballot and ballot affidavit envelope and nothing else." AG Opp'n at 9. The Court properly rejected this interpretation, noting that it would render the phrase "mechanism for voting" superfluous. Order at 5. The Court then went on to explain that the text of the Felony Provision did not limit "what other items might constitute 'mechanisms for voting'" and determined that the law was unconstitutionally vague. *Id.* at 5–6. Nor could this Court have "codif[ied]" the Attorney General's non-binding promise to limit enforcement of the law. Mot. at 9. This would once again require the Court to rewrite the statute. Neither Movants nor this Court can simply fix the vague text of the Felony Provision; the injunction should remain. *See Rocky Mt. Farmers Union v. Goldstene*, Nos. CV–F–09–2234 LJO DLB, CV–F–10–163 LJO DLB, 2012 WL 217653, at *3 (E.D. Cal. Jan. 23, 2012) ("[T]his Court cannot conceive of terms which would preserve plaintiffs' rights while allowing enforcement of an unconstitutional law. Indeed, in this Court's opinion, an order to suspend the preliminary injunction and to allow continued enforcement of an unconstitutional law would itself violate—and not secure—the plaintiffs' rights.").

**B. The question of whether the Cancellation Provision violates the NVRA does not raise difficult legal questions that warrant a stay.**

Movants' claim that the Cancellation Provision is "susceptible to alternative interpretations" that are "plausible and reasonable" such that there are serious and difficult questions of statutory interpretation that justify a stay of this Court's injunctive relief, Mot. at 4–5, should also be rejected. Under the "serious questions" doctrine, district courts "properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 883 (E.D. Cal. 2004) (citation omitted). Neither of those criteria are met here. First, the question of whether the Cancellation Provision violates the NVRA is not a difficult legal question that warrants a stay. This Court's straightforward conclusion that the Cancellation Provision conflicted with and was likely preempted by the NVRA was evident from the law's plain language and was supported by case law and well-established canons of statutory construction. Order at 8–14.[3] In addition, the Order already preserves the status quo by stopping the Cancellation Provision from having any effect.

The "alternative interpretations" of the Cancellation Provision offered by Movants in their Motion are implausible and should not change the Court's conclusion. Movants first argue that the Cancellation Provision applies only to in-state registrations because it uses the term "county recorder," which is used elsewhere in the relevant statute to refer to county recorders in Arizona. But this ignores the fact that the Court concluded that "the question of *intrastate transfer*" provides "the basis for entering a preliminary injunction" because Arizona's voter registration form does not contain an explicit request by the voter to cancel her prior registration. Order at 10 (emphasis added). Whether the Cancellation Provision applies to cancellation based on in-state or out-of-state

[3] Movants ignore that the presumption against preemption does not apply to the NVRA, which Congress enacted under the Elections Clause. *See Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013); U.S. Const. art. I, § 4, cl. 1; *see also* Order at 14.

registrations was irrelevant to the Court's holding.

Movants' argument also omits that an entire section of the Cancellation Provision, A.R.S. § 16-165(B), requires county recorders to cancel a voter's registration on confirmation of a voter's out-of-county registration "with that other county," which is not limited to counties in Arizona or county recorders in Arizona (or any other state). Indeed, the Secretary of State interprets A.R.S. § 16-165(B) to require the cancellation of registrations based on "registrations in any out-of-state jurisdiction to which a voter has relocated." Order at 11 (citing Sec'y Not. on Prelim. Inj. at 5, ECF No. 73). As the chief elections officer, the Secretary of State is ultimately responsible for prescribing rules for voter registration and coordinating state responsibilities under the NVRA. A.R.S. §§ 16-452, 16-142(A). Her interpretation of the Cancellation Provision—not the Movants'—is controlling. Regardless of whether the Cancellation Provision refers only to Arizona county recorders or includes out-of-state county recorders, it still violates the NVRA, which provides that a voter shall not be removed from the voter registration rolls because of a change of residence unless the registrant has confirmed in writing that they have "changed residence to a place outside the registrar's jurisdiction," and specifically defines a "registrar's jurisdiction" as "an incorporated city, town, borough, or other form of municipality." 52 U.S.C. § 20507(j)(1).

The Seventh Circuit has expressly held that a voter's new registration does not constitute either a "request" or a "written confirmation" from the voter sufficient to cancel the voter's previous registration without complying with the NVRA's required notice-and-waiting procedures. *Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019); *League of Women Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714 (7th Cir. 2021). Movants provide no sound reason why the Seventh Circuit's legal reasoning was flawed or inapplicable to this case. In fact, the Cancellation Provision does not require that the cancellation of a voter's registration only occur at the voter's request or upon the voter's confirmation of a change of address. Nor could it be read to do so, because other parts of A.R.S. § 16-165 already address cancellation based on a voter's request or written

confirmation of a voter's out-of-county address. *See* A.R.S. §§ 16-165(A)(1) (providing for cancellation "[a]t the request of the person registered); 16-165(A)(9) (providing for cancellation "[w]hen the county recorder receives written information from the person registered that the person has a change of address outside the county"). Reading the Cancellation Provision as merely initiating cancellation when the voter asks for it would render subsections (A)(1) and (A)(9) of the statute superfluous. *See Marquez-Reyes v. Garland*, 36 F.4th 1195, 1204 (9th Cir. 2022) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Even if the Ninth Circuit were to disagree with the Seventh Circuit and conclude that registering to vote in another county constitutes a request to cancel an existing voter registration, it is not at all clear how this would operate in practice under the Cancellation Provision. The Cancellation Provision, unlike the Indiana law, lacks any sequencing language to ensure that only the former registration is canceled, nor does it provide any guidance on how to determine which registration should be canceled. *See Sullivan*, 5 F.4th at 718 (describing Indiana law as requiring county officials to confirm the out-of-state registration "postdated" the Indiana registration before cancelling the Indiana registration). Moreover, even if the Cancellation Provision somehow operated to only cancel the older voter registration, there are many plausible scenarios in which a voter may decide to return to a former residence before Election Day, such as a college student returning home, or a person returning home to take care of a sick family member. *See generally Common Cause*, 937 F.3d at 960. In those scenarios, the older voter registration would still be of use to the voter, and its cancellation without any notice—in violation of the NVRA—could very well disenfranchise them. That is why the Seventh Circuit reasoned that "[t]he only way to know whether voters want to cancel their registration is to ask them." *Id.*; *see also id.* at 962 ("A name on a voter roll . . . is there only because a voter took the trouble to put it there. Laws such as the NVRA ensure that the states do not undo that work without good reason.").

This Court's holding that the Cancellation Provision violates the NVRA is not a difficult legal question sufficient to stay the preliminary injunction.

**III. Plaintiffs will suffer irreparable injury if the stay is granted.**

Movants have also failed to demonstrate that Plaintiffs will not be irreparably injured if the stay is granted. As to the Felony Provision, Movants' sole argument is that they are not appealing the entirety of the injunction on the basis that the Attorney General does not believe SB 1260 criminalizes ordinary voter outreach. As the Court has already explained, the Attorney General's proclamations about his interpretation of the law are in no way binding. Order at 6–7, 20, *see supra* Section II.A. Movants have failed to show why the Court's reasoning should change or is in any way flawed.

As to the Cancellation Provision, Movants' only argument is again premised on the erroneous notion that because SB 1260 simply codifies existing practice, an injunction of the law cannot operate to alter the state of affairs in any way that injures Plaintiffs. Mot. at 12. But this Court has already correctly rejected the argument that SB 1260 is a codification of existing practice and further explained ways in which SB 1260 violates the NVRA and puts Plaintiffs' members and constituents at risk of disenfranchisement. Order at 7–14, 20; *see supra* Section II.B. In their Motion, Movants have failed to present any new arguments as to why the Court erred in its decision.

**IV. The public interest favors denial of a stay.**

As this Court correctly determined, "[t]he right to vote is sacrosanct and preservative of all other rights, so it is clearly in the public interest that Arizona's election procedures comply with the NVRA and constitutional due process." Order at 22. SB 1260 undermines the public interest in several ways—enabling the wrongful removal of voters from the registration rolls, broadly criminalizing behavior that facilitates participation in elections, and exposing Arizona voters to mass challenges to their voting eligibility. Meanwhile, though Movants argue that preventing duplicate voter registrations is in the public interest because it somehow deters voter fraud, they fail to point to any actual evidence that having more than one voter registration increases

instances of voter fraud—nor could they, as having multiple voter registrations does not mean a person is ineligible to vote using a given registration, and having multiple registrations does not mean that a person is committing, plans to commit, or has committed election fraud.[4] Nor have Movants identified instances where a voter has committed voter fraud using a fraudulent registration. SB 1260 is thus a "solution" in search of a problem, one with very real—and damaging—consequences.

Finally, the Court's injunction pauses any last-minute changes to Arizona's election laws that SB 1260 would impose. Movants, in seeking a stay of the Court's injunction, would doubly upset the status quo: first, by altering the parties' circumstances at the time appeal was filed, and second, by allowing an entirely new set of election laws to be imposed in Arizona on the eve of any election—including laws that newly criminalize once-innocent election activity and open Arizona to an influx of challenges to voters' registrations across the state. And for the same reasons, Movants' attempt to invoke *Purcell* in support of granting a stay is misplaced. If Movants' concern is about upcoming election deadlines and minimizing changes to the law that could lead to voter confusion, they should have no concerns about letting the injunction of SB 1260 stand. Leaving the injunction in place would lead to the least disruptive changes to the state's election laws. As this Court correctly noted, "*Purcell* tips in Plaintiff's favor," Order at 21, and Movants' continued attempts to blame Plaintiffs for what they characterize as an "extremely late filing," Mot. at 13, intentionally disregards the fact that the Complaint, Amended Complaint, and accompanying Motion for Preliminary Injunction were all filed, fully briefed, and fully argued for the Court's resolution in just over a month and—more importantly—before SB 1260 took effect. Even the NVRA's notice provisions recognize that the urgency to enjoin state laws that violate the NVRA (such as SB 1260)

---

[4] Similarly, the fact that a voter "can only have one residence for voting purposes," Mot. at 10, has no bearing on whether a voter with multiple residences is committing election fraud. *See Common Cause*, 937 F.3d at 960 (noting how many voters "will *vote* in only one place, even if they have open registrations in two"). Duplicate voting is illegal; having more than one residence is not.

only increases as election day approaches; thus, the time period in which a state must remediate any reported NVRA violations shortens as the election nears. *See* 52 U.S.C. § 20510(b) (providing for 90 days to correct a violation generally, 20 days if the NVRA violation occurred within 120 days of a federal election, and no notice requirement if the NVRA violation occurred within 30 days of a federal election). Plaintiffs put Movants on notice that SB 1260 violated the NVRA as early as August 12, 2022, when they sent an NVRA notice letter (to which Movants never replied). *See* Ex. A. Once the requisite 20 days had passed from that notice letter, Plaintiffs filed an Amended Complaint incorporating the NVRA claim. ECF No. 20. There is no basis for Movants' complaints that Plaintiffs somehow acted in an untimely manner.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Movants' Emergency Motion for Stay of Preliminary Injunction.

Dated: September 29, 2022

*/s/ Daniel A. Arellano*
Roy Herrera (No. 032901)
Daniel A. Arellano (No. 032304)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500

Aria C. Branch*
Daniel J. Cohen*
Joel Ramirez*
Tina Meng*
Spencer Klein*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2022, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*/s/ Daniel A. Arellano*